**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | |
|---|---|
| **GLORIA D. WISEMAN** | Civil Action No. 1:16-cv-07587 |
| | |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| | |
| ~ *against* ~ | **TRIAL BY JURY DEMANDED** |
| | |
| **ING GROEP, N.V., VOYA FINANCIAL;** and | |
| **RELIASTAR LIFE INSURANCE COMPANY** | |
| **OF NEW YORK;** | |
| | |
| Defendants | |

-------------------------------------------------------------x

Comes now Plaintiff **GLORIA D. WISEMAN** by and through her attorney, **BARUCH S. GOTTESMAN, ESQ.**, on behalf of herself and on behalf of all others similarly situated, as and for their Complaint against Defendants **ING GROEP, N.V.**, **VOYA FINANCIAL, INC.**; and **RELIASTAR LIFE INSURANCE COMPANY OF NEW YORK** does state as follows:

## NATURE OF THE ACTION

1.    This is a class action brought by the Plaintiff individually and on behalf of similarly-situated owners of life insurance policies administered by ING Groep, N.V., Voya Financial, Inc., Reliastar Life Insurance Company of New York, which policies were unexchangeable in contravention to the terms of the policies and New York law. Defendants' failure to provide their policy owners the option of exchanging their policies violated the plain terms of the subject insurance policies, breached the covenant of good faith and fair dealing, and violated New York General Business Law § 349. Plaintiff and the Classes suffered financial damages as a result.

2.      Plaintiff brings this suit to seek injunctive, declaratory, and monetary relief to require Defendants to make Plaintiff and the Classes whole with respect to all subject policies, to refund all excess premiums collected, to provide the Plaintiff and the Classes the option to exchange their policies, and in the alternative to pay Plaintiff and the Classes damages.

## THE PARTIES

### i.      Plaintiff Wiseman

3.       Plaintiff **GLORIA D. WISEMAN** is a natural person resident in the State of New Jersey.  Ms. Wiseman owns a life policy insured by Defendants that has been in force for a quarter century.

### ii.      Defendant ING Groep, N.V.

4.      Defendant **ING GROEP, N.V.**, is a *naamloze vennootschap* (sometimes translated as "public company") organized and existing under the laws of The Netherlands.  ING Groep, N.V. maintains a presence in this District through its representative office at 1325 Avenue of the Americas and ING Groep, N.V. lists American Depository Receipts on the New York Stock Exchange in this District.

5.      At all times beginning September 1, 2000, and continuing through the filing of this Complaint, Defendant **ING Groep, N.V.** was the parent company of the Policy Administrator and upon information and belief was responsible for all corporate policy related to the Wiseman Policy and all life insurance policies owned by the Class.

6.      Between September 1, 2000, and on or about October 29, 2013,[1] Defendant **ING Groep, N.V.**, was the sole owner of ING American Insurance Holdings, Inc. (later renamed ING U.S., Inc. and later still, renamed Voya Financial, Inc).

7.      Pursuant to the terms of the 2013 Amended Restructuring Plan arising from **ING Groep, N.V.**'s taxpayer bailout, **ING Groep, N.V.**, agreed to divest its American life insurance holdings.  Upon information and belief the divestment began on October 29, 2013, and is expected to complete on or before December 31, 2016.  However upon information and belief as of the filing of this Complaint ING GROEP, N.V. continues to own not less than 25% and not more than 43% of the shares of Voya Financial, Inc. and remains responsible for all corporate policy relating to the Wiseman Policy and all life insurance policies owned by the Class.

8.      In this Complaint **ING Groep, N.V.** is sometimes referred to as "**ING**".

### iii.      Defendant Voya Financial, Inc.

9.      Defendant **VOYA FINANCIAL, INC.** is an unauthorized foreign business corporation organized and existing under Delaware law which maintains its headquarters' offices at 230 Park Avenue in this District.  **VOYA FINANCIAL, INC.** was formerly known at various times as ING American Insurance Holdings, Inc. and ING U.S., Inc.

10.     At all times beginning September 1, 2000, and continuing through the filing of this Complaint, Defendant **VOYA FINANCIAL, INC.** wholly owned the

---

[1]      With the exception of a period from on or about May 2013 through October 29, 2013 when as part of the restructuring the shares in ING American Insurance Holdings, Inc. were transferred to ING Insurance International B.V.

Policy Administrator and was entirely responsible for all corporate policies related to the Wiseman Policy and all life insurance policies owned by the Class.

11.     Additionally and/or in the alternative, **VOYA FINANCIAL, INC.** was the agent through which **ING GROEP, N.V.** administered all corporate policies related to the Wiseman Policy and all life insurance policies owned by the Class.

12.     As of the filing of this Complaint, **VOYA FINANCIAL, INC.** markets its life insurance policies with software that describes policy illustrates as being "presented by ING".

13.     In this Complaint **VOYA FINANCIAL, INC.** is sometimes referred to as "**Voya**".

### iv.     Defendant ReliaStar

14.     Defendant **RELIASTAR LIFE INSURANCE COMPANY OF NEW YORK** is an insurance company organized and existing under New York law and maintains its home office at 1000 Woodbury Road, Woodbury in the County of Nassau in the State of New York.  **RELIASTAR LIFE INSURANCE COMPANY OF NEW YORK** was formerly known at various times as The Morris Plan Insurance Society, Bankers Security Life Insurance Society, and ReliaStar Bankers Security Life Insurance Company.

15.     Defendant **RELIASTAR LIFE INSURANCE COMPANY OF NEW YORK** is also the successor of, among other companies, Lincoln Security Life Insurance Company.

