UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GLORIA D. WISEMAN,<br><br>      PLAINTIFF,<br><br>v.<br><br>ING GROEP, N.V., VOYA FINANCIAL, INC.,<br>AND RELIASTAR LIFE INSURANCE COMPANY<br>OF NEW YORK,<br><br>      DEFENDANTS. | NO. 1:16-CV-07587 (AJN) |

**MEMORANDUM OF LAW IN SUPPORT OF VOYA FINANCIAL, INC. AND RELIASTAR LIFE INSURANCE COMPANY OF NEW YORK'S MOTION TO DISMISS**

STITES & HARBISON PLLC
Michael T. Leigh
Clark C. Johnson (*pro hac vice forthcoming*)
Jeffrey S. Moad (*pro hac vice forthcoming*)
400 West Market St., Ste. 1800
Louisville, Kentucky  40202

O'TOOLE + O'TOOLE PLLC
Andrew D. O'Toole
22 Valley Road
Katonah, NY  10536

*Counsel for Voya Financial, Inc. and*
*ReliaStar Life Insurance Company of New York*

TABLE OF CONTENTS

Introduction ........................................................................................................... 1

Facts .................................................................................................................... 2

Legal Standard ....................................................................................................... 5

Argument .............................................................................................................. 6

I.   Wiseman's Six Claims Fail as a Matter of Law. .................................................. 7

    A.   The Breach of Contract Claims Fail Because None of Wiseman's
        Allegations Constitutes a Breach of the Policy. ........................................ 7

        1.   Wiseman Requested an Exchange to Which She Was
                Not Entitled. .............................................................................. 7

        2.   No Policy Terms Required Defendants to Notify Wiseman
                of the Exchange Provision, Charge Premiums Other Than
                Those Identified in the Policy, or Maintain the Policy's Value
                on the Secondary Market. ........................................................... 8

    B.   The Implied Covenant Claim Fails Because It Is Duplicative of
        the Breach of Contract Claim, Seeks To Impose Substantive
        Obligations, and Fails To Allege Bad Faith. ............................................. 9

    C.   The GBL § 349 Claim Fails Because Wiseman Was Not Deceived
        in New York, and Her Claim Is Duplicative of Her Contract Claim
        and Time-Barred. .............................................................................. 11

        1.   A New Jersey Resident Allegedly Deceived in New Jersey
                Cannot Assert a GBL § 349 Claim. ................................................ 12

        2.   Wiseman's GBL § 349 Claim Is Duplicative of her Contract
                Claim. ..................................................................................... 13

        3.   The Statute of Limitations Has Run. ............................................. 14

    D.   The Unjust Enrichment Claim Fails Because the Terms of a Contract
        Govern this Dispute. ......................................................................... 15

    E.   The Declaratory Judgment Claim Should Be Dismissed Because a
        Declaration Would Serve No Useful Purpose. .......................................... 16

    F.   The Intentional Infliction of Emotional Distress Claim Fails Because
        the Conduct Alleged in the Complaint Is Not "Outrageous." .................... 17

II.   All Claims against Voya Financial and ING Groep Should Be Dismissed. ............. 18

    A.   RLNY's Former and Current Corporate Parents Are Not Liable
        for RLNY's Acts. .............................................................................. 19

    B.   Wiseman Has No Article III Standing to Sue Any Entity But RLNY. ........ 21

Conclusion ............................................................................................................ 22

TABLE OF AUTHORITIES

## Cases

*24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 429 F.3d 39 (2d Cir. 2005) ............................... 7

*ACE Secs. Corp. Home Equity Loan Trust v. DB Structured Prods.*,
  5 F. Supp. 3d 543 (S.D.N.Y. 2014) ....................................................................3, 6

*Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130 (2d Cir. 1997)............................ 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).......................................................................... 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................5, 6

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190 (N.Y. 1987)............................ 15

*CMG Holdings Group v. Wagner*, 2016 U.S. Dist. LEXIS 121135
  (S.D.N.Y. Sept. 7, 2016) ......................................................................................... 8

*Cunningham v. Security Mutual Ins. Co.*, 689 N.Y.S.2d 290 (App. Div. 1999) ...................... 18

*Degraziano v. Verizon Commc'ns, Inc.*, 325 F. Supp. 2d 238 (E.D.N.Y. 2004) ................. 19, 20

*Deutsche Bank Sec., Inc. v. Rhodes*, 578 F. Supp. 2d 652 (S.D.N.Y. 2008) ........................... 9

*Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357 (2d Cir. 2003) ....................................... 16

*Fleischer v. Phx. Life Ins. Co.*, 858 F. Supp. 2d 290 (S.D.N.Y. 2012) ......................... 9, 11, 13

*Fossil Indus. v. Arjo Wiggins, USA, Inc.*, 2015 U.S. Dist. LEXIS 122024
  (E.D.N.Y. Sept. 12, 2015) ..................................................................................... 16

*Gallo v. Alitalia – Linee Aeree Italiane – Societa Per Azioni*, 585 F. Supp. 2d 520
  (S.D.N.Y. 2008) ................................................................................................... 17

*Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742 (N.Y. 2005)........................................... 15

*Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314 (2002) ...................................... 11, 12

*Guan N. v. N.Y.C. Dep't of Educ.*, 2014 U.S. Dist. LEXIS 44783
  (S.D.N.Y. Mar. 24, 2014)....................................................................................... 21

*Harris v. Allstate Ins. Co.*, 83 F. Supp. 2d 423 (S.D.N.Y. 2000) ......................................... 18

*Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73 (2d Cir. 2002).............................. 9

*Hildene v. Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc.*,
  2012 U.S. Dist. LEXIS 115942 (S.D.N.Y. Aug. 15, 2012)........................................... 10

*Horowitz v. Aetna Life Ins.*, 539 N.Y.S.2d 50 (App. Div. 1989) ......................................... 20

*ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234 (S.D.N.Y. 1997)........................................ 9