16.     At all times since the Wiseman Policy was put into force through the filing of the Complaint and under its various corporate guises and predecessors,

Defendant **RELIASTAR LIFE INSURANCE COMPANY OF NEW YORK** administered the Wiseman Policy.

17.    In this Complaint **RELIASTAR LIFE INSURANCE COMPANY OF NEW YORK** is sometimes referred to as "**ReliaStar**".

18.    At all times relevant to this Complaint, the Defendants were affiliates, parent companies, agents, representatives, co-venturers, subsidiaries of each other and otherwise alter-egos of one another.

## JURISDICTION AND VENUE

19.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d) because this is a representative class action with diversity between at least one class member and one defendant and the aggregate amount of damages exceeds $5,000,000.00.

20.    Plaintiff is a citizen of New Jersey and Defendants include citizens of New York, Delaware and The Netherlands.

21.    Upon information and belief, less than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State of New York. *See* Sharon Sybrandt, N.Y.S. Dep't of Fin. Svcs. Report on Market Conduct Examination of ReliaStar Life Insurance Company of New York as of Dec. 31, 2008, at p. 4.

22.    Therefore this action falls within the original jurisdiction of this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

23.    This Court has authority pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., to grant declaratory relief in favor of Plaintiff and the Class.

24.     This Court has personal jurisdiction over Defendant **ING** because for over a decade **ING** through its local agents and under the **ING** brand actively administered the subject policies and in particular administered the Wiseman policy in this State.

25.     This Court also has personal jurisdiction over Defendant **ING** because even after the alleged partial divestment of its American life insurance assets, **ING** continues to regularly transact and solicit business in the State of New York including by maintaining a representative office and by listing ADR's on the New York Stock Exchange.

26.     This Court also has personal jurisdiction over Defendant **ING** because even after the alleged partial divestment of its American life insurance assets, **ING** directly and through its American subsidiaries acting on its behalf regularly avails itself of the Courts of the United States.

27.     This Court has personal jurisdiction over Defendant **Voya** because they maintain their headquarters in this State and because from at least September 2000 through its Dissolution by Proclamation on August 31, 2016, **Voya** was duly registered as a foreign corporation pursuant to New York Business Corporations Law § 1301, et seq.

28.     This Court has personal jurisdiction over Defendant **ReliaStar** because they are organized under New York law and because they maintain their home offices in this State.

29.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because the events giving rise to the underlying causes of actions

occurred in this District, including Defendants' administration of the policies in this District.

## FACTUAL BACKGROUND

    **i.)**    **Wiseman Policy**

    30.    On October 16, 1991, Lincoln Security Life Insurance Company issued a life insurance policy on Ms. Olga Wiseman, which was known as Policy No. #[*redacted*]960G.  In this Complaint, the life insurance policy described in this paragraph is sometimes referred to "the Wiseman Policy."

    31.    At the time the Policy was issued the insured was 70 years old. The Insured is now almost 95 years old and the policy remains in force.

    32.    The Policy provided for a minimal face value of three hundred thousand dollars ($300,000.00), plus accumulated value in the policy at a guaranteed interest rate of 4.5% pa.

    33.    Pursuant to Rule 5.2, and since the Wiseman policy remains in force, a copy (with social security number and other private information redacted) of a duplicate of the Policy is annexed hereto as **Exhibit A** and made a part of this Complaint. If necessary and upon the issuance of an appropriate protection order, an unredacted copy of the Policy will be filed.

    34.    On January 1, 1998, Lincoln Security Life Insurance Company merged with ReliaStar Financial Corporation and was renamed to ReliaStar Life Insurance Company of New York.

35.     On September 1, 2000, **ING Groep, N.V.**'s American holding company, ING America Insurance Holdings, Inc., purchased ReliaStar Financial Corporation.

36.     Upon ING's purchase of ReliaStar, ING undertook responsibility for all the insurance company's duties under the Wiseman policy.

37.     To obtain approval for the merger and purchase, **ReliaStar** and **ING** made express representations to the New York State Insurance Department (the predecessor agency to the New York State Department of Financial Services) that Defendants would fully comply with all provisions of New York Insurance Law, regulations and the terms of the life insurance policies being purchased.

38.     Since September 1, 2000, through the filing of the Complaint, Defendants ING, Voya and ReliaStar remained jointly and severally responsible for the administration of the Wiseman Policy and fulfillment of its terms.

39.     As of the filing of this Complaint, **Voya** describes its relationship with its wholly owned subsidiary **ReliaStar** as that of a "family" reflecting their relationship as affiliates, parent companies, agents, representatives, co-venturers, subsidiaries of each other and otherwise alter-egos of one another

40.     From the September 2000 through its alleged divestment of its American life insurance holdings, ING Groep, N.V. was entirely responsible for the administration of the Wiseman policy.  As of the filing of this Complaint, ING Groep, N.V. owns somewhere between 25-43% of Voya Financial, Inc. and upon information and belief, Voya continues to operate and administer the Wiseman Policy pursuant to the corporate policies instituted by ING Groep, N.V.

**ii.)      Exchange Provision**

41.     The Wiseman Policy is a flexible premium adjustable life insurance policy with an option to exchange the policy to a whole life policy or endowment.

42.     The owner's decision to purchase a life insurance policy from Lincoln and in particular to purchase a flexible premium adjustable life insurance policy was made after express representations by Lincoln Security Life Insurance Company that an option to exchange the Policy would be available upon thirty-one day's request.