*In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390 (S.D.N.Y. 2011) ........................... 19

*Intellectual Capital Partner v. Institutional Credit Partners LLC*,
  2009 U.S. Dist. LEXIS 58768 (S.D.N.Y. July 8, 2009)............................................... 16

*Joseph v. Gnutti Carlo S.p.A.*, 2016 U.S. Dist. LEXIS 123532 (S.D.N.Y. Sept. 12, 2016) ..... 11

*MaGee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582 (S.D.N.Y. 1997)................................. 18

*Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59 (2d Cir. 2012) .................................................... 21

*Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451 (S.D.N.Y. 2014) ...................... 12, 14, 15

*Nials v. Bank of Am.*, 2014 U.S. Dist. LEXIS 77070 (S.D.N.Y. May 30, 2014) .................. 11

*Rivera v. EMTC Med. Dep't*, 2016 U.S. Dist. LEXIS 2195 (S.D.N.Y. Jan. 7, 2016).............. 4

*Schandler v. N.Y. Life Ins. Co.*, 2011 U.S. Dist. LEXIS 46322 (S.D.N.Y. Apr. 26, 2011)...... 14

*Seltzer v. Bayer*, 709 N.Y.S.2d 21 (App. Div. 2000) .................................................... 17, 18

*Spagnola v. Chubb Corp.*, 574 F.3d 64 (2d Cir. 2009) ...................................................... 13

*Statler v. Dell, Inc.*, 775 F. Supp. 2d 474 (E.D.N.Y. 2011) ................................................ 14

*SUS, Inc. v. St. Paul's Travelers Group*, 75 A.D.3d 740 (3d Dept. 2010)................................ 19

*Wiener v. Unumprovident Corp.*, 202 F. Supp. 2d 116 (S.D.N.Y. 2002).................... 12, 17, 18

*Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354 (S.D.N.Y. 2001) .....................................7, 9

## Statutes, Rules & Regulations

Fed. R. Civ. P. 12 ...................................................................................................... 5

Fed. R. Civ. P. 4......................................................................................................... 19

N.Y. Gen. Bus. Law § 349 .........................................................................*passim*

**INTRODUCTION**

In 1991, Gloria Wiseman purchased a $300,000 life insurance policy on the life of her 70-year-old mother, Olga. For years, the policy has been owned and administered by ReliaStar Life Insurance Company of New York ("RLNY"). Wiseman's policy: (*i*) defined its Maturity Date as October 23, 2016; (*ii*) stated that coverage terminated no later than maturity, and (*iii*) promised that on the Maturity Date the insurer would pay the policy's "cash value," not the $300,000 death benefit, if the insured was alive. (ECF No. 1-1, at 5, 10 & 17 (hereinafter "Policy").)

In 2015 and 2016, as the 25-year-old Policy approached maturity and her mother approached age 95, Wiseman sought to exchange the Policy for a new one. Wiseman specifically demanded a new policy that would continue in force until Olga's death and pay her a $300,000 death benefit upon her mother's death, for a premium based on the same formula used to calculate the premium in 1991 when her mother was 70 years old. RLNY refused those requests, precipitating this lawsuit.

While the Policy contains an exchange option, it does not entitle Wiseman to a new policy with the features she demands. The Policy allowed her to exchange "to any plan of whole life or endowment that we issue at the time of exchange" with premiums for the new policy calculated "according to the rates in effect for the age and premium rate class of the Insured *at the time of exchange*." (*Id.* at 18) (emphasis added). In other words, Wiseman could only exchange for a policy that RLNY issued with premiums based on *2016 life insurance rates for a 95-year-old life*—not 1991 rates for a 70-year-old life. No contract provision required RLNY to grant Wiseman's request for a whole life policy that pays a $300,000 death benefit for the same premium or less than the original Policy. RLNY is not alleged ever to have

issued such a policy. Accordingly, Wiseman's claim that RLNY breached the contract by failing to honor her exchange request fails as a matter of law and should be dismissed.

Wiseman's assertion of non-contractual claims also should be rejected. The implied covenant of good faith and fair dealing claim is duplicative of the failed contract claim. Any claim based on New York General Business Law ("GBL") § 349 also is duplicative and fails for the additional reasons that Wiseman claims to have been harmed in New Jersey and the statute of limitations on a GBL § 349 claim has run. The unjust enrichment claim is meritless because there is no dispute that a contract controls. The declaratory judgment claim—like the implied covenant and GBL § 349 claims—serves no purpose and is redundant of the contract claim. And finally, the intentional infliction of emotional distress claim fails because the allegations fall far short of New York's "outrageousness" standard.

Even if any of these claims could proceed, and they cannot, Wiseman's attempt to substantially expand her individual claims and the putative classes by naming Voya Financial, Inc. ("Voya Financial") and ING Groep, N.V. ("ING Groep") as defendants should be rejected. Neither ING Groep nor Voya Financial are parties to Wiseman's contract and are not proper parties to the suit merely by virtue of their status as RLNY's former (ING Groep) and current (Voya Financial) parent companies. Moreover, as Wiseman does not own a Voya Financial or ING Groep policy, she has no standing to sue either of those entities.

## FACTS

In 1991, Gloria Wiseman purchased a $300,000, 25-year Flexible Premium Adjustable Life Insurance Policy from Lincoln Security Life Insurance Company ("Lincoln") to insure the life of her 70-year-old mother, Olga. (ECF No. 1, at ¶ 30

(hereinafter "Compl.").) The policy stated a Maturity Date of October 23, 2016, (Policy at 5), when Olga would be 95 years old. The policy stated that all coverage "shall end at the earliest of" the insured's death or the policy's Maturity Date, among other events. (*Id.* at 10.) The policy's $300,000 death benefit was payable in the event that Olga died before the October 23, 2016 Maturity Date and the policy was in force. (Policy at 17.) If Olga was alive and the policy still in force at the Maturity Date, the insurer agreed to pay "any cash value, less any debt." (Policy at 10.)