43.     The Plaintiff would not have purchased the Wiseman Policy without the option to exchange the policy because the option to exchange the policy was of the essence of the agreement.

44.     The option to exchange the Wiseman Policy was of the essence of the agreement, and a material inducement for the policy purchase.

45.     The Policy provided as follows:

"EXCHANGE: You may exchange this Policy for a new Policy.  Such exchange may be to any plan of whole life or endowment that we issue at the time of exchange, except:

(1.)     Flexible premium adjustable life insurance; or

(2.)     Adjustable cash value plans.

You may not exchange this Policy for Term insurance.

Written notice for such exchange must be given to us 31 days in advance.  Evidence of insurability will not be required, this Policy must be surrendered.  The amount of insurance on the new policy may be for any amount up to, but not more than, (a), plus (b), less (c), where:

(a)      is the current amount of the Insured's Death Benefit under this Policy.

(b)      is the cash value of the new Policy on the Date of Exchange.

(c)      is the then current cash value of this Policy.

We will issue the new Policy in the same premium rate class as this Policy.  We will calculate the premium for the new Policy according to the rates in effect for the age and premium rate class of the Insured at the time of the exchange.  All plans of insurance available for exchange are subject to plan requirements.  Such new Policy will be effective on the date of termination of this Policy.

### iii.)      Owner's Efforts to Exchange the Policy

46.      On or about late 2014 – early 2015, the Plaintiff sought to exchange the Wiseman policy which was to mature in October 2016.

47.      Plaintiff called ReliaStar and was informed by various agents of Defendants, including but not limited to:

a.   Ms. Angela Cardinal;

b.   Yvette Loman; and

c.   Lauren Rowe (Compliance Review)

that Defendants would not honor their duty under the Policy to provide an Exchange upon thirty-one day's written demand.

48.      The industry practice for at least a decade is that all Whole Life Policies issued in the State of New York remain in-force until age 101.  Had ING, Voya, and ReliaStar complied with their contractual obligations, the Wiseman Policy would have been exchanged for a Policy to remain in force until at least 2021.  Instead, the Policy will lapse in October 2016.

### iv.)     Insurance Companies Obligations for Legacy Policies

49.     Upon **ReliaStar's** purchase of Lincoln Security Life Insurance Company in 1998, and **ING GROEP, N.V.**'s purchase of ReliaStar in 2000, the purchasing companies had an obligation to ensure continued compliance by the Policy Administrator with the terms of the Wiseman Policy and the relevant provisions of New York law.

50.     At any time that the Policy remained in force and upon thirty-one day's demand, the Defendants were required to issue the owner of the Wiseman Policy a current policy pursuant to the exchange provision.

51.     In breach of their contract and their duty to the Plaintiff, Defendants refused to issue a new policy as required under the Wiseman Policy and New York law.

### iv.)     Damage to Wiseman Policy owner by Defendants' breaches

52.     As a direct result of the breaches by Defendants, the Plaintiff suffered financial and other damage.

53.     As a direct result of the foregoing breaches by the Defendants, Plaintiff was unable to exchange their policy and when the policy lapses upon maturity in October 2016, the Plaintiff will lose all the premiums that they paid into the policy over the past 25 years and the expected death benefit they would be eligible for had an exchange occurred.

54.     As a direct result of the foregoing breaches by Defendant, the Plaintiff overpaid their premiums for 25 years.  The premiums paid on the Wiseman Policy were calculated based on the perceived value of a policy that could be exchanged

and therefore remain in force after the putative maturity.  Since the policy could in fact

not be exchanged, it was less valuable than claimed and therefore all premiums paid were

excessive.

55.    As a direct result of the foregoing breaches by Defendants, the

value of the Wiseman Policy, and all the Policies in the classes were substantially

lowered on the secondary market.  Secondary market life insurance purchasers are less

likely to purchase a policy that could not be exchanged and would lapse at age 95, as

compared to a policy that could be exchanged.

56.    As a direct result of the breaches by Defendants, the family of the

insured and the policy owner face the risk of insufficient coverage in the event of her

passing.  The family's organization of their personal and financial affairs around the

expectation that the policy could be exchanged was shattered.

57.    As a direct result of the breaches by Defendant, the insured felt

pressure to pass before October 2016 so that her family could obtain the full benefit of

her life insurance policy.  This pressure on the insured to pass before the unlawful lapsing

of her policy was extreme and outrageous conduct, which actually caused quantifiable

damage to the insured, the owner and their families.

## CLASS ACTION ALLEGATIONS

58.    Plaintiff brings this action individually and pursuant to two classes

under Federal Rule of Civil Procedure Rule 23(b)(3).

59.    The first class – referred herein as the "Lincoln Security Class"

consists of:

> All owners of life insurance policies issued by Lincoln
> Security Life Insurance Company with an exchange

provision that were in force on January 1, 1998, and which were at any time unavailable for exchange.

60.     The second class – referred herein as the "Legacy Policy Class" consists of:

> All owners of life insurance policies issued by any life insurance company with an exchange provision that were at any time after September 1, 2000, owned and/or administered by ING Groep, N.V., Voya Financial, Inc., ReliaStar Life Insurance Company of New York, (and its owners and assigns) which were at any time unavailable for exchange.

61.     Both the Lincoln Security Class and the Legacy Policy Class consist of hundreds of consumers of life insurance and thus are so numerous that joinder of all members is impracticable.  The identities and contact information of class members can be readily ascertained from business records maintained by ING, Voya or ReliaStar.