The policy also contained a provision that stated: "You may exchange this Policy for a new Policy. Such exchange may be to any plan of whole life or endowment *that we issue at the time of exchange* . . . . Written notice for such exchange must be given to us 31 days in advance . . . . We will issue the new Policy in the same premium rate class as this Policy. We will calculate the premium for the new Policy *according to the rates in effect for the age and premium rate class of the Insured at the time of exchange*. All plans of insurance available for exchange are subject to plan requirements." (Policy at 18 (emphasis added).)

In February 2015, with the Policy nearing maturity, Wiseman made a written exchange request that was plainly at odds with this provision. (Compl. ¶¶ 46, 81 (alleging that Wiseman made appropriate demand for exchange).) She wrote to RLNY: "[I]t is written in the paragraph labelled EXCHANGE: 'You may exchange this policy for a new policy. Such exchange may be to any plan of whole life.'" (Ex. A, Wiseman's Demand for Exchange Ltr., attached to Decl. of Michael T. Leigh)[1] Her letter omitted the subsequent language of the provision, which limits any exchange to a policy "that we [the insurer] issue at the time of exchange." (Policy at 18.)

---

[1] The Court may properly consider documents relied upon by Plaintiff and integral to the claims and allegations in her Complaint. *ACE Secs. Corp. Home Equity Loan Trust v. DB Structured Prods.*, 5 F. Supp. 3d 543, 551 (S.D.N.Y. 2014) (Nathan, J.).

Her letter continued: "[M]y mother has a whole life policy. I am giving you written notice that we wish to exchange this policy, for a similar policy with no age expiration, same premiums or less." (Ex. A.) In fact, Wiseman's Policy was not a whole life policy— and she knew it was approaching maturity. Wiseman also omitted language stating that the insurer would "calculate the premium for the new Policy according to the rates in effect for the age and premium rate class of the Insured at the time of exchange." (Policy at 18.)

Wiseman does not allege that RLNY issued a policy with the features Wiseman demanded when she sought an exchange. Indeed, the Complaint correctly suggests that RLNY did not carry a whole life policy for a 95-year-old at the same or less premium than what was available to her on a term policy issued in 1991 on a 70-year-old. (Compl. at 47, 51, 51.) Wiseman was not entitled, contractually or otherwise, to her requested "similar policy with no age expiration, same premiums or less." Basic insurance and underwriting principles suggest that the annual premiums for a whole life insurance policy for a 95-year-old would nearly equal the death benefit.

The Complaint also describes Defendants' corporate history and structure, though the description is incomplete and inaccurate. According to the Complaint, since Wiseman purchased her Policy from Lincoln in 1991, RLNY has become Lincoln's successor in interest. (Compl. ¶ 15.) Voya Financial owns all of RLNY's stock. (*Id.* ¶ 10.) ING Groep used to be RLNY's parent company and according to the Complaint is a minority shareholder in Voya Financial. (*Id.* ¶ 7.)[2] The Complaint repeatedly concludes that Voya

---

[2] In reality, as of March 2015, ING Groep had completely divested its ownership of Voya Financial common stock. ING Groep, N.V., Report of Foreign Private Issuers (Form 6-K) (Mar. 4, 2015) (disclosing that ING Groep had completed "the divestment of ING's U.S.-based retirement, investment and insurance business a process that started with the initial public offering in May 2013 of Voya Financial, Inc."). The Court "may … look to public records . . . in deciding a motion to dismiss." *Rivera v. EMTC Med. Dep't*, 2016 U.S. Dist. LEXIS 2195, *3 (S.D.N.Y. Jan. 7, 2016) (Nathan, J.).

Financial and ING Groep set "corporate policy" for RLNY, (*e.g. id.* at 7, 11), but it does not plead any facts to suggest any conduct by Voya Financial or ING Groep related to the Policy, or any injury to Wiseman caused by Voya Financial or ING Groep, or that any of these corporate forms should be disregarded.

Based on these allegations, Wiseman asserts six claims: (*i*) breach of contract (Count 1, 2, and 3); (*ii*) breach of the implied covenant of good faith and fair dealing (Count 4, 5, and 6); (*iii*) violation of New York General Business Law § 349 (Count 7); (*iv*) unjust enrichment (Count 8); (*v*) declaratory judgment (Count 9); and (*vi*) intentional infliction of emotional distress (Count 10). Wiseman seeks to assert all but the intentional infliction of emotional distress claim on behalf of herself and two classes. The first class—labeled the "Lincoln Security Class"—comprises individuals who purchased policies from Lincoln that were in force on January 1, 1998, contained an exchange provision, and "which were at any time unavailable for exchange." (Compl. ¶ 59.) The second class—labeled the "Legacy Policy Class"—is significantly larger. It comprises all owners of life insurance policies "issued by any life insurance company with an exchange provision that were at any time after September 1, 2000, owned and/or administered by ING Groep, N.V., Voya Financial, Inc., ReliaStar Life Insurance Company of New York, (and its owners and assigns) which were at any time unavailable for exchange." (*Id.* ¶ 60.)

## LEGAL STANDARD

A complaint that fails "to state a claim upon which relief can be granted" must be dismissed. Fed. R. Civ. P. 12(b)(6). A claim can only survive a Rule 12(b)(6) motion if the plaintiff alleges facts sufficient "to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions." *Twombly*, 550 U.S. at 555.