62.     The claims asserted by the Plaintiff are typical of the claims of the Lincoln Security Class.

63.     The claims asserted by the Plaintiff are typical of the claims of the Legacy Policy Class.

64.     The Plaintiff will fairly and adequately protect the interests of the Lincoln Security Class and does not have any interests antagonistic to those of the other members of the class.

65.     The Plaintiff will fairly and adequately protect the interests of the Legacy Policy Class and does not have any interests antagonistic to those of the other members of the class.

66.     The Plaintiff has retained as counsel an attorney with a decade of experience with complex life insurance matters, who has partnered in this action with

counsel that are familiar with class actions and complex litigation in New York and federal courts.

67.     Plaintiff requests that the Court afford class members with notice and the right to opt-out of any class certified in this action.

68.     This action is appropriate as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because common questions of law and fact affecting the classes predominate over those questions affecting only individual members.  Those common questions include:

(a.)     The construction and interpretation of the form insurance policies issued by Lincoln Security Life Insurance Company, including its exchange provisions;

(b.)     The construction and interpretation of the form insurance policies issued by other Legacy providers, including their exchange provisions;

(c.)     The facts, circumstances, and legal consequences of the September 2000 purchase of Lincoln Security Life Insurance Company by ING and what representations were made to the New York State Insurance Department about the maintenance of exchange options for Lincoln policies;

(d.)     The facts, circumstances, and legal consequences of all insurance company purchases by ING and what representations were made to the New York State Insurance Department and to its successor, the New York State Department of Financial Services about the maintenance of exchange options for legacy policies;

(e.)     To what extent the premiums on all Lincoln and Legacy policies were overcharged

because of the unavailability of an exchange option;

(f.)     To what extent the Lincoln and Legacy policies were less valuable because of their unmarketability on the secondary market;

(g.)     To what extent Lincoln and Legacy policy owners were underinsured because of the inability to exchange their policies;

(h.)     To what extent Lincoln and Legacy policy owners lost the policy benefit, were improperly induced to lapse their policies, and lost all premiums paid;

(i.)     How the Defendants breached their contractual duties to the class members;

(j.)     How the Defendants breached their duty of good faith and fair dealing owed to the class members;

(k.)     How the Defendants violated Section 349 of New York's General Business Laws, including whether its conduct was consumer-oriented and likely to mislead a reasonable consumer;

(l.)     What injunctive relief and other relief is available to the class members as against the Defendants;

(m.)     What damages were suffered by the class members and the appropriate methodology for calculating those damages;

(n.)     What punitive damages are available to the class members as against the Defendants.

69.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because among other reasons:

(a.)     The complexity of issues involved in this action and the expense of litigation the

claims, few, if any, class members could afford to seek legal redress individually for the wrongs that defendants committed against them, and absent class members have no substantial interest in individually controlling the prosecution of individual actions;

(b.)    When Defendants' liability has been adjudicated, claims of all class members can be determined by the Court;

(c.)    This action will cause an orderly and expeditious administration of the class claims and foster economies of time, effort and expense, and ensure uniformity of decisions;

(d.)    Without a class action, many class members will continue to suffer injury and Defendants' breaches will continue without redress while Defendants continue to reap and retain the substantial proceeds of their wrongful conduct; and

(e.)    This action does not present any undue difficulties that would impede its management by the Court as a class action.

## FIRST CLAIM FOR RELIEF

### Breach of Contract
### (Plaintiff against all Defendants)

70.    The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 69 of this Complaint.

71.    The Wiseman Policy entered into on or about October 16, 1991, by and between Gloria Wiseman and Lincoln Security Life Insurance Company was a valid and binding contract.

72.     Upon ReliaStar's merger with Lincoln Security Life Insurance Company on January 1, 1998, ReliaStar assumed all duties with respect to the Wiseman Policy.

73.     On January 1, 1998, Lincoln Security and ReliaStar consolidated pursuant to their merger and after the merger ReliaStar was a mere continuation of Lincoln Security Life Insurance Company.

74.     ReliaStar represented in writing explicitly and implicitly to the New York State Insurance Department and to the Wiseman Policy owner that ReliaStar assumed all duties under the policy.

75.     Upon ING's purchase of ReliaStar on September 1, 2000, ING Groep, N.V. and Voya Financial, Inc. (then known as ING America Insurance Holdings, Inc.) jointly assumed all duties with respect to the Wiseman Policy.

76.     On September 1, 2000, ING, Voya, and ReliaStar consolidated pursuant to the purchase and after the purchase ING and Voya were a mere continuation of ReliaStar.

77.     ING and Voya represented in writing explicitly and implicitly to the New York State Insurance Department and to the Wiseman Policy owner that they assumed all duties under the policies.

78.     At no time was ING or Voya absolved of their duties under the Wiseman Policy, including the duty to provide an exchange upon demand.

79.     On or after September 1, 2000, no option to exchange the Wiseman Policy was available.

80.     Defendants' failure to provide an option to exchange the Wiseman Policy materially breached their duties in several ways, including but not limited to the following:

(a.)    Defendants breached their contract by failing to provide an option to exchange the policy upon demand;

(b.)    Defendants breached their contract by failing to notify the Wiseman Policy owner that the policy could not be exchanged upon demand;

(c.)    Defendants breached their contract by overcharging premiums (such premiums having been calculated pursuant to the option to exchange);

(d.)    Defendants breached their contract by devaluating the policies and making them unmarketable on the secondary life insurance market;

(e.)    Defendants breached their contract by failing to provide their insureds and families an option to exchange their policy thus leaving them underinsured upon policy lapses; and

(f.)    Defendants caused the Plaintiff to lose the policy benefit, improperly induced a lapse of their policy, and caused Plaintiff to lose all premiums paid.