"In addition to the allegations in the complaint itself, a court may consider documents attached as exhibits, incorporated by reference, or relied upon by the plaintiff in bringing suit . . . ." *ACE Secs. Corp. Home Equity Loan Trust v. DB Structured Prods.*, 5 F. Supp. 3d 543, 551 (S.D.N.Y. 2014) (Nathan, J.). "If a document relied on in the complaint contradicts the allegations in the complaint, the document, not the allegations, control and the court need not accept the allegations in the complaint as true." *Id.*

ARGUMENT

All six of Wiseman's claims should be dismissed. She fails to state a breach of contract claim because the Policy terms are directly at odds with her allegations of breach. Her five remaining claims are simply reiterations of her failed contract claim—all are based on the same erroneous interpretation of her Policy's exchange provision—and fail on this ground alone. Moreover, Wiseman's GBL § 349 claim fails because she does not allege she was deceived in New York and, in any event, the statute of limitations has run. The unjust enrichment claim fails because there is no dispute that a valid contract governs the subject matter of this action. The declaratory judgment claim serves no useful purpose because the legal issues it raises necessarily will be decided in litigation concerning her damages claims. And the intentional infliction of emotional distress allegations fall far short of New York's "outrageousness" standard as a matter of law.

Even if any claims could proceed, they could only do so against RLNY. The only allegations against Voya Financial and ING Groep are vague and conclusory allegations that their former and current corporate affiliation with RLNY and their promulgation of "corporate policies" subject them to suit on a policy administered by RLNY. ING Groep has not been affiliated with RLNY for years, and is merely (incorrectly) alleged to be a minority equity holder in RLNY's parent company, Voya Financial. Voya Financial cannot be liable for RLNY's alleged acts simply on the basis that it is RLNY's parent company. And as Wiseman does not own an ING Groep or Voya Financial policy, she has no standing to assert claims against them, either individually or as a putative class representative.

## I.   Wiseman's Six Claims Fail as a Matter of Law.

### A.   The Breach of Contract Claims Fail Because None of Wiseman's Allegations Constitutes a Breach of the Policy.

To state a breach of contract claim under New York law, a plaintiff must plausibly plead the existence of a contract, adequate performance by the plaintiff, breach by the defendant, and damages. *24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 429 F.3d 39, 41–42 (2d Cir. 2005). "In pleading these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 357–58 (S.D.N.Y. 2001). Wiseman's claims fail because she failed to comply with her Policy's exchange provision and failed to allege a breach of any Policy terms.

#### 1.   Wiseman Requested an Exchange to Which She Was Not Entitled.

Wiseman's allegation that Defendants breached the contract by failing to provide an option to exchange the Policy upon demand fails because Wiseman demanded an exchange not required by the contract. The Policy allowed for an exchange after 31 days' written

notice to "any plan of whole life or endowment *that we issue at the time of exchange*." (Policy at 18 (emphasis added).) It stated that the rate for the new policy would be calculated "according to the rates in effect for the age and premium rate class of the Insured at the time of exchange." (*Id.*) But Wiseman's written notice requested a policy that RLNY *did not issue at the time of exchange*. She demanded that the whole life policy for her 95-year-old mother promise *the same $300,000 death benefit* at *the same or lower premiums* as those featured by her with a maturity date and premiums that were underwritten 25 years ago for a 70-year-old insured. (Ex. A.) Wiseman does not and cannot allege that she requested, in writing, a policy that RLNY issued at the time of exchange, or that she would have paid the significant premiums underwritten for a 95-year-old. No contract provision requires RLNY to exchange an expiring policy for a policy that it did not offer at the time of exchange. *CMG Holdings Group v. Wagner*, 2016 U.S. Dist. LEXIS 121135, at *23–24 (S.D.N.Y. Sept. 7, 2016) (dismissing complaint where plaintiff did not allege and could not prove its own performance). Thus, any breach of contract claim based on RLNY's alleged failure to provide an exchange fails.

> **2.   No Policy Terms Required Defendants to Notify Wiseman of the Exchange Provision, Charge Premiums Other Than Those Identified in the Policy, or Maintain the Policy's Value on the Secondary Market.**

Wiseman's remaining breach of contract allegations are entirely divorced from the contract. No Policy provision requires the insurer to notify the Policy owner "that the policy could not be exchanged upon demand." (Compl. ¶¶ 80(b), 93(b), 103(b).) Likewise, while Wiseman alleges that Defendants overcharged premiums, there is no allegation that Defendants ever charged Wiseman more in premium than what her contract required. No Policy provision required Defendants to calculate premiums based on Wiseman's claim that

she was entitled to effectively extend her Policy indefinitely at no additional cost to her. (*Id.* ¶¶ 80(c), 93(c), 103(c).) And no Policy provision required Defendants to somehow maintain the value of the policies on a secondary market. (*Id.* ¶¶ 80(d), 93(d), 103(d).) These remaining allegations are not tied to any contract provisions; the breach of contract claim therefore fails as a matter of law and should be dismissed with prejudice. *Wolff*, 171 F. Supp. 2d at 357–58 (dismissing breach of contract claim for failure to specify breached provisions).

> **B.**   **The Implied Covenant Claim Fails Because It Is Duplicative of the Breach of Contract Claim, Seeks To Impose Substantive Obligations, and Fails To Allege Bad Faith.**

"A party may maintain a claim for breach of the implied covenant only if the claim is based on allegations different from the allegations underlying the accompanying breach of contract claim." *Fleischer v. Phx. Life Ins. Co.*, 858 F. Supp. 2d 290, 299 (S.D.N.Y. 2012) (quoting *Deutsche Bank Sec., Inc. v. Rhodes*, 578 F. Supp. 2d 652, 654 (S.D.N.Y. 2008)). "Accordingly, [a] claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach . . . of an express provision of the underlying contract." *Id.* (quoting *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243–44 (S.D.N.Y. 1997)). New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a plaintiff also pursues a breach of contract claim based upon the same facts. *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002).

Wiseman's implied covenant claim mirrors her breach of contract claim. The crux of her contract claim is that Defendants allegedly did not allow her to exchange her Policy, did not notify her that an exchange was (allegedly) unavailable, and overcharged her premiums because an exchange was unavailable. (Compl. at ¶¶ 80, 93.) Her implied covenant claim

stems from precisely the same three allegations. (*Id.* at ¶¶ 117, 130.) Wiseman cannot assert both a breach of contract claim and an implied covenant claim on the same factual bases; as a result, the implied covenant claim should be dismissed.