81.     Plaintiff performed all their obligations under the Agreement, including but not limited to the payment of all Policy premiums and an appropriate demand to exchange the Policy.

82.     As a direct and proximate cause of Defendants material breaches of the Agreement, the Plaintiff was and will continue to be damaged in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### Breach of Contract
### (Lincoln Security Class against all Defendants)

83.     The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 82 of this Complaint.

84.     At various times beginning in the 1970s Lincoln Security Life Insurance Company entered into valid and binding contracts with the Lincoln Security Class, to wit life insurance policies that offered an option for an exchange.

85.     Upon ReliaStar's merger with Lincoln Security Life Insurance Company on January 1, 1998, ReliaStar assumed all duties with respect to the policies owned by the Lincoln Security Class.

86.     On January 1, 1998, Lincoln Security and ReliaStar consolidated pursuant to their merger and after the merger ReliaStar was a mere continuation of Lincoln Security Life Insurance Company.

87.     ReliaStar represented in writing explicitly and implicitly to the New York State Insurance Department and to the Lincoln Security Class that ReliaStar assumed all duties under their policies.

88.     Upon ING's purchase of ReliaStar on September 1, 2000, ING Groep, N.V. and Voya Financial, Inc. (then known as ING America Insurance Holdings, Inc.) jointly assumed all duties with respect to the policies owned by the Lincoln Security Class.

89.     On September 1, 2000, ING, Voya, and ReliaStar consolidated pursuant to the purchase and after the purchase ING and Voya were a mere continuation of ReliaStar.

90.     ING and Voya represented in writing explicitly and implicitly to the New York State Insurance Department and to the Lincoln Security Class that they assumed all duties under the policies.

91.     At no time was ING or Voya absolved of their duties to the Lincoln Security Class, including the duty to provide an exchange upon demand.

92.     On or after September 1, 2000, the Defendants failed to provide an option for exchange with respect to the policies owned by the Lincoln Security Class.

93.     Defendants' failure to provide an option to exchange the policies owned by the Lincoln Security Class materially breached the Defendants' duties in several ways, including but not limited to the following:

    (a.)   Defendants breached their contract by failing to provide an option to exchange the policies owned by the Lincoln Security Class upon demand;

    (b.)   Defendants breached their contract by failing to notify the policy owners that the policy could not be exchanged upon demand;

    (c.)   Defendants breached their contract by overcharging premiums (such premiums having been calculated with an to exchange upon demand);

    (d.)   Defendants breached their contract by devaluating the policies and making them unmarketable on the secondary life insurance market;

    (e.)   Defendants breached their contract by failing to provide their insureds and families an option to exchange their policy thus leaving them underinsured upon policy lapses; and

    (f.)    Defendants caused the Class to lose their policies' benefits, improperly induced lapses of their policies, and caused the Class to lose all premiums paid.

94.    The Lincoln Security Class performed all their obligations under the Agreement, including but not limited to the payment of all Policy premiums and appropriate demands to exchange the Policy.

95.    All members of the Lincoln Security Class who lapsed their policies before maturity and/or who failed to make a demand to exchange the Policy are also in the member class because any such demand would have been in vain, as no exchange was available.

96.    As a direct and proximate cause of Defendants material breaches of the Agreement, the Lincoln Security Class was and will continue to be damaged in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### Breach of Contract
### (Legacy Policy Class against all Defendants)

97.    The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 96 of this Complaint.

98.    At various times in the 1990s and 2000S ING and Voya purchased various American life insurance companies (including the September 1, 2000 purchase of ReliaStar) and in so doing assumed all duties with respect to the policies owned by the Legacy Policy Class.   In this Complaint the American life insurance companies purchased by ING and Voya in the 1990s and 2000s are referred to as "Legacy Companies".

99.    After these various mergers and purchases of Legacy Companies, ING and Voya consolidated with the Legacy Companies and ING and Voya acted as a mere continuation of the Legacy Companies.

100.   ING and Voya represented in writing explicitly and implicitly to the New York State Insurance Department and to the Legacy Policy Class that they assumed all duties under the policies.

101.   At no time was ING or Voya absolved of their duties to the Legacy Policy Class, including the duty to provide an exchange upon demand.

102.   On or after their merger and purchase, the Defendants failed to provide the Legacy Policy Class the option to exchange their policies.

103.   Defendants' failure to provide an option to exchange the policies owned by the Legacy Policy Class materially breached the Defendants' duties in several ways, including but not limited to the following:

(a.)   Defendants breached their contract by failing to provide an option to exchange the policies upon demand;

(b.)   Defendants breached their contract by failing to notify the Legacy Policy Class that their policies could not be exchanged upon demand;

(c.)   Defendants breached their contract by overcharging premiums (such premiums having been calculated with an exchange upon demand);

(d.)   Defendants breached their contract by devaluating the policies and making them unmarketable on the secondary life insurance market;

(e.)   Defendants breached their contract by failing to provide their insureds and families an option to exchange their policy thus leaving them underinsured upon policy lapses; and

(f.)    Defendants caused the Class to lose their policies'
benefits, improperly induced lapses of their policies,
and caused the Class to lose all premiums paid

104.    The Legacy Policy Class performed all their obligations under the Agreement, including but not limited to the payment of all Policy premiums and appropriate demands to exchange the Policy.

105.    All members of the Legacy Policy Class who lapsed their policies before maturity and/or who failed to make a demand to exchange the Policy are also in the member class because any such demand would have been in vain, as no exchange was available..