To the extent her implied covenant claim is unique, it fails because Wiseman attempts to use the implied covenant to impose substantive obligations in addition to those contained in the terms of the contract. *See Hildene v. Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc.*, 2012 U.S. Dist. LEXIS 115942, at *22–24 (S.D.N.Y. Aug. 15, 2012) (Nathan. J.) (dismissing implied covenant claim as "an impermissible request that the Court impose broad obligations on [the defendant] found nowhere in the text of the indentures"). As discussed above, the express terms of Wiseman's Policy provides an option to exchange only for a policy that Defendants issued at the time an exchange was sought. Wiseman acknowledges as much in her implied covenant claim by basing her allegations entirely on the exchange provision meaning "if and only if" a policy exists for which she could exchange her existing Policy, (s*ee, e.g.*, Compl. ¶¶ 117(a), (b), (c))—the obvious and reasonable interpretation of the Policy language. Wiseman's implied covenant claim thus seeks to rewrite the Policy and add requirements that do not exist: that Defendants (*i*) had to provide a policy with the features she dictated in the event she sought to exercise the option to exchange; (*ii*) notify her that a policy with the terms she demanded was "unavailable" for an exchange (a feat which would be impossible given that Defendants would not know what policy features she would demand in advance of her formal request to exercise her exchange option); and (*iii*) adjust her premiums on a determination by Defendants that the customized policy she desired would not be available. As Wiseman's implied covenant claim seeks to add substantive obligations to the contract, it fails as a matter of law.

Wiseman's implied covenant claim also fails because she has not and cannot allege bad faith. "In order for [a plaintiff] to assert a cause of action for the breach of good faith and fair dealing that is not duplicative of [her] breach of contract claim, [she] must allege that Defendants fulfilled their contractual obligations but that those obligations were carried out in bad faith in order to deprive [the plaintiff] of the benefit of [her] bargain." *Joseph v. Gnutti Carlo S.p.A.*, 2016 U.S. Dist. LEXIS 123532, at *24–25 (S.D.N.Y. Sept. 12, 2016) (Nathan, J.) (quotations omitted) (dismissing implied covenant claim). That RLNY did not issue a policy with the features Wiseman demanded at the time of her desired exchange does not mean that RLNY acted in bad faith, and Wiseman has not alleged as much. Thus, the implied covenant claim fails for this additional reason.

### C. The GBL § 349 Claim Fails Because Wiseman Was Not Deceived in New York, and Her Claim Is Duplicative of Her Contract Claim and Time-Barred.

To state a claim under New York GBL § 349, a plaintiff must plausibly allege that the defendant engaged in conduct that (*i*) was consumer oriented; (*ii*) was deceptive or misleading in a material way; and (*iii*) caused the plaintiff injury. *Nials v. Bank of Am.*, 2014 U.S. Dist. LEXIS 77070, at *8 (S.D.N.Y. May 30, 2014) (Nathan, J.). Private contract disputes are not consumer oriented, and mere speculation that others have been treated in the same fashion is insufficient to sustain a claim. *Id.* The challenged acts must occur within the State of New York, *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 321 (2002), and the injury alleged must not be duplicative of a breach of contract claim, *Fleischer v. Phx. Life Ins. Co.*, 858 F. Supp. 2d 290, 304–06 (S.D.N.Y. 2012). The statute of limitations is three years, and it begins to run based on when the alleged deception occurred and when the plaintiff is first injured—not "upon any date when discovery of the alleged deceptive

practice is said to occur." *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 461–64 (S.D.N.Y.

2014). Wiseman's GBL § 349 claim should be dismissed for three reasons: Wiseman is a

New Jersey resident allegedly deceived in New Jersey, her § 349 claim duplicates her

contract claim, and her § 349 claim is time-barred.

### 1.    A New Jersey Resident Allegedly Deceived in New Jersey Cannot Assert a GBL § 349 Claim.

Wiseman cannot assert a GBL § 349 claim because she does not allege that she was

deceived in New York. GBL § 349 prohibits deceptive practices "in the conduct of any

business, trade or commerce or in the furnishing of a service *in the state.*" *Goshen*, 98 N.Y.2d

at 324; *see also Wiener v. Unumprovident Corp.*, 202 F. Supp. 2d 116, 120 (S.D.N.Y. 2002).

"Thus, to qualify as a prohibited act under the statute, *the deception of a consumer must occur in

New York.*" *Goshen*, 286 N.Y.2d at 325 (emphasis added). The New York legislature did not

intend for this statute to apply to plaintiffs allegedly deceived in other states, even if the

defendant is based in New York. *Id.* at 325-26.

In *Goshen*, the plaintiff (a Florida resident) received information from the defendant-

insurer in Florida, purchased her policy in Florida, and paid premiums in Florida. *Id.* at

326. Though the defendant-insurer had extensive ties to New York, *id.* at 321, the New

York Court of Appeals affirmed the dismissal of the Florida plaintiff's GBL § 349 claims. *Id.*

at 326. Likewise, in *Wiener v. Unumprovident Corp.*, 202 F. Supp. 2d 116, 120 (S.D.N.Y.

2002), the court dismissed a GBL § 349 claim against an insurer because the plaintiff did not

allege that the allegedly deceptive practices occurred within New York. Although the

plaintiff submitted her application for the policies in New York, she was a New Jersey

resident and received her benefits in New Jersey in the eight-year period before the lawsuit.

*Id.* Moreover, the plaintiff's theory of deceptive conduct appeared to be the transfer of

administration of her policy from a Massachusetts office to a Tennessee office as part of a "sinister cost-cutting plan designed to indiscriminately eliminate open claims." *Id.*

Here, too, Wiseman fails to allege that any deceptive conduct occurred in New York. Indeed, her Complaint simply states that she is a New Jersey resident who owns the life insurance policy at issue. (Compl. at 3.) The letter she sent demanding a policy exchange contained a return address in New Jersey. (*See* Ex. A.) While RLNY and Voya Financial have contacts with New York, Wiseman's failure to allege that deceptive acts occurred and harmed her in New York is fatal to her GBL § 349 claim.