106.    As a direct and proximate cause of Defendants material breaches of the Agreement, the Legacy Policy Class was and will continue to be damaged in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF**

**Breach of Implied Covenant of Good Faith and Fair Dealing**
**(Plaintiff against all Defendants)**

107.    The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 106 of this Complaint.

108.    The Wiseman Policy entered into on or about October 16, 1991, by and between Gloria Wiseman and Lincoln Security Life Insurance Company was a valid and binding contract.

109.    Upon ReliaStar's merger with Lincoln Security Life Insurance Company on January 1, 1998, ReliaStar assumed all duties with respect to the Wiseman Policy.

110.    On January 1, 1998, Lincoln Security and ReliaStar consolidated pursuant to their merger and after the merger ReliaStar was a mere continuation of Lincoln Security Life Insurance Company.

111.    ReliaStar represented in writing explicitly and implicitly to the New York State Insurance Department and to the Wiseman Policy owner that ReliaStar assumed all duties under the Policy.

112.    Upon ING's purchase of ReliaStar on September 1, 2000, ING Groep, N.V. and Voya Financial, Inc. (then known as ING America Insurance Holdings, Inc.) jointly assumed all duties with respect to the Wiseman Policy.

113.    On September 1, 2000, ING, Voya, and ReliaStar consolidated pursuant to the purchase and after the purchase and ING and Voya were a mere continuation of ReliaStar.

114.    ING and Voya represented in writing explicitly and implicitly to the New York State Insurance Department and to the Wiseman Policy owner that they assumed all duties under the policies.

115.    At no time was ING or Voya absolved of their duties under the Wiseman Policy, including the duty to provide an exchange upon demand.

116.    On or after September 1, 2000, the Defendants failed to provide an exchange for the Wiseman Policy.

117.    Defendants' failure to provide an option to exchange the Wiseman Policy materially breached their Implied Covenant of Good Faith and Fair Dealing including but not limited to the following:

(a.)    Even if the Policy Agreement is interpreted as only providing an option to exchange if – and only if –

the insurance companies happen to have a similar policy available in their portfolio, the Implied Covenant of Good Faith and Fair Dealing created a separate and distinct affirmative duty to actively ensure a policy is available for exchange at any time;

(b.)   Even if the Policy Agreement is interpreted as only having an option to exchange if – and only if – the insurance companies happen to have a similar policy available in their portfolio, the Implied Covenant of Good Faith and Fair Dealing created a separate and distinct affirmative obligation to notify the Wiseman Policy owner if a possible exchange was no longer available;

(c.)   Even if the Policy Agreement is interpreted as only having an option to exchange if – and only if – the insurance companies happen to have a similar policy available in their portfolio, the Implied Covenant of Good Faith and Fair Dealing created a separate and distinct affirmative obligation to adjust the premiums to reflect the nonmarketability of an unexchangeable policy and its lower value to the policy owner; and

(d.)   Other additional obligations by the Defendants separate and distinct from their contractual obligations.

118.   Plaintiff has performed all her obligations under the Agreement, including but not limited to, the payment of all Policy premiums and an appropriate demand to exchange the Policy.

119.   As a direct and proximate cause of Defendants material breaches of the Implied Covenant of Good Faith and Fair Dealing, the Plaintiff was and will continue to be damaged in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### Breach of Implied Covenant of Good Faith and Fair Dealing
### (Lincoln Security Class against all Defendants)

120.    The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 119 of this Complaint.

121.    At various times beginning in the early 1980s Lincoln Security Life Insurance Company entered into valid and binding contracts with the Lincoln Security Class, to wit, life insurance policies that offered an option for an exchange.

122.    Upon ReliaStar's merger with Lincoln Security Life Insurance Company on January 1, 1998, ReliaStar assumed all duties with respect to the policies owned by the Lincoln Security Class.

123.    On January 1, 1998, Lincoln Security and ReliaStar consolidated pursuant to their merger and after the merger ReliaStar was a mere continuation of Lincoln Security Life Insurance Company.

124.    ReliaStar represented in writing explicitly and implicitly to the New York State Insurance Department and to the Lincoln Security Class that ReliaStar assumed all duties under their policies.

125.    Upon ING's purchase of ReliaStar on September 1, 2000, ING Groep, N.V. and Voya Financial, Inc. (then known as ING America Insurance Holdings, Inc.) jointly assumed all duties with respect to the policies owned by the Lincoln Security Class.

126.   On September 1, 2000, ING, Voya, and ReliaStar consolidated pursuant to the purchase and after the purchase and ING and Voya were a mere continuation of ReliaStar.

127.   ING and Voya represented in writing explicitly and implicitly to the New York State Insurance Department and to the Lincoln Security Class that they assumed all duties under the policies.

128.   At no time was ING or Voya absolved of their duties to the Lincoln Security Class, including the duty to provide an exchange upon demand.

129.   On or after September 1, 2000, the Defendants failed to provide an option for exchange with respect to the policies owned by the Lincoln Security Class.