### 2.     Wiseman's GBL § 349 Claim Is Duplicative of her Contract Claim.

The GBL § 349 claim also fails because, like Wiseman's other non-contract claims, it mirrors her breach of contract allegations. A GBL § 349 claim without unique injury is not actionable. *See Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). "Although a monetary loss is a sufficient injury to satisfy the requirement under GBL § 349, that loss must be independent of the loss caused by the alleged breach of contract." *Id.* "[T]wo claims predicated on the same conduct are likely to involve similar injury." *Fleischer*, 858 F. Supp. 2d at 304–06 (dismissing § 349 claim because "any loss alleged in connection with" the § 349 claim "cannot be unique to" the § 349 claim, "but rather must stem from the alleged breach of contract").

The allegations giving rise to Wiseman's breach of contract and GBL § 349 claims are substantively identical. She asserts a breach of contract claim based on allegations that Defendants failed to provide an option to exchange her Policy, failed to notify Wiseman that her Policy could not be exchanged, overcharged premiums based on the exchange option, and devalued her Policy on the secondary market based on the exchange option—all

of which caused the Policy to lapse and Wiseman to lose her premiums paid. (Compl. ¶¶ 80, 93.) Likewise, in support of her GBL § 349 claim, Wiseman alleges that Defendants (*i*) "represented in their life insurance agreements" and "through their brokers" that "policies can be exchanged upon request"; (*ii*) failed "to provide an exchange of life insurance policies upon request"; and (*iii*) failed "to notify the policy owners that an exchange was unavailable. (*Id.* at ¶¶ 147–49.) Wiseman's GBL § 349 claim also relies upon the same alleged damages: lost premiums or lost value on the secondary market. With no allegations or damages, Wiseman's GBL § 349 claim must be dismissed.

### 3.   The Statute of Limitations Has Run.

Wiseman's GBL § 349 claim is subject to a three-year statute of limitations. *Schandler v. N.Y. Life Ins. Co.*, 2011 U.S. Dist. LEXIS 46322, at *4 (S.D.N.Y. Apr. 26, 2011). The "discovery rule" does not apply to § 349 claims. *Marshall*, 51 F. Supp. at 461–64. Rather, "accrual occurs when [the] plaintiff first suffered injury." *Id.* (quotations omitted); *see also Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 484 (E.D.N.Y. 2011) (holding GBL § 349 claim time-barred because "accrual occurs when [p]laintiff first suffered injury" and "the allegedly faulty capacitors were present in the computers purchased at the time of delivery").

Here, the conduct Wiseman alleges was deceptive and misleading occurred, and the injuries Wiseman alleges flowed from that conduct was first suffered, far earlier than three years before her commencement of this action. Wiseman alleges that she was deceived by Defendants' "life insurance agreements" and "brokers" that "policies can be exchanged upon request" when she purchased her Policy 25 years ago. (*See* Compl. ¶ 147–48.) One of Wiseman's alleged injuries—that she overpaid premiums—likewise began either 25 years ago in 1991, or when Lincoln was acquired by ING in September 2000. (*See id.* at ¶¶ 54, 35

& 38.) Wiseman's other alleged injury—that the value of her Policy was "substantially lowered on the secondary market" because it "could not be exchanged," (*id.* at 55), likewise would have begun in September 2000. (*Id.* at ¶¶ 35 & 38.) Because the basis for and alleged damages from her GBL § 349 claim occurred decades ago, Wiseman's § 349 claim is time-barred and should be dismissed.

> **D.   The Unjust Enrichment Claim Fails Because the Terms of a Contract Govern this Dispute.**

"[W]hen a matter is controlled by contract, the plaintiff has no valid claim for unjust enrichment under New York law." *Marshall*, 51 F. Supp. 3d at 471; *see also Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005) (affirming dismissal of unjust enrichment claim because "the disputed terms and conditions fall entirely within the insurance contract"). Absent a "bona fine dispute whether a relevant contract exists or covers the dispute at issue," an unjust enrichment claim cannot lie. *Marshall*, 51 F. Supp. 3d at 471; *see also Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.").

Wiseman attached the contract that governs this dispute to her Complaint. (*See* Compl. at 1-1.) It contains specific provisions that resolve Wiseman's claims—it identifies the maturity date in October 2016, (*id.* at 5), states that coverage terminates at maturity, (*id.* at 10), offers an option for an exchange to a plan "that we issue at the time of exchange," (*id.* at 18), and states that the premium rate for a new policy is calculated "according to the rates in effect . . . at the time of exchange," (*id.*). There is no bona fide dispute that this contract exists and covers the dispute; thus, the unjust enrichment must be dismissed.

**E.      The Declaratory Judgment Claim Should Be Dismissed Because a Declaration Would Serve No Useful Purpose.**

The Court should decline to exercise jurisdiction over the declaratory judgment claim because a declaration would serve no useful purpose in light of Wiseman's asserted damages claims. In deciding whether to exercise its broad discretion to decline jurisdiction over a declaratory judgment action, a court considers five factors: (*i*) whether the judgment would serve a useful purpose in clarifying or settling the legal issues involved; (*ii*) whether a judgment would finalize the controversy and offer relief from uncertainty; (*iii*) whether the proposed declaration is being used merely for "procedural fencing"; (*iv*) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (*v*) whether there is better or more effective remedy. *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359–60 (2d Cir. 2003) (affirming dismissal of declaratory judgment claim).