130.   Defendants' failure to provide an option to exchange the policies owned by the Lincoln Security Class materially breached their Implied Covenant of Good Faith and Fair Dealing including but not limited to the following:

> (a.)   Even if the Policy Agreement is interpreted as only providing an option to exchange if – and only if – the insurance companies happen to have a similar policy available in their portfolio, the Implied Covenant of Good Faith and Fair Dealing created a separate and distinct affirmative duty to actively ensure a policy is available for exchange at any time;

> (b.)   Even if the Policy Agreement is interpreted as only having an option to exchange if – and only if – the insurance companies happen to have a similar policy available in their portfolio, the Implied Covenant of Good Faith and Fair Dealing created a separate and distinct affirmative obligation to notify the Policy Owners if a possible exchange was no longer available;

> (c.)   Even if the Policy Agreement is interpreted as only having an option to exchange if – and only if – the

insurance companies happen to have a similar policy available in their portfolio, the Implied Covenant of Good Faith and Fair Dealing created a separate and distinct affirmative obligation to adjust the premiums to reflect the nonmarketability of an unexchangeable policy and its lower value to the policy owner; and

(d.)    Other additional obligations by the Defendants separate and distinct from their contractual obligations.

131.    The Lincoln Security Class has performed all their obligations under the Agreement, including but not limited to the payment of all Policy premiums and appropriate demands to exchange the Policy.

132.    All members of the Lincoln Security Class who lapsed their policies before maturity and/or who failed to make a demand to exchange the Policy are also in the member class because any such demand would have been in vain, as no exchange was available.

133.    As a direct and proximate cause of Defendants material breaches of the Agreement, the Lincoln Security class was and will continue to be damaged in an amount to be proven at trial.

**SIXTH CLAIM FOR RELIEF**

**Breach of Implied Covenant of Good Faith and Fair Dealing
(Legacy Policy Class against all Defendants)**

134.    The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 133 of this Complaint.

135.    At various times in the 1990s and 2000s ING and Voya purchased various American life insurance companies (including the September 1, 2000 purchase of ReliaStar) and in so doing assumed all duties with respect to the policies owned by the

Legacy Policy Class.   In this Complaint the American life insurance companies purchased by ING and Voya in the 1990s and 2000s are referred to as "Legacy Companies."

136.   After these various mergers and purchases of Legacy Companies, ING and Voya consolidated with the Legacy Companies and ING and Voya acted as a mere continuation of the Legacy Companies.

137.   ING and Voya represented in writing explicitly and implicitly to the New York State Insurance Department and to the Legacy Policy Class that they assumed all duties under the policies.

138.   At no time was ING or Voya absolved of their duties to the Legacy Policy Class, including the duty to provide an exchange upon demand.

139.   On or after their merger and purchase, the Defendants failed to provide the Legacy Policy Class the option to exchange their policies.

140.   Defendants' failure to provide an option to exchange the policies owned by the Legacy Policy Class materially breached the Defendants' Implied Covenant of Good Faith and Fair Dealing in several ways, including but not limited to the following:

141.   Defendants' failure to provide an option to exchange the policies owned by the Lincoln Security Class materially breached their Implied Covenant of Good Faith and Fair Dealing including but not limited to the following:

(a.)   Even if the Policy Agreement is interpreted as only providing an option to exchange if – and only if – the insurance companies happen to have a similar policy available in their portfolio, the Implied Covenant of Good Faith and Fair Dealing created a separate and distinct affirmative duty to actively

ensure a policy is available for exchange at any time;

(b.)   Even if the Policy Agreement is interpreted as only having an option to exchange if – and only if – the insurance companies happen to have a similar policy available in their portfolio, the Implied Covenant of Good Faith and Fair Dealing created an separate and distinct affirmative obligation to notify the Policy Owners if a possible exchange was no longer available;

(c.)   Even if the Policy Agreement is interpreted as only having an option to exchange if – and only if – the insurance companies happen to have a similar policy available in their portfolio, the Implied Covenant of Good Faith and Fair Dealing created a separate and distinct affirmative obligation to adjust the premiums to reflect the nonmarketability of an unexchangeable policy and its lower value to the policy owner; and

(d.)   Other additional obligations by the Defendants separate and distinct from their contractual obligations.

142.   The Legacy Policy Class has performed all their obligations under the Agreement, including but not limited to the payment of all Policy premiums and appropriate demands to exchange the Policy.

143.   All members of the Legacy Policy Class who lapsed their policies before maturity and/or who failed to make a demand to exchange the Policy are also in the member class because any such demand would have been in vain, as no exchange was available.

144.   As a direct and proximate cause of Defendants material breaches of the Agreement, the Legacy Policy Class was and will continue to be damaged in an amount to be proven at trial.

**SEVENTH CLAIM FOR RELIEF**

**Violation of General Business Law § 349**
**(Plaintiff, Lincoln Security Class, and Legacy Policy Class against Defendants)**

145.    The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 144 of this Complaint.

146.    New York General Business Law § 349 prohibits the use of deceptive acts or practices in the conduct of any business, including life insurance, in the State of New York.

147.    Defendants represented in their life insurance agreements that policies would be exchanged upon request.

148.    Defendants represented through their brokers and agents that policies can be exchanged upon request.

149.    Defendants have willfully violated § 349 by among other things failing to provide an exchange of life insurance policies upon request, failing to notify the policy owners that an exchange was unavailable and other failures arising out of failing to ensure an exchange was available for the duration of the relevant policies.

150.    The aforementioned conduct was likely to mislead and in fact has misled reasonable consumers acting reasonably under the circumstances.  For example, reasonable consumers would expect that when they purchase a life insurance policy with an exchange provision, they would be able to exchange their policies upon demand.

151.    No reasonable consumer would expect that after purchasing a life insurance policy with an exchange provision (and organizing their personal and financial lives around the expectations of insurance coverage) they would discover that in fact they

did not have coverage beyond the policy term because the policy was not exchangeable upon demand.