Wiseman's declaratory judgment claim serves no useful purpose because the legal issues it raises necessarily will be decided in litigation concerning her damages claims. *See Fossil Indus. v. Arjo Wiggins, USA, Inc.*, 2015 U.S. Dist. LEXIS 122024, at *40–43 (E.D.N.Y. Sept. 12, 2015) (dismissing declaratory judgment claim and collecting cases holding that "[w]here, as here, a plaintiff seeks declaratory relief that will be resolved by the litigation of its damage claims, courts have found a declaratory judgment to serve no 'useful purpose' and dismissed claims seeking such relief"); *Intellectual Capital Partner v. Institutional Credit Partners LLC*, 2009 U.S. Dist. LEXIS 58768, at *17 (S.D.N.Y. July 8, 2009) ("[W]hile the requested relief raises no federalism concerns or concerns about procedural fencing, overall I find that here declaratory relief would serve no useful purpose as the legal issues will be resolved by litigation of the breach of contract claim."). In both her damages claims and her

declaratory judgment claim, Wiseman alleges that a dispute exists over Defendants' obligation to provide an exchange upon demand. (*See, e.g.*, Compl. ¶ 80, 160.) But in resolving that dispute, the Court must decide whether a provision entitling an insured to exchange her Policy to one "that [it] issue[s] at the time of exchange," "according to the rates in effect for the age . . . of the Insured at the time of exchange," means that the policy owner is entitled an exchange to a policy with features the insurer does not offer: e.g., a policy with a premium determined by a 25-year-old policy formula based on an insured life 25 years younger with no policy maturity date. With or without a declaratory judgment claim, the Court will decide the issue. Because Wiseman's declaratory judgment claim serves no useful purpose, and a better remedy exists in the form of deciding Wiseman's damages claims, the Court should decline to exercise jurisdiction and dismiss the declaratory judgment claim.

### F.    The Intentional Infliction of Emotional Distress Claim Fails Because the Conduct Alleged in the Complaint Is Not "Outrageous."

The elements of intentional infliction of emotional distress ("IIED") are (*i*) extreme and outrageous conduct, (*ii*) intent to cause severe emotional distress, (*iii*) severe emotional distress, and (*iv*) a causal relationship between the outrageous conduct and the emotional distress. *Wiener*, 202 F. Supp. 2d at 122–23. The alleged misconduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Seltzer v. Bayer*, 709 N.Y.S.2d 21, 23 (App. Div. 2000).

The outrageousness element is "all but impossible" to satisfy. *Gallo v. Alitalia – Linee Aeree Italiane – Societa Per Azioni*, 585 F. Supp. 2d 520, 554 (S.D.N.Y. 2008). Of the IIED claims considered by the New York Court of Appeals, "every one has failed because the

conduct was not sufficiently outrageous." *Seltzer*, 709 N.Y.S.2d at 23. Courts applying New York law have dismissed claims where the plaintiff alleged the defendant: (*i*) dumped a pile of cement in front of the plaintiff's house, threw lit cigarettes into his backyard, threw eggs on his front steps, and threatened to paint a swastika on his house, *id.*; (*ii*) terminated the plaintiff's disability benefits after calling the plaintiff's treating physicians in an attempt to influence their opinions, *MaGee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 587 (S.D.N.Y. 1997); and (*iii*) failed to timely compensate the plaintiff under an insurance policy after a home was destroyed by fire, leaving the plaintiff homeless and without possessions for over a year, and then accused the plaintiff of arson and lying under oath, *Cunningham v. Security Mutual Ins. Co.*, 689 N.Y.S.2d 290, 291 (App. Div. 1999). In other cases involving the terms of insurance policies, courts have rejected IIED claims as "true contract cases recast in tort." *Wiener*, 202 F. Supp. 2d at 122–23 (citing *Harris v. Allstate Ins. Co.*, 83 F. Supp. 2d 423 (S.D.N.Y. 2000), *MaGee*, 954 F. Supp. at 587, and *Cunningham*, 689 N.Y.S.2d at 292).

Wiseman, too, has improperly recast a contract dispute as a tort claim. But as detailed above, her allegation that RLNY declined to exchange an expiring life insurance policy into a whole life policy at no additional cost does not involve improper—much less "outrageous"—conduct. (*See* Policy at 18.) The conduct alleged falls far short of the "all but impossible" standard for outrageousness, so the IIED claim fails.

## II.   All Claims against Voya Financial and ING Groep Should Be Dismissed.

Even if Wiseman has asserted any plausible claims against RLNY—and she has not—ING Groep and Voya Financial are improper parties that Wiseman has named in an attempt to expand a putative class action to include policyholders outside of New York. Neither ING Groep nor Voya Financial has any connection to this action other than ING

Groep being a former corporate parent company of RLNY, and allegedly now merely a

minority equity holder in Voya Financial (an incorrect allegation); and Voya Financial

being RLNY's current parent company. Wiseman has not and cannot plead any facts to

pierce the corporate veil. *See SUS, Inc. v. St. Paul's Travelers Group*, 75 A.D.3d 740 (3d Dept.

2010) (affirming dismissal of the insurance company's parent companies because plaintiff

failed to sufficiently allege facts to hold parent liable under policy issued by subsidiary

insurance company). Moreover, neither ING Groep nor Voya Financial is a party to

Wiseman's contract, so Wiseman has no standing to sue ING Groep or Voya Financial

either individually or on behalf of her proposed Legacy Policy Class.[3]

### A. RLNY's Former and Current Corporate Parents Are Not Liable for RLNY's Acts.

"[L]iability is never imposed solely upon the fact that a parent owns a controlling

interest in the shares of a subsidiary." *Degraziano v. Verizon Commc'ns, Inc.*, 325 F. Supp. 2d

238, 245–46 (E.D.N.Y. 2004) (quotation omitted). Rather, in order to pierce the corporate

veil and hold a parent company liable for the acts of its subsidiaries, a plaintiff must show:

(*i*) that the parent company "exercised complete domination over the corporation with

respect to the transaction at issue"; and (*ii*) "that such domination was used to commit a

fraud or wrong that injured the party seeking to pierce the veil." *Id.* (quoting *Am. Fuel Corp.*

*v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997)); *see also Horowitz v. Aetna Life*

*Ins.*, 539 N.Y.S.2d 50, 53 (App. Div. 1989) ("A parent company is not liable for the torts of

its subsidiary, even if it is a wholly owned subsidiary, unless it can be shown that the

parent's control over the subsidiary disregards its corporate independence."); *In re Digital*

---

[3]  As of the filing of this Motion, ING Groep—a Netherlands entity—does not appear to have been properly served per Fed. R. Civ. P. 4(h), and so is not properly joined as a defendant. (*See generally* CM/ECF Docket.)