152.    Defendants' conduct is consumer-oriented and of a recurring nature.  The policies owned by Plaintiff and the Classes were policies with modest face values, primarily intended by its purchasers to cover mortgages (upon the untimely death of a primary family provider) and posthumous expenses (including funeral, compensation for lost income, and other related expenses).  The policies at issue in this Complaint were not exotic, investment-oriented Stranger-Owned Life Insurance policies; "jumbo" policies, etc . . . .  These were modest term policies primarily marketed to middle-income families.

153.    As a direct and proximate cause of Defendants' violation of § 349, the Plaintiff and the classes have been damaged as alleged in this Complaint in an amount to be proven at trial.

154.    Plaintiff on behalf of herself and the classes also seeks declaratory and injunctive relief as well as costs and reasonable attorneys' fees.

### EIGTH CLAIM FOR RELIEF

**Unjust Enrichment**
**(Plaintiff, Lincoln Security Class, and Legacy Policy Class against all Defendants)**

155.    The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 154 of this Complaint.

156.    Defendants' tortious conduct as described in this Complaint, allowed Defendants to realize substantial revenues from overcharging on premiums (which premiums were calculated on the basis of an option to exchange upon demand) to

the detriment of Plaintiff and the classes and to the Defendants' benefit and unjust enrichment.

157.     Under New York common law principles of unjust enrichment, it is inequitable for Defendants to retain the benefits conferred by Plaintiff's and the Classes' overpayment.

158.     Plaintiff on behalf of themselves and all class members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and the class members may seek restitution.

## NINTH CLAIM FOR RELIEF

### Declaratory Judgment
### (Plaintiff, Lincoln Security Class, and Legacy Policy Class against all Defendants)

159.     The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 158 of this Complaint.

160.     There exists a real and actual dispute and controversy between the Plaintiff and the Defendants concerning Plaintiff's rights and Defendants' obligations to provide an exchange upon demand.

161.     Accordingly, the Plaintiff on behalf of herself and the Classes seeks a declaration that Defendants are obligated to provide all policy owners with an option to exchange upon demand, and that Defendants are obligated to immediately do all things necessary to allow the policies to be exchanged (including such appropriate underwriting and filings with the New York State Department of Financial Services and equivalent authorities in other relevant jurisdictions).

162.    Such a declaration will help prevent and limit further controversies under the policies by ameliorating the damage caused by the lack of ability to exchange the policies.

### TENTH CLAIM FOR RELIEF

#### Intentional Infliction of Emotional Distress
#### (Plaintiff against all Defendants)

163.    The Plaintiff paid premiums for 25 years and organized their personal and financial lives around the expectation that the life insurance Policy they purchased would always be available for exchange to a new policy.  And that upon an exchange, the Policy term would extend until their mother's passing.

164.    Because of Plaintiffs' breach of contract, Plaintiff is unable to exchange the Policy and upon maturity in October 2016 the Policy will lapse leaving the family with no coverage.

165.    It was extreme and outrageous conduct for multi-billion dollar insurance companies to blatantly violate their duties to Plaintiff by failing to provide an exchange option, at a time when the Plaintiff was most vulnerable.

166.    It was extreme and outrageous conduct for multi-billion dollar insurance companies to threaten that a life insurance policy on a 95-year-old woman would lapse if she survived through its term, with no option to exchange.

167.    Defendants' disregarded the substantial probability of causing Plaintiff severe emotional stress by failing to provide an option to exchange their policy after the policy owner duly paid all premiums for 25 years.

168.    Defendants' disregarded the substantial probability of causing Plaintiff severe emotional stress by creating pressure on her 95 year old mother to pass

before the policy would lapse, when in fact the Defendants were obligated to provide an option to exchange the Policy on demand in which case the policy would not lapse.

169. There was a direct and causal direction between the tortious conduct of Defendants and the injury suffered by Plaintiff.

170. Plaintiff did in fact suffer substantial and severe emotional distress as a direct consequence of Defendants' tortious conduct.

171. Plaintiff suffered damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

1. Declaring this action to be a class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedures;

2. Awarding Plaintiff compensatory and other damages pursuant to their First and Fourth Claims for Relief;

3. Awarding the Lincoln Security Class compensatory and other damages pursuant to the Second and Fifth Claims for Relief;

4. Awarding the Legacy Policy Class compensatory and other damages pursuant to the Third and Sixth Claims for Relief;

5. Awarding the Plaintiff and the classes compensatory and other damages pursuant to the Seventh Claim for Relief;

6. Awarding the Plaintiff and the classes compensatory and other damages pursuant to the Eighth Claim for Relief;

7. Awarding the Plaintiff and the classes injunctive relief pursuant to the Ninth Claim for Relief;

8.    Awarding the Plaintiff damages pursuant to the Tenth Claim for Relief;

9.    Awarding the Plaintiff and the classes reasonable attorneys' fees pursuant to their Seventh Claim for Relief;

10.   Awarding the Plaintiff and the classes pre-judgment and post-judgment interest, as well as costs; and

11.   Awarding the Plaintiff and the classes such other relief as this Court may deem just and proper under the circumstances.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury as to all issues so triable.

**Dated**: September 26, 2016
**At**: Fresh Meadows, NY

Baruch S. Gottesman, Esq. (BG2222)
*Of Counsel*
Horowitz and Rubenstein LLC
c/o 185-12 Union Turnpike
Fresh Meadows, NY 11366

Aryeh Kaufman, Esq.
Law Office of Aryeh Kaufman
(application for admission *phv* to be filed)
5482 Wilshire Blvd., #1907
Los Angeles, CA 90036

*Counsel for Plaintiff*
*and prospective Class Counsel*