*Music Antitrust Litig.*, 812 F. Supp. 2d 390, 417–19 (S.D.N.Y. 2011) (dismissing claims against parent companies where the plaintiff did not allege actionable conduct against the parent companies and alleged "dominion and control" in only conclusory terms).

Wiseman's only allegations against Voya Financial relate to its status as a parent company to RLNY. The Complaint does not and could not allege that Voya Financial was a party to a contract with Wiseman—*only RLNY and Wiseman are parties to that contract*—so the breach of contract and implied covenant claims fail as to Voya Financial. Nor does the Complaint allege that Voya Financial deceived her (for the GBL § 349 claim), that Voya Financial engaged in "outrageous" conduct (for the IIED claim), or that Voya Financial received an improper benefit from Wiseman (for the unjust enrichment claim). As a result, Wiseman can assert claims against Voya Financial (or any other current or former parent company to RLNY) only if she can allege sufficient facts suggesting that RLNY's corporate form should be set aside.

Unsurprisingly, the Complaint is devoid of plausible factual allegations suggesting that RLNY's corporate form should be disregarded. It does not allege that Voya Financial exercised "complete domination" over RLNY, and it does not allege that Voya Financial used RLNY's corporate form to perpetrate a fraud. *Degraziano*, 325 F. Supp. 2d at 245–46. Wiseman's sole, conclusory effort to assert allegations against Voya Financial—alleging that Voya Financial established unspecified "corporate policies" that were passed down to RLNY, (Compl. ¶ 10)—is hardly the kind of plausible factual allegations of "dominion and control" or "fraud" that could justify piercing the corporate veil under New York law. Because Wiseman cannot allege any direct claims against Voya Financial, nor can she

allege any facts to justify piercing the corporate veil, all claims against Voya Financial should be dismissed.[4]

### B.    Wiseman Has No Article III Standing to Sue Any Entity But RLNY.

Last, Wiseman has no standing to sue Voya Financial (or ING Groep) in her putative "Legacy Policy Class" because she does not have a Voya Financial (or ING Groep) policy. A plaintiff, even a putative class action plaintiff, has no standing to sue defendants that have not injured her. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62–66 (2d Cir. 2012). "[T]he fact that this case is a putative class action does not affect the showing that Article III requires the named Plaintiffs themselves to make." *Guan N. v. N.Y.C. Dep't of Educ.*, 2014 U.S. Dist. LEXIS 44783, at *24–25 (S.D.N.Y. Mar. 24, 2014) (Nathan, J.).

Wiseman's attempt to bootstrap her claims based on her contract with one entity (RLNY) to include another entity (Voya Financial or ING Groep) that allegedly owns and administers policies with others should be rejected. Voya Financial (or ING Groep) could not have caused Wiseman any injury-in-fact because *Voya Financial (or ING Groep) never owned or administered her Policy*. Thus, Wiseman lacks Article III standing to sue Voya Financial (or ING Groep) either individually or on behalf of her putative "Legacy Policy Class," and any claims against Voya Financial (or ING Groep) should be dismissed with prejudice.

---

[4] In the event Wiseman ever properly serves ING Groep and the Court determines that it can exercise personal jurisdiction over ING Groep, the same argument requires dismissal of all claims against it. ING Groep is merely the *former* corporate parent of RLNY, and is alleged (incorrectly) to now simply own a minority equity interest in RLNY's current corporate parent, Voya Financial. (Compl. ¶ 7 (alleging that ING Groep owns between 25% and 43% of Voya Financial's stock).) As demonstrated by ING Groep's SEC filing, of which the Court may take judicial notice on a motion to dismiss, ING Groep does not own any Voya Financial common stock. (*See surpra* note 2.) In any event, as there are no well-pled allegations suggesting RLNY's corporate form should be disregarded to reach Voya Financial, *a fortiori*, there are no well-pled allegations suggesting that Wiseman should be able to assert claims against the even further disconnected ING Groep.

## CONCLUSION

The Complaint should be dismissed in its entirety with prejudice.

Respectfully submitted,

Dated: November 23, 2016           /s/  *Michael T. Leigh*
      Louisville, Kentucky           Michael T. Leigh
                                    Clark C. Johnson (*pro hac vice forthcoming*)
                                    Jeffrey S. Moad (*pro hac vice forthcoming*)
                                    Louisville, KY  40202-3352
                                    Tel:     (502) 587-3400
                                    Email:  mleigh@stites.com
                                              cjohnson@stites.com
                                              jmoad@stites.com

Andrew D. O'Toole
O'Toole + O'Toole PLLC
22 Valley Road
Katonah, NY  10536
Tel:     (914) 232.1511
Email: aotoole@otoolegroup.com

*Counsel for Voya Financial, Inc. and*
*ReliaStar Life Insurance Company of New York*

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2016 I served the foregoing document on all counsel of record through CM/ECF, and on the following by email:

Baruch S. Gottesman, Esq.
Horowitz & Rubenstein LLC
baruchesq@yahoo.com
*Counsel for Plaintiff*

Aryeh Kaufman, Esq.
Law Office of Aryeh Kaufman
aryeh@akaufmanlegal.com
aryehkaufmanesq@gmail.com
*Counsel for Plaintiff*

                                         /s/  Michael T. Leigh
                                        *Counsel for Voya Financial, Inc. and*
                                        *ReliaStar Life Insurance Company of New York*