**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
|
**GLORIA D. WISEMAN**                            |        Civil Action No. <u>1:16-CV-07587</u>
|
        Plaintiff,                                 |        **FIRST AMENDED**
|        **CLASS ACTION COMPLAINT**
   ~ *against* ~                              |
|        **TRIAL BY JURY DEMANDED**
|
**ING GROEP, N.V., VOYA FINANCIAL;** and        |
**RELIASTAR LIFE INSURANCE COMPANY**            |
**OF NEW YORK;**                                 |
|
        Defendants                                |
|
-------------------------------------------------------------x

        Comes now Plaintiff **GLORIA D. WISEMAN** by and through her attorney, **BARUCH S. GOTTESMAN, ESQ.**, on behalf of herself and on behalf of all others similarly situated, as and for their Complaint against Defendants **ING GROEP N.V.**, **VOYA FINANCIAL, INC.**; and **RELIASTAR LIFE INSURANCE COMPANY OF NEW YORK** does state as follows:

<u>**NATURE OF THE ACTION**</u>

        1.    This is a class action brought by the Plaintiff individually and on behalf of similarly-situated owners of life insurance policies administered by ING Groep, N.V., Voya Financial, Inc., Reliastar Life Insurance Company of New York, which policies were not eligible for exchange in contravention to the terms of the policies and New York law.  Defendants' failure to provide their policy owners the option to exchange their policies violated the plain terms of the insurance policies, breached the covenant of good faith and fair dealing, and violated New York General Business Law § 349.  Plaintiff and the Classes suffered financial damages as a result.

2.      Plaintiff brings this suit to seek injunctive, declaratory, and monetary relief to require Defendants to make Plaintiff and the Classes whole with respect to all subject policies, all excess premiums collected, to provide the Plaintiff and the Classes the option to exchange their policies, and in the alternative to pay Plaintiff and the Classes damages.

## THE PARTIES

### i.      Plaintiff Wiseman

3.      Plaintiff **GLORIA D. WISEMAN** is a natural person resident in the State of New Jersey.  Ms. Wiseman owned a life policy insured by Defendants was in force for a quarter century.

### ii.      Defendant ING Groep N.V.

4.      Defendant **ING GROEP N.V.**, is a *naamloze vennootschap* (sometimes translated as "public company") organized and existing under the laws of The Netherlands.  ING GROEP N.V. maintains a presence in this District through its representative office at 1325 Avenue of the Americas and ING GROEP N.V. lists American Depository Receipts on the New York Stock Exchange in this District.

5.      A more thorough description of ING GROEP N.V. co-venture with the other Defendants is included later where this Complaint describes the relationship between the Defendants (See ¶¶ 85 – 102).

6.      In this Complaint **ING GROEP N.V.** is sometimes referred to as "**ING**".

### iii.      Defendant Voya Financial, Inc.

7.      Defendant **VOYA FINANCIAL, INC.** is an unauthorized foreign business corporation organized and existing under Delaware law which maintains its headquarters' offices at 230 Park Avenue in this District.  **VOYA FINANCIAL, INC.** was formerly known at various times as ING American Insurance Holdings, Inc. and ING U.S., Inc.

8.      At all times beginning September 1, 2000, and continuing through the filing of this Complaint, Defendant **VOYA FINANCIAL, INC.** wholly owned the Policy Administrator and was entirely responsible for all corporate policies related to the Wiseman Policy and all life insurance policies owned by the Class.

9.      A more thorough description of **VOYA FINANCIAL, INC.**'s co-venture with **RELIASTAR LIFE INSURANCE COMPANY OF NEW YORK** is included later where this Complaint describes the relationships between the parties (See ¶¶ 85 – 102).

10.      Additionally and/or in the alternative, **VOYA FINANCIAL, INC.** was the agent through which **ING GROEP N.V.** administered all corporate policies related to the Wiseman Policy and all life insurance policies owned by the Class.

11.      In this Complaint **VOYA FINANCIAL, INC.** is sometimes referred to as "**Voya**".

### iv.      Defendant ReliaStar

12.      Defendant **RELIASTAR LIFE INSURANCE COMPANY OF NEW YORK** is an insurance company organized and existing under New York law and maintains its home office at 1000 Woodbury Road, Woodbury in the County of Nassau in

the State of New York.  **RELIASTAR LIFE INSURANCE COMPANY OF NEW YORK** was formerly known at various times as The Morris Plan Insurance Society, Bankers Security Life Insurance Society, and ReliaStar Bankers Security Life Insurance Company.

13.    Defendant **RELIASTAR LIFE INSURANCE COMPANY OF NEW YORK** is also the successor of, among other companies, Lincoln Security Life Insurance Company.

14.    In    this    Complaint  **RELIASTAR    LIFE    INSURANCE COMPANY OF NEW YORK** is sometimes referred to as "**ReliaStar**".

15.    At all times relevant to this Complaint, the Defendants were affiliates, parent companies, agents, representatives, co-venturers, subsidiaries of each other and otherwise alter-egos of one another.

## JURISDICTION AND VENUE

16.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d) because this is a representative class action with diversity between at least one class member and one defendant because Plaintiff is a citizen of New Jersey and Defendants include citizens of New York, Delaware and The Netherlands.

17.    The aggregate amount of damages exceeds $5,000,000.00, because each individual class member suffered tens or hundreds of thousands of dollars in damage and upon information and belief there are at least thousands of class members.

18.    Upon information and belief, less than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State of New York.

*See* Sharon Sybrandt, N.Y.S. Dep't of Fin. Svcs. Report on Market Conduct Examination of ReliaStar Life Insurance Company of New York as of Dec. 31, 2008, at p. 4.

19.     Therefore this action falls within the original jurisdiction of this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

20.     This Court has authority pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., to grant declaratory relief in favor of Plaintiff and the Class.

21.     This Court has personal jurisdiction over Defendant **ING** because for over a decade **ING** through its local agents and under the **ING** brand actively administered the subject policies and in particular administered the Wiseman policy in this State.

22.     This Court also has personal jurisdiction over Defendant **ING** because even after **ING**'s alleged divestment of its American life insurance assets, **ING** continues to regularly transact and solicit business in the State of New York including by maintaining a representative office and by listing American Depository Receipts on the New York Stock Exchange.

23.     This Court also has personal jurisdiction over Defendant ING because ING maintains a Representative Office in New York State that elected to subject itself to the regulations of the New York State Department of Financial Services and the Federal Reserve.

24.     This Court also has personal jurisdiction over Defendant ING because ING maintains a subsidiary in New York State, ING Financial Holdings Corporation, which through several operating subsidiaries (one of which elected to register with the U.S. Commodity Futures Trading Commission as a swap dealer and

another of which elected to register with the U.S. Securities and Exchange Commission as a securities broker-dealer) offers various financial products, including lending, and financial markets products.

25.     This Court also has personal jurisdiction over Defendant ING because ING and its subsidiaries have consistently availed themselves of the courts of the United States including ongoing cases with ING and its subsidiaries as Plaintiff.

26.     This Court has personal jurisdiction over Defendant **ReliaStar** because they are organized under New York law and because they maintain their home offices in this State.

27.     This Court has personal jurisdiction over Defendant **Voya** because they maintain their headquarters in this State and because from at least September 2000 through its Dissolution by Proclamation on August 31, 2016, **Voya** was duly registered as a foreign corporation pursuant to New York Business Corporations Law § 1301, et seq.

28.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because the events giving rise to the underlying causes of actions occurred in this District, including Defendants' administration of the policies in this District.

## **FACTUAL BACKGROUND**

### **i.)     Wiseman Policy**

29.      On October 16, 1991, Lincoln Security Life Insurance Company issued a life insurance policy on Ms. Olga Wiseman, which was known as Policy No. #[*redacted*]960G.  In this Complaint, the life insurance policy described in this paragraph is sometimes referred to "the Wiseman Policy."

30.     At the time the Policy was issued the insured was 70 years old. The Insured is now 95 years old and the policy remained in force for the entire term of the Policy.

31.     The Policy provided for a minimal face value of three hundred thousand dollars ($300,000.00), plus accumulated value in the policy at a guaranteed interest rate of 4.5% pa.

32.     By letter dated December 23, 2014, Defendants sent Plaintiff a document that Defendants represented to be a "duplicate policy".

33.     Upon information and belief the Defendants do not have possession of the Wiseman policy nor any copy of the Wiseman policy.

34.     The basis for Plaintiff's belief that the Defendants do not have possession of the Wiseman policy nor any copy of the Wiseman policy is that the document sent by Defendants to Plaintiff and described as a "duplicate policy", contains no illustrations (which are of the essence of a life insurance contract) and contains no application and no signatures of either the policy owner, the insured, or any representative of the insurance carrier.

35.     Further the "duplicate policy" appears to be stitched together from various forms used at the time that the policy was issued, but is not an accurate copy of the original policy.

36.     Plaintiff has no direct knowledge of when Defendants lost the Wiseman policy, but Discovery to be conducted will evidence when and how Defendants failed to keep a copy of Plaintiff's life insurance policy in violation of New York law and as part of a practice and official policy of negligence by Defendants toward Plaintiff.

37.     Pursuant to Rule 5.2, and since the Insured is alive a copy (with social security number and other private information redacted) of the "duplicate Policy" is annexed hereto as **Exhibit A** and made a part of this Complaint.  If necessary and upon the issuance of an appropriate protection order, an unredacted copy of the "duplicate Policy" will be filed.

38.     On January 1, 1998, Lincoln Security Life Insurance Company merged with ReliaStar Financial Corporation and was renamed to ReliaStar Life Insurance Company of New York.

39.     On September 1, 2000, **ING GROEP N.V.**'s American holding company, ING America Insurance Holdings, Inc., purchased ReliaStar Financial Corporation.

40.     Upon ING's purchase of ReliaStar, ING undertook responsibility for all the insurance company's duties under the Wiseman policy.

41.     Upon information and belief, when applying to the then-New York State Insurance Department for approval of the merger and purchase, ING and Reliastar made express representations to the Department about the co-management of actuarial and managerial control of life insurance policies.  The basis of Plaintiff's belief is their understanding that ReliaStar has always represented itself as acting under the ING brand and as agent of ING.

42.     Until the Voya rebranding, ReliaStar marketed itself exclusively under the ING brand, using the ING orange lion logo, and held itself out as acting at all times at the direction ING.  ReliaStar illustration software represented that actuarial assessments made on potential clients were "presented" by ING.  ReliaStar was

universally referred to in the life insurance industry as "ING" and for those, among other, reasons since September 1, 2000, through the filing of the Complaint, Defendant ING remained jointly and severally responsible for the administration of the Wiseman Policy and fulfillment of its terms.

43.     From September 2000 through the Voya rebranding and/or the alleged divestment of its American life insurance holdings, ING was entirely responsible for the administration of the Wiseman policy.  Subsequent to ING's alleged divestment, the administration of the Policy continued with the same ING personnel and pursuant to practices and corporate management policies put in place by ING.

44.     As of the filing of this Complaint, **Voya** describes its relationship with its wholly owned subsidiary **ReliaStar** as that of a "family" reflecting their relationship as affiliates, parent companies, agents, representatives, co-venturers, subsidiaries of each other and otherwise alter-egos of one another.

45.     A more thorough description of the Defendants' co-venture is included later where this Complaint describes the relationships between the parties (See ¶¶ 85 – 102).

### ii.)     Exchange Provision

46.     The Wiseman Policy is a flexible premium adjustable life insurance policy with an option to exchange the policy to a whole life policy or endowment.

47.     The owner's decision to purchase a life insurance policy from Lincoln and in particular to purchase a flexible premium adjustable life insurance policy

was made after express representations by Lincoln Security Life Insurance Company that an option to exchange the Policy would be available upon thirty-one day's request.

48.   The Plaintiff would not have purchased the Wiseman Policy without the option to exchange the policy because the option to exchange the policy was of the essence of the agreement to purchase the policy and material inducement for the policy purchase.

49.   Plaintiff is not in possession of the original policy documents from the early 1990s.

50.   Plaintiff requested a copy of the Policy in 2014, but Defendants have failed to provide the Plaintiff a copy of their Policy (as required pursuant to the policy terms and New York law).

51.   The language included below is taken verbatim from a document called "duplicate Policy" which Defendants have represented as including the language of the original Policy.

52.   Upon information and belief the actual language of the Wiseman Policy contains the language described here or language more favorable to the Plaintiff.

53.   The Policy provided as follows:

"EXCHANGE: You may exchange this Policy for a new Policy.  Such exchange may be to any plan of whole life or endowment that we issue at the time of exchange, except:

(1.)   Flexible premium adjustable life insurance; or

(2.)   Adjustable cash value plans.

You may not exchange this Policy for Term insurance.

Written notice for such exchange must be given to us 31 days in advance.   Evidence of insurability will not be

required, this Policy must be surrendered.  The amount of insurance on the new policy may be for any amount up to, but not more than, (a), plus (b), less (c), where:

(a)   is the current amount of the Insured's Death Benefit under this Policy.

(b)   is the cash value of the new Policy on the Date of Exchange.

(c)   is the then current cash value of this Policy.

We will issue the new Policy in the same premium rate class as this Policy.  We will calculate the premium for the new Policy according to the rates in effect for the age and premium rate class of the Insured at the time of the exchange.  All plans of insurance available for exchange are subject to plan requirements.  Such new Policy will be effective on the date of termination of this Policy.

### iii.)   Owner's Efforts to Exchange the Policy

54.   In late 2014 and early 2015, the Plaintiff sought to exchange the Wiseman policy, which was to mature in October 2016.

### (a.)   First Exercise of Exchange Provision

55.   During January and February of 2015, Plaintiff and her representatives held telephonic conferences with Defendants during which she exercised the Exchange provision by Noticing the Defendants that they would exchange the Policy more than thirty-one days before Policy maturity.

56.   During those telephonic conferences in early 2015, Defendants expressly accepted Plaintiff's exercise of the Exchange provision and waived any requirement that the Notice be in writing or that the Notice follow any particular requirements.  Defendants accepted the exercise and waived any requirement for written Notice through their Customer Service Representatives acting as agents on behalf of

Defendants who the Defendants had allowed to hold themselves out as having authority to accept the exercise and waive written notice.  These agents include, but are not limited to, Messrs. Angela Cardinal, Yvette Loman, Lauren Rowe, Arthur Navarro and other individuals whose identity are known to Defendants but at this time unknown to Plaintiff.

**(b.)      Second Exercise of Exchange Provision**

57.      At the express direction of Defendants, Plaintiff made a second exercise of the Exchange provision in writing by sending an e-mail on February 10, 2015, to Mr. Navarro at his voya.com e-mail address that provided in its entirety as follows (with social security numbers of living persons and other private information redacted.  If necessary and upon the issuance of an appropriate protection order the original can be filed under seal) :

> "Re: Policy #[Redacted]960G
> "Olga Wiseman
> "[*Social Security Number redacted*]
> "DOB [*redacted*]
> "[*Address redacted*]
> "New York, NY 10033
>
> "The policy of my mother is expiring, I believe, but there is a clause in her policy that gives her the right to option to change to another type of life insurance still to remain in existence.  **She and I wish to exercise that option.**  In addition, I give consent for you to speak to Mr. Kenneth Pinczower.  Mr. Murry Zucker, a broker, also wishes to help.  Please call me to discuss.  My cell #[*redacted*].  You may discuss this with Mr. Pinczower as well, as he is acting on our behalf.
>
> "With thanks for your understanding and cooperation in this matter,
>
> "Sincerely,
> "Gloria D. Wiseman"
>
> (Emphasis added)

58.     Plaintiff did not act at the advice of counsel when she drafted and sent the February 10, 2015, e-mail.  To the contrary, although Defendants had orally accepted the Exchange demand and waived the requirement that Plaintiff provide a written demand, Plaintiff was guided by Defendants on what language to use when she exercised the exchange provision a second time.

59.     Defendants expressly accepted the February 10, 2015, written demand as proper written notice of Plaintiff's exercise of the Exchange provision and Defendants expressly waived any requirement for further formal demand in any particular form.  Such waiver included written letters by Defendant dated April 24, 2015 and March 11, 2016 and other oral and written representations to Plaintiff and her representatives.

**(c.)      Third Exercise of Exchange Provision**

60.     On or about February 22, 2015, Plaintiff again (for the third time) exercised the exchange provision in writing.

61.     In her February 22, 2015, letter the Plaintiff made reference to the ongoing negotiations with Defendants about the availability and terms of the new policy, without prejudice to her exercise of the exchange provision.

62.     Plaintiff noticed in writing by letter dated February 22, 2015, that: "[Plaintiff is] giving [Defendants] written notice that [Plaintiff] wish[es] to exchange [the Wiseman] policy . . .".

63.     The Third exercise of the exchange provision, which was drafted by Plaintiff without the assistance of counsel, was written in layperson's terms and at the direction of and during the negotiations of the terms of the new policy with Defendants.

64.     The Third exercise of the exchange provision expressed –
completely separate from the exercise of the exchange provision – an aspiration that the
new policy would be similar to the current one and would be issued "with no age
expiration, same premium or less".  That aspiration in no way prejudiced the efficacy of
the express written request to exchange the Policy.

65.     Additionally and/or in the alternative, the February 22, 2015, letter
was bifurcated into two separate matters.  One was the third exercise of the exchange
provision, when the Plaintiff expressly wrote: "I am giving you written notice that we
wish to exchange this policy . . ." and separately her letter included a discussion about the
terms of the new policy when the letter continued ". . . for a similar policy with no age
expiration, same premium or less." .

66.     Additionally and/or in the alternative, the February 22, 2015, letter
was written in the context of the previous written and oral discussions and should have
been understood – and upon information and belief was understood – by the Defendants
and any reasonable fact-finder as a proper exercise of the exchange provision even
though it includes a discussion about the prospective terms of the new policy.

67.     Additionally and/or in the alternative, the February 22, 2015, letter
was written at the direction of the Defendants who expressly allowed the language in the
letter to fulfill the requirement for a written notice of Plaintiff's exercise of the exchange
provision.

68.     Additionally and/or in the alternative, the February 22, 2015, was a
good faith effort by Plaintiff that was sufficient to fulfill any duty to notice Defendants of
her exercise of the exchange provision.

69.     Additionally and/or in the alternative, Defendants are estopped from claiming that the February 22, 2015, exercise of the exchange provision was not in compliance with the Policy because they waived any claim that the notice was insufficient as they admitted in their April 24, 2015 letter.

70.     Additionally and/or in the alternative, the February 22, 2015, written letter which purported to exercise the exchange provision can be disregarded entirely as the earlier written and oral Notice of Plaintiff's exercise of the exchange provisions were sufficient.  And in no way did the February 22, 2015, retroactively undo the earlier exercise of the exchange provision.

**(d.)     Fourth Exercise of Exchange Provision**

71.     Subsequent to the February 2015 exchange demand, the Plaintiff and her representatives continued to engage in written correspondence and held telephonic conferences with Defendants during which Plaintiff exercised the Exchange provision by Noticing the Defendants that they would exchange the Policy more than thirty-one days before Policy maturity.

72.     During that correspondence and telephonic conferences, Defendants waived any requirement for further Notice in writing or that the Notice follow any particular requirements.   Defendants are therefore estopped from later claiming that no proper Notice was made by Plaintiff and/or her representatives.

**iv.)     Defendants' Refusal to Honor the Insurance Policy**

73.     Upon **ReliaStar's** purchase of Lincoln Security Life Insurance Company in 1998, and **ING GROEP N.V.**'s purchase of ReliaStar in 2000, the Defendants had an obligation to ensure continued compliance by the Policy

Administrator with the terms of the Wiseman Policy and the relevant provisions of New York law.

74.     At any time that the Policy remained in force and upon thirty-one day's demand, the Defendants were required to issue the owner of the Wiseman Policy a current policy pursuant to the exchange provision.

75.     By letter dated April 24, 2015, the Defendants admitted that:

"Although the policy states that you may exchange the Policy for a new whole life policy, we do not have a whole life insurance plan available for issue on an insured aged 93."

76.     By letter dated March 11, 2016, the Defendants admitted that:

"[T]he Company does not currently have a whole life or endowment insurance plan available for issue on an insured aged 94."

### vi.)     Damage to Plaintiff as a direct result of Defendants' breaches

77.     As a direct result of the breaches by Defendants, the Plaintiff suffered financial and other damage.

78.     Currently issued life insurance policies – including all policies sold today by Voya, ReliaStar and similar companies – remain in force until age 121 and beyond, which reflects changes in demographics as Americans today tend to live longer than they did in the 1990s.  Any policy issued today (into which Plaintiff would have exchanged her policy) would remain in force until she turned 121, rather than the limited term of the Wiseman policy, which matured in October 2016 at age 95.  Plaintiff suffered direct financial and other damage because she was not able to exchange her policy for one that would mature at age 120.

79.    Life insurance products offered by ReliaStar and the legacy companies have evolved with more favorable features, options and benefits to policy owners than existed in the early 1990s.  The exchange provision gave the Plaintiff the option to take advantage of the ongoing evolution of life insurance policies by offering her the absolute discretion and unilateral option to take advantage of any new benefits, features, favorable pricing, mortality tables that reflect lower mortality risks over time as life expectancies grow, that may be introduced by the insurance company and its successors over time.  Plaintiff suffered direct financial and other damage when she did not have the option to exchange her policy for one that was (or that was perceived as) having more benefits or more favorable pricing than the Wiseman Policy.

80.    As a direct result of the foregoing breaches by the Defendants, Plaintiff suffered financial and other damage when she was unable to exchange her policy and when the policy lapsed upon its maturity in October 2016.  When the policy lapsed without the option to exchange, the Plaintiff lost all her premiums that she paid into the policy over the past 25 years and the Plaintiff lost the expected death benefit that she would have been entitled to had the Defendants honored the exchange provision

81.    As a direct result of the foregoing breaches by Defendant, the Plaintiff overpaid their premiums for 25 years.  The premiums paid on the Wiseman Policy were calculated based on the perceived value of a policy that could be exchanged (which would, among other things allow an exchanged policy to remain in force after the putative maturity).  Since the policy could in fact not be exchanged, it was less valuable than claimed due to the catastrophic risk of the total loss of all premiums paid in and due to the significant probability of losing the entire death benefit at the age of 95.  Therefore

the carrier had misrepresented the value of the product benefit and overcharged Plaintiff on all premiums that she paid for 25 years.

82.     As a direct result of the foregoing breaches by Defendants, the value of the Wiseman Policy was substantially lowered on the secondary market. Secondary market life insurance purchasers are less likely to purchase a policy that could not be exchanged and would lapse at age 95, as compared to a policy that could be exchanged.

83.     As a direct result of the breaches by Defendants, the family of the insured and the policy owner face the risk of insufficient coverage in the event of the insured's passing.  The family's organization of their personal and financial affairs around the expectation that the policy could be exchanged was shattered.

84.     As a direct result of the breaches by Defendant, the insured felt pressure to pass before October 2016 so that her family could obtain the full benefit of her life insurance policy.  This pressure on the insured to pass before the unlawful lapsing of her policy was extreme and outrageous conduct, which actually caused quantifiable damage to the insured, the policy owner and their families.

**RELATIONSHIP BETWEEN DEFENDANTS**

85.     As described below, at all times relevant to this Complaint, the Defendants were affiliates, parent companies, agents, representatives, co-venturers, subsidiaries of each other and otherwise alter-egos of one another.

86.     While Defendants are in sole custody of all relevant information about the details of their affiliation and co-venture, public information described below

establishes the co-liability of the Defendants; and in the alternative is enough to warrant appropriate jurisdictional discovery into the relationship between the several Defendants.

**(a.)    Voya's Relationship with ReliaStar**

87.    For compliance reasons, Voya markets and administers life insurance in the State of New York under the brand name ReliaStar Life Insurance Company of New York.   At all times relevant to this Complaint, however, the actual administration of the Wiseman Policy including, but not limited to, the decision of whether to offer for sale policies that comply with legacy exchange provisions was done by Voya Financial, Inc. and therefore despite the formal name "ReliaStar" as policy administrator in New York, Plaintiff's insurance contract was one between her and Voya, the actual company that administered and was responsible for the Wiseman Policy.

88.    Upon information and belief, when applying to the then-New York State Insurance Department for authorization to operate in New York State, Voya and ReliaStar made express representations to the Department about the co-management of actuarial and other administrative responsibilities with respect to the policy.   The basis of Plaintiff's belief is ReliaStar has always represented itself as acting in concert with the "Voya® family of companies".

89.    As an example of the way that Voya Financial, Inc. – not ReliaStar – actually manages the actuarial and administrative aspects of all of ReliaStar's life insurance policies, enclosed as Exhibit B is a sample life insurance illustration applied for recently on behalf of a New York customer directly from the voya.com agent website. As is evident from the sample life insurance illustration while it purported to be "presented by" an agent of ReliaStar Life Insurance Company of New York, in fact the

sample policy describes itself as being a "Voya Universal Life – CV NY" product in a font at least twice as large as the legal disclaimer-style reference to ReliaStar, affixed a large "Voya Financial" logo on every page, introduced the policy as being offered "by ReliaStar Life Insurance Company of New York, a member of the Voya® family of companies" and includes the words Voya Universal Life – CV NY on every page. No reasonable fact-finder could conclude anything except that ReliaStar life insurance policies are in fact managed, administered, actuarially assessed, and that all decisions are made exclusively by Voya Financial, Inc.

90.     By comparison, an analogous sample life insurance illustration applied for recently with the exact same details on behalf of a New Jersey customer directly from the voya.com agent website, is nearly identical making reference to the same relationship with the "Voya® family of companies", the same Voya name in the same large font that describes the policy as "Voya Indexed Universal Life-Global Choice", and the same large Voya Financial logo very prominently displayed on every page, and clearly uses the same actuarial software. See Exhibit C. Any reasonable fact-finder would conclude that all administration of the policies (whether in New York or outside the state) is done by the same company (Voya) and pursuant to the same actuarial software and that ReliaStar is a disregarded shell company.

91.     To be clear, the decision by Voya and ReliaStar to merge their administration of policies and co-market them in each other's name was not an accident, and the Plaintiff's claim that they have engaged in a co-venture is not some idiosyncratic apophenia by the Plaintiff. To the contrary, the co-venture of ReliaStar with Voya is <u>of the essence</u> of Voya's business strategy in the State of New York. So while ReliaStar

offers policies for sale in New York and other Voya family companies offer policies for sale outside of New York, from a marketing, agent and client perspective only "Voya" sells and administers policies.

92.    Upon information and belief no marketing under the name "ReliaStar" is done without reference to Voya, and within the actuarial, managerial, and administrative side of ReliaStar policies all decisions are made solely by Voya and its personnel.   In fact, as of the filing of this Complaint there is no active registered trademark under the "ReliaStar" brand in the United States.

93.    As further example of Voya's direct relationship with Plaintiff to the Wiseman policy, all correspondence with the Plaintiff by Defendants were done in the name of and on behalf of "Voya Financial".  Electronic communication was sent by Voya staff using voya.com e-mails and all letters proudly included a reference to ReliaStar's place within the Voya® family of companies.

94.    Further, Voya direct correspondence with Plaintiff and third parties with respect to the Wiseman Policy estops Voya from now claiming that they were not a party to the Wiseman Policy.

95.    Defendants are in custody of further documentation and information about Voya Financial, Inc.'s actual administration of the Wiseman Policy and to the extent that the allegations in this Complaint are insufficient to establish Voya's direct privity of contract and liability to Plaintiff, limited Discovery on the issue of Voya's relationship with ReliaStar would resolve any questions about the extent of Voya and ReliaStar's co-venture.

**(b.)     ING's Relationship with other Defendants**

96.     Between September 1, 2000, and on or about October 29, 2013, Defendant **ING GROEP N.V.**, was the sole owner of ING American Insurance Holdings, Inc. (later renamed ING U.S., Inc. and later still, renamed Voya Financial, Inc).

97.     Pursuant to the terms of the 2013 Amended Restructuring Plan arising from **ING GROEP N.V.**'s taxpayer bailout, **ING GROEP N.V.**, agreed to divest its American life insurance holdings.  Upon information and belief the divestment began on October 29, 2013, and was expected to complete on or before December 31, 2016.

98.     Notwithstanding any purported divestment by ING GROEP N.V. of its American assets, at all times relevant to this Complaint the Wiseman Policy was administered pursuant to ING GROEP N.V.'s policies, practices and actuarial models. Even after any purported partial divestment, the management of the insurance companies remained unchanged and the policies, practices and actuarial models at issue in this Complaint were set by ING GROEP NV.  Therefore as a matter of all, all tortious conduct described in this Complaint is directly traceable as a matter of law to ING GROEP N.V.

99.     Additionally and/or in the alternative, upon information and belief, ING GROEP N.V.'s hasty retreat from the American market was sheer window-dressing necessitated by the passing of the Justice Against Sponsors of Terrorism Act, 18 U.S.C. § 2333 (making jurisdiction easier for government co-conspirators of ING Groep N.V. for any of their terror attacks within the United States) and the substantial liability accrued to ING GROEP N.V. during the 2012-2016 Battle of Aleppo (See Deferred Prosecution in U.S. v. ING Bank N.V., Index #12-cr-00136, Docket #1 (D.C. June 12,

2012) (confessing to the provision of material support to a government participant in the Battle of Aleppo)), and that no substantive change was made from ING GROEP N.V.'s substantive role in the administration of the Wiseman policy.

100.    Notwithstanding any purported divestment by ING GROEP N.V. of its American assets, the Wiseman Policy was administered pursuant to ING GROEP N.V.'s policies, practices and actuarial models.  Even after any purported divestment, the management of the insurance companies remained unchanged and the policies, practices and actuarial models at issue in this Complaint were set by ING GROEP N.V.   Therefore as a matter of law, all tortious conduct described in this Complaint is directly traceable to ING GROEP N.V.

101.    Subsequent to the purported divestment, all key executives remained in place at Voya and continued to administer Voya life insurance policies pursuant to ING policies, practices and actuarial models.  These practices included a corporate policy of neglecting legacy policies. For example the following individual remained in management as executives after the alleged divestment with no change to their role, and continued administration pursuant to the practices and corporate policies of ING.   These individuals in management include, but are not limited to: Ewout Steenberger, the current Chief Financial Officer & Executive Vice President of Voya Financial, Inc., who holds two board seats at Voya, and who upon information and belief continues to conducts business at the headquarters of ING with an ING e-mail; Ralph Hamers, the CEO and Co-Chairman of Voya Financial who was formerly CEO and Chairman of the Executive Board of ING Groep; Patrick Flynn who was former Chief

Financial Officer of Banking and Insurance at Voya Financial and now Chief Financial Officer at ING Groep.

102.    In the alternative, ING remains liable for the tortious conduct described in this Complaint for the time period that they had actual ownership and control of Voya.

## TOLLING OF STATUTE OF LIMITATIONS

103.    This Complaint seeks recovery for the damage caused by Defendants' failure to exchange the Wiseman Policy in 2015, and the Complaint also seeks to recover all damages caused by the Defendants' breaches and negligence beginning in 2000.

104.    Defendants' obligation to provide an exchange upon request began the moment that the Policy was in force.  Defendants' failure to have a policy available for exchange at every moment that the Wiseman Policy (and other legacy policies) remained in force, were separate breaches of Defendants' continuing obligation to the Plaintiff and other policy holders.

105.    In addition and/or in the alternative, so long as the Exchange provision was not exercised by the Plaintiff or other policy holders, as a matter of law the Defendants had a continuing obligation to have a policy available for clients who exercised the exchange provision.

106.    In addition and/or in the alternative, Defendants' failure to have a policy available for exchange in 2015 was part of a series of continuing wrongs by the Defendants.  This series of continuing wrongs began the moment a decision was made by Defendants to abandon their legacy clients (including by losing the policies and by not

having appropriate life insurance policies available for exchange upon demand) and continued through the exercise of the exchange provision by Plaintiff, Class members, or the maturation of any legacy policy.

107.   Defendants are also equitably estopped from claiming that any claim in this Complaint is barred by an applicable statute of limitations.

108.   Defendants' deceived Plaintiff when they failed to notify her <u>that her Policy had become unavailable for exchange</u>, a contractual and statutory they had because of their duty to notify Plaintiff when there was a substantial change to their policy.  Had Plaintiff known that her policy would no longer be available for exchange, then she would have made appropriate arrangements (when the insured was of younger age and insurable) with other life insurance companies or sought appropriate relief through the judicial system.

109.   Defendants' deceived Plaintiff when they failed to notify her <u>when her Policy would become unavailable for exchange</u>.  Had Plaintiff known when her policy would no longer be available for exchange, then she would have had time to make appropriate arrangements including exercising the option, purchasing insurance from another life insurance company, or seeking appropriate relief through the judicial system.

110.   Defendants' affirmative actions to conceal when and if the Wiseman policy would no longer be available for exchange was the direct cause of the loss of the Wiseman policy.

111.   Plaintiff had no independent way of knowing the exact terms of the policy provisions with respect to exchanging her policy and what exchange options were available.   Defendants had the sole duty to keep Plaintiff informed and to provide a copy

of her policy upon request.  As described, upon information and belief the Defendants do not have a copy of the Wiseman Policy and proactively prevented Plaintiff from knowing her policy would mature without any option to exchange.

112.    Defendants actions directly prevented Plaintiff from knowing the terms of her policy and that the exchange provision could not be exercised and because of that wrongdoing, the Defendants cannot now claim that this suit is time-barred.

## CLASS ACTION ALLEGATIONS

113.    Plaintiff brings this action individually and pursuant to two classes under Federal Rule of Civil Procedure Rule 23(b)(3).

114.    The first class – referred herein as the "Lincoln Security Class" consists of:

> All owners of life insurance policies issued by Lincoln Security Life Insurance Company with an exchange provision that were in force on January 1, 1998, and which were at any time unavailable for exchange.

115.    The second class – referred herein as the "Legacy Policy Class" consists of:

> All owners of life insurance policies issued by any life insurance company with an exchange provision that were at any time after September 1, 2000, owned and/or administered by ING GROEP N.V., Voya Financial, Inc., ReliaStar Life Insurance Company of New York, (and its owners and assigns) which were at any time unavailable for exchange.

116.    Both the Lincoln Security Class and the Legacy Policy Class consist of hundreds of consumers of life insurance and thus are so numerous that joinder of all members is impracticable.  The identities and contact information of class members can be readily ascertained from business records maintained by ING, Voya or ReliaStar.

117.    The claims asserted by the Plaintiff are typical of the claims of the Lincoln Security Class.

118.    The claims asserted by the Plaintiff are typical of the claims of the Legacy Policy Class.

119.    The Plaintiff will fairly and adequately protect the interests of the Lincoln Security Class and does not have any interests antagonistic to those of the other members of the class.

120.    The Plaintiff will fairly and adequately protect the interests of the Legacy Policy Class and does not have any interests antagonistic to those of the other members of the class.

121.    The Plaintiff has retained as counsel an attorney with a decade of experience with complex life insurance matters, who has partnered in this action with counsel that are familiar with class and complex litigation in New York and federal courts.

122.    Plaintiff requests that the Court afford class members with notice and the right to opt-out of any class certified in this action.

123.    This action is appropriate as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because common questions of law and fact affecting the classes predominate over those questions affecting only individual members.  Those common questions include:

> (a.)    The construction and interpretation of the form insurance policies issued by Lincoln Security Life Insurance Company, including its exchange provisions;

(b.)     The construction and interpretation of the form insurance policies issued by other Legacy providers, including their exchange provisions;

(c.)     The facts, circumstances, and legal consequences of the September 2000 purchase of Lincoln Security Life Insurance Company by ING and what representations were made to the New York State Insurance Department about the maintenance of exchange options for Lincoln policies;

(d.)     The facts, circumstances, and legal consequences of all insurance company purchases by ING and what representations were made to the New York State Insurance Department and to its successor, the New York State Department of Financial Services about the maintenance of exchange options for legacy policies;

(e.)     To what extent the premiums on all Lincoln and Legacy policies were overcharged because of the unavailability of an exchange option;

(f.)     To what extent the Lincoln and Legacy policies were less valuable because of their unmarketability on the secondary market;

(g.)     To what extent Lincoln and Legacy policy owners were underinsured because of the inability to exchange their policies;

(h.)     To what extent Lincoln and Legacy policy owners lost the policy benefit, were improperly induced to lapse their policies, and lost all premiums paid;

(i.)     How the Defendants breached their contractual duties to the class members;

(j.)     How the Defendants breached their duty of good faith and fair dealing owed to the class members;

(k.)   How the Defendants violated Section 349 of New York's General Business Laws, including whether its conduct was consumer-oriented and likely to mislead a reasonable consumer;

(l.)   What injunctive relief and other relief is available to the class members as against the Defendants;

(m.)   What damages were suffered by the class members and the appropriate methodology for calculating those damages;

(n.)   What punitive damages are available to the class members as against the Defendants.

124.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because among other reasons:

(a.)   The complexity of issues involved in this action and the expense of litigation the claims, few, if any, class members could afford to seek legal redress individually for the wrongs that defendants committed against them, and absent class members have no substantial interest in individually controlling the prosecution of individual actions;

(b.)   When Defendants' liability has been adjudicated, claims of all class members can be determined by the Court;

(c.)   This action will cause an orderly and expeditious administration of the class claims and foster economies of time, effort and expense, and ensure uniformity of decisions;

(d.)   Without a class action, many class members will continue to suffer injury and Defendants' breaches will continue without redress while Defendants continue to reap and retain the substantial proceeds of their wrongful conduct; and

(e.)   This action does not present any undue difficulties that would impede its management by the Court as a class action.

## FIRST CLAIM FOR RELIEF

### Breach of Contract
### (Plaintiff against all Defendants)

125.   The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 124 of this Complaint.

126.   The Wiseman Policy entered into on or about September 1, 1987, by and between Gloria Wiseman and Lincoln Security Life Insurance Company was a valid and binding contract.

127.   Defendants were successors of Lincoln Security Life Insurance Company.

128.   Plaintiff performed all their obligations under the Agreement, including but not limited to the payment of all Policy premiums and an appropriate demand to exchange the Policy.

129.   On or after September 1, 2000, the Defendants failed to provide Plaintiff an option to exchange her Policy.

130.   In 2015, Defendants failed to exchange Plaintiff's policy after an appropriate demand.

131.   Defendants' failure to provide an option to exchange the Wiseman Policy materially breached their duties to Plaintiff in several ways, including but not limited to the following:

(a.)     Defendants breached their contract by failing to provide an option to exchange the policy upon demand;

(b.)     Defendants breached their contract by failing to notify the Wiseman Policy owner that the policy could not be exchanged upon demand;

(c.)     Defendants breached their contract by overcharging premiums (such premiums having been calculated pursuant to the additional value proposition of having the option to exchange);

(d.)     Defendants breached their contract by devaluating the policies and making them unmarketable on the secondary life insurance market;

(e.)     Defendants breached their contract by failing to provide their insureds and families an option to exchange their policy thus leaving them underinsured upon policy lapse; and

(f.)     Defendants caused the Plaintiff to lose the policy benefit, improperly induced a lapse of their policy, and caused Plaintiff to lose all premiums paid and to also lose the entire death benefit.

132.     As a direct and proximate cause of Defendants material breaches of the Agreement, the Plaintiff was and will continue to be damaged in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### Breach of Contract
### (Lincoln Security Class against all Defendants)

133.     The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 132 of this Complaint.

134.    At various times beginning in the 1970s Lincoln Security Life Insurance Company entered into valid and binding contracts with the Lincoln Security Class, to wit life insurance policies that offered an option for an exchange.

135.    Upon ReliaStar's merger with Lincoln Security Life Insurance Company on January 1, 1998, ReliaStar assumed all duties with respect to the policies owned by the Lincoln Security Class.

136.    Defendants were successors of Lincoln Security Life Insurance Company.

137.    At no time were Defendants absolved of their duties to the Lincoln Security Class, including the duty to provide an exchange upon demand.

138.    On or after September 1, 2000, the Defendants failed to provide an option for exchange with respect to the policies owned by the Lincoln Security Class.

139.    Defendants' failure to provide an option to exchange the policies owned by the Lincoln Security Class materially breached the Defendants' duties in several ways, including but not limited to the following:

    (a.)    Defendants breached their contract by failing to provide an option to exchange the policies owned by the Lincoln Security Class upon demand;

    (b.)    Defendants breached their contract by failing to notify the policy owners that the policy could not be exchanged upon demand;

    (c.)    Defendants breached their contract by overcharging premiums (such premiums having been calculated based on a value proposition provided by having the option to exchange the policy upon demand);

    (d.)    Defendants breached their contract by devaluating the policies and making them unmarketable on the secondary life insurance market;

(e.)     Defendants breached their contract by failing to provide their insureds and families an option to exchange their policy thus leaving them underinsured upon policy lapses; and

(f.)     Defendants caused the Class to lose their policies' benefits, improperly induced lapses of their policies, and caused the Class to lose all premiums paid.

140.    The Lincoln Security Class performed all their obligations under the Agreement, including but not limited to the payment of all Policy premiums and appropriate demands to exchange the Policy.

141.    All members of the Lincoln Security Class who lapsed their policies before maturity and/or who failed to make a demand to exchange the Policy are also in the member class because any such demand would have been in vain, as no exchange was available.

142.    As a direct and proximate cause of Defendants material breaches of the Agreement, the Lincoln Security Class was and will continue to be damaged in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**

**Breach of Contract**
**(Legacy Policy Class against all Defendants)**

143.    The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 142 of this Complaint.

144.    At various times in the 1990s and 2000s ING and Voya purchased various American life insurance companies (including the September 1, 2000 purchase of ReliaStar) and in so doing assumed all duties with respect to the policies owned by the Legacy Policy Class.    In this Complaint the American life insurance companies

purchased by ING and Voya in the 1990s and 2000s are referred to as "Legacy Companies".

145.    After these various mergers and purchases of Legacy Companies, ING and Voya consolidated with the Legacy Companies and ING and Voya acted as a mere continuation of the Legacy Companies.

146.    At no time was ING or Voya absolved of their duties to the Legacy Policy Class, including the duty to provide an exchange upon demand.

147.    On or after their merger and purchase, the Defendants failed to provide the Legacy Policy Class the option to exchange their policies.

148.    Defendants' failure to provide an option to exchange the policies owned by the Legacy Policy Class materially breached the Defendants' duties in several ways, including but not limited to the following:

    (a.)    Defendants breached their contract by failing to provide an option to exchange the policies upon demand;

    (b.)    Defendants breached their contract by failing to notify the Legacy Policy Class that their policies could not be exchanged upon demand;

    (c.)    Defendants breached their contract by overcharging premiums (such premiums having been calculated based on a value proposition provided by having the option to exchange the policy upon demand);

    (d.)    Defendants breached their contract by devaluating the policies and making them unmarketable on the secondary life insurance market;

    (e.)    Defendants breached their contract by failing to provide their insureds and families an option to exchange their policy thus leaving them underinsured upon policy lapses; and

(f.)    Defendants caused the Class to lose their policies'
benefits, improperly induced lapses of their policies,
and caused the Class to lose all premiums paid

149.    The Legacy Policy Class performed all their obligations under the Agreement, including but not limited to the payment of all Policy premiums and appropriate demands to exchange the Policy.

150.    All members of the Legacy Policy Class who lapsed their policies before maturity and/or who failed to make a demand to exchange the Policy are also in the member class because any such demand would have been in vain, as no exchange was available.

151.    As a direct and proximate cause of Defendants material breaches of the Agreement, the Legacy Policy Class was and will continue to be damaged in an amount to be proven at trial.

<u>**FOURTH CLAIM FOR RELIEF**</u>

<u>**Breach of Implied Covenant of Good Faith and Fair Dealing**</u>
<u>**(Plaintiff against all Defendants)**</u>

152.    The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 151 of this Complaint.

153.    The Wiseman Policy entered into on or about September 1, 1987, by and between Gloria Wiseman and Lincoln Security Life Insurance Company was a valid and binding contract.

154.    Upon ReliaStar's merger with Lincoln Security Life Insurance Company on January 1, 1998, ReliaStar assumed all duties with respect to the Wiseman Policy.

155.    On January 1, 1998, Lincoln Security and ReliaStar consolidated pursuant to their merger and after the merger ReliaStar was a mere continuation of Lincoln Security Life Insurance Company.Upon ING's purchase of ReliaStar on September 1, 2000, ING Groep N.V. and Voya Financial, Inc. (then known as ING America Insurance Holdings, Inc.) jointly assumed all duties with respect to the Wiseman Policy.

156.    Defendants were successors of Lincoln Security Life Insurance Company.

157.    Plaintiff performed all their obligations under the Agreement, including but not limited to the payment of all Policy premiums and an appropriate demand to exchange the Policy.

158.    On or after September 1, 2000, the Defendants failed to provide Plaintiff an option to exchange her Policy.

159.    In 2015, Defendants failed to exchange Plaintiff's policy after an appropriate demand.

160.    Defendants acted in bad faith by not having a policy into which Plaintiff could exchange her policy, by negligently failing to maintain physical copies of life insurance policies (including the Wiseman Policy), by failing to notify Plaintiff that the option to exchange was lost, and otherwise engaging in bad faith with the Plaintiff.

161.    Defendants' failure to provide an option to exchange the Wiseman Policy materially breached their Implied Covenant of Good Faith and Fair Dealing including but not limited to the following:

(a.)    Even if the Policy Agreement is interpreted as only providing an option to exchange if – and only if –

the insurance companies happen to have a similar policy available in their portfolio, the Implied Covenant of Good Faith and Fair Dealing created a separate and distinct affirmative duty to actively ensure a policy is available for exchange at any time;

(b.)   Even if the Policy Agreement is interpreted as only having an option to exchange if – and only if – the insurance companies happen to have a similar policy available in their portfolio, the Implied Covenant of Good Faith and Fair Dealing created a separate and distinct affirmative obligation to notify the Wiseman Policy owner if a possible exchange was no longer available;

(c.)   Even if the Policy Agreement is interpreted as only having an option to exchange if – and only if – the insurance companies happen to have a similar policy available in their portfolio, the Implied Covenant of Good Faith and Fair Dealing created a separate and distinct affirmative obligation to adjust the premiums to reflect the nonmarketability of an unexchangeable policy and its lower value to the policy owner; and

(d.)   Other additional obligations by the Defendants separate and distinct from their contractual obligations.

162.   Plaintiff has performed all her obligations under the Agreement, including but not limited to, the payment of all Policy premiums and an appropriate demand to exchange the Policy.

163.   As a direct and proximate cause of Defendants material breaches of the Implied Covenant of Good Faith and Fair Dealing, the Plaintiff was and will continue to be damaged in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### Breach of Implied Covenant of Good Faith and Fair Dealing
### (Lincoln Security Class against all Defendants)

164.   The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 163 of this Complaint.

165.   At various times beginning in the 1970s Lincoln Security Life Insurance Company entered into valid and binding contracts with the Lincoln Security Class, to wit life insurance policies that offered an option for an exchange.

166.   Upon ReliaStar's merger with Lincoln Security Life Insurance Company on January 1, 1998, ReliaStar assumed all duties with respect to the policies owned by the Lincoln Security Class.

167.   Defendants were successors of Lincoln Security Life Insurance Company.

168.   At no time were Defendants absolved of their duties to the Lincoln Security Class, including the duty to provide an exchange upon demand.

169.   Defendants acted in bad faith by negligently failing to maintain physical copies of life insurance policies (including the legacy policies), by failing to notify the policy owners that the option to exchange was lost, and otherwise engaging in bad faith with the policy owners by failing to take proper care of them as clients.

170.   On or after September 1, 2000, the Defendants failed to provide an option for exchange with respect to the policies owned by the Lincoln Security Class.

171.   Defendants' failure to provide an option to exchange the policies owned by the Lincoln Security Class materially breached their Implied Covenant of Good Faith and Fair Dealing including but not limited to the following:

(a)   Even if the Policy Agreement is interpreted as only providing an option to exchange if – and only if – the insurance companies happen to have a similar policy available in their portfolio, the Implied Covenant of Good Faith and Fair Dealing created a separate and distinct affirmative duty to actively ensure a policy is available for exchange at any time;

(b.)   Even if the Policy Agreement is interpreted as only having an option to exchange if – and only if – the insurance companies happen to have a similar policy available in their portfolio, the Implied Covenant of Good Faith and Fair Dealing created a separate and distinct affirmative obligation to notify the Policy Owners if a possible exchange was no longer available;

(c.)   Even if the Policy Agreement is interpreted as only having an option to exchange if – and only if – the insurance companies happen to have a similar policy available in their portfolio, the Implied Covenant of Good Faith and Fair Dealing created a separate and distinct affirmative obligation to adjust the premiums to reflect the nonmarketability of an unexchangeable policy and its lower value to the policy owner; and

(d.)   Other additional obligations by the Defendants separate and distinct from their contractual obligations.

172.   The Lincoln Security Class has performed all their obligations under the Agreement, including but not limited to the payment of all Policy premiums and appropriate demands to exchange the Policy.

173.   All members of the Lincoln Security Class who lapsed their policies before maturity and/or who failed to make a demand to exchange the Policy are also in the member class because any such demand would have been in vain, as no exchange was available.

174.    As a direct and proximate cause of Defendants material breaches of the Agreement, the Lincoln Security class was and will continue to be damaged in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### Breach of Implied Covenant of Good Faith and Fair Dealing
### (Legacy Policy Class against all Defendants)

175.    The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 174 of this Complaint.

176.    At various times in the 1990s and 2000s ING and Voya purchased various American life insurance companies (including the September 1, 2000 purchase of ReliaStar) and in so doing assumed all duties with respect to the policies owned by the Legacy Policy Class.   In this Complaint, the American life insurance companies purchased by ING and Voya in the 1990s and 2000s are referred to as "Legacy Companies."

177.    After these various mergers and purchases of Legacy Companies, ING and Voya consolidated with the Legacy Companies and ING and Voya acted as a mere continuation of the Legacy Companies.

178.    At no time was ING or Voya absolved of their duties to the Legacy Policy Class, including the duty to provide an exchange upon demand.

179.    On or after their merger and purchase, the Defendants failed to provide the Legacy Policy Class the option to exchange their policies.

180.    Defendants' failure to provide an option to exchange the policies owned by the Legacy Policy Class materially breached the Defendants' Implied

Covenant of Good Faith and Fair Dealing in several ways, including but not limited to the following:

181.    Defendants acted in bad faith by negligently failing to maintain physical copies of life insurance policies (including the legacy policies), by failing to notify the policy owners that the option to exchange was lost, and otherwise engaging in bad faith with the policy owners by failing to take proper care of them as clients.

182.    Defendants' failure to provide an option to exchange the policies owned by the Lincoln Security Class materially breached their Implied Covenant of Good Faith and Fair Dealing including but not limited to the following:

(a.)    Even if the Policy Agreement is interpreted as only providing an option to exchange if – and only if – the insurance companies happen to have a similar policy available in their portfolio, the Implied Covenant of Good Faith and Fair Dealing created a separate and distinct affirmative duty to actively ensure a policy is available for exchange at any time;

(b.)    Even if the Policy Agreement is interpreted as only having an option to exchange if – and only if – the insurance companies happen to have a similar policy available in their portfolio, the Implied Covenant of Good Faith and Fair Dealing created an separate and distinct affirmative obligation to notify the Policy Owners if a possible exchange was no longer available;

(c.)    Even if the Policy Agreement is interpreted as only having an option to exchange if – and only if – the insurance companies happen to have a similar policy available in their portfolio, the Implied Covenant of Good Faith and Fair Dealing created a separate and distinct affirmative obligation to adjust the premiums to reflect the nonmarketability of an unexchangeable policy and its lower value to the policy owner; and

(d.)    Other additional obligations by the Defendants separate and distinct from their contractual obligations.

183.    The Legacy Policy Class has performed all their obligations under the Agreement, including but not limited to the payment of all Policy premiums and appropriate demands to exchange the Policy.

184.    All members of the Legacy Policy Class who lapsed their policies before maturity and/or who failed to make a demand to exchange the Policy are also in the member class because any such demand would have been in vain, as no exchange was available.

185.    As a direct and proximate cause of Defendants material breaches of the Agreement, the Legacy Policy Class was and will continue to be damaged in an amount to be proven at trial.

<u>**SEVENTH CLAIM FOR RELIEF**</u>

<u>**Negligence**</u>
<u>**(Plaintiff against all Defendants)**</u>

186.    The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 185 of this Complaint.

187.    The Wiseman Policy entered into on or about September 1, 1987, by and between Gloria Wiseman and Lincoln Security Life Insurance Company created a duty for Defendants (as administrators of the Wiseman policy over time) to the Plaintiff.

188.    The nature of this duty included, but was not limited to:

(a.)    a duty to notify Plaintiff when there was any substantial change in management, which would effect the ability of the Plaintiff to exercise her rights under the policy;

(b.)    a duty to protect the value of the policy by ensuring all its riders and provisions could be exercised and – if for some reason a provision that was of the essence of the agreement could not be exercised – then to notify the Plaintiff of that change;

(c.)    a duty to ensure that upon the purchase of a life insurance company that the successor company had knowledge of what policies were "on the books", their terms, and what requirements that created for the company;

(d.)    a duty to conduct due diligence before taking responsibility for life insurance policies by purchasing companies;

(e.)    to keep a copy of all in-force policies;

(f.)    and other duties.

189.    The basis of these duties was the Defendants' unique position to know the status of the policy, to know how the policies were administered, to know what options were available for exchange, and to know how that exchange could be exercised. By contrast, the Plaintiff has no knowledge of the corporate intrigue surrounding the frequent sale of life insurance policies behind her back and the sloppy way that such sales were conducted.

190.    Defendants breached their duties to Plaintiff by failing to keep track of her legacy policy, by losing the physical policy document, by not having any direct information about its terms, by failing to notify her when there was a substantial change in the life insurance company's ability to honor the policy, by failing to notify that there had been (in the past) a substantial change in the life insurance company's ability to honor the policy, by failing to honor the Plaintiff's exercise of the exchange provision, and other breaches.

191.     Defendants' negligence was the direct and proximate cause of the lapse of the Wiseman Policy and Plaintiff's inability to exchange the policy upon demand.

192.     As a direct and proximate cause of Defendants material breaches of the Agreement, the Plaintiff was and will continue to be damaged in an amount to be proven at trial.

193.     The scope of this negligence is broader and distinct from Defendants' breach of contract, including its application to all parties regardless of their formal contract with Plaintiff and the duties owed to Plaintiff which were broader than those described in the written contract between the parties.

## EIGTH CLAIM FOR RELIEF

### Negligence
### (Lincoln Security Class against all Defendants)

194.     The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 193 of this Complaint.

195.     At various times beginning in the 1970s Lincoln Security Life Insurance Company entered into valid and binding contracts with the Lincoln Security Class, to wit life insurance policies that offered an option for an exchange.

196.     Defendants as successor administrators of the Lincoln Security Class policies over time owed a duty to the class.

197.     The nature of this duty included, but was not limited to:

(a.)     a duty to notify the Class when there was any substantial change in management, which would effect the ability of the Plaintiff to exercise her rights under the policy;

(b.)     a duty to notify Plaintiff when there was any substantial change in management, which would effect the ability of the Plaintiff to exercise her rights under the policy;

(c.)     a duty to protect the value of the policy by ensuring all its riders and provisions could be exercised and – if for some reason a provision that was of the essence of the agreement could not be exercised – then to notify the Plaintiff of that change;

(d.)     a duty to ensure that upon the purchase of a life insurance company that the successor company had knowledge of what policies were "on the books", their terms, and what requirements that created for the company;

(e.)     a duty to conduct due diligence before taking responsibility for life insurance policies by purchasing companies;

(f.)     to keep a copy of all in-force policies;

(g.)     and other duties.

198.     The basis of these duties was the Defendants' unique position to know the status of the legacy policies, to know how the policies were administered, to know what options were available for exchange, and to know how that exchange could be exercised. By contrast, the Class has no knowledge of the corporate intrigue surrounding the frequent sale of life insurance policies behind her back and the sloppy way that such sales were conducted.

199.     Defendants breached their duties to the class by failing to keep track of their legacy policies, by losing the physical policy documents and not having any direct information about their terms, by failing to notify the class when there was a substantial change in the life insurance company's ability to honor the policy, by failing

to notify the class when there had been (in the past) a substantial change in the life insurance company's ability to honor the policies, by failing to honor the Class's exercise of the exchange provision, and other breaches.

200.    Defendants' negligence was the direct and proximate cause of the lapse of policies owned by the Class and the Class's inability to exchange the policy upon demand.

201.    As a direct and proximate cause of Defendants material breaches of the Agreement, the Class was and will continue to be damaged in an amount to be proven at trial.

202.    The scope of this negligence is broader and distinct from Defendants' breach of contract, including its application to all parties regardless of their formal contract with Plaintiff and the duties owed to the Class which were broader than those described in the written contract between the parties.

## NINTH CLAIM FOR RELIEF

### Negligence
### (Legacy Policy Class against all Defendants)

203.    The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 202 of this Complaint.

204.    At various times in the 1990s and 2000s ING and Voya purchased various American life insurance companies (including the September 1, 2000 purchase of ReliaStar) and in so doing assumed all duties with respect to the policies owned by the Legacy Policy Class.

205.    Defendants as successor administrators of the Legacy Companies owed a duty to the class.

206.    The nature of this duty included, but was not limited to:

(h.)    a duty to notify the Class when there was any substantial change in management, which would effect the ability of the Plaintiff to exercise her rights under the policy;

(i.)    a duty to notify Plaintiff when there was any substantial change in management, which would effect the ability of the Plaintiff to exercise her rights under the policy;

(j.)    a duty to protect the value of the policy by ensuring all its riders and provisions could be exercised and – if for some reason a provision that was of the essence of the agreement could not be exercised – then to notify the Plaintiff of that change;

(k.)    a duty to ensure that upon the purchase of a life insurance company that the successor company had knowledge of what policies were "on the books", their terms, and what requirements that created for the company;

(l.)    a duty to conduct due diligence before taking responsibility for life insurance policies by purchasing companies;

(m.)    to keep a copy of all in-force policies;

(n.)    and other duties.

207.    The basis of these duties was the Defendants' unique position to know the status of the legacy policies, to know how the policies were administered, to know what options were available for exchange, and to know how that exchange could be exercised.  By contrast, the Class has no knowledge of the corporate intrigue surrounding

the frequent sale of life insurance policies behind her back and the sloppy way that such sales were conducted.

208.    Defendants breached their duties to the class by failing to keep track of their legacy policies, by losing the physical policy documents and not having any direct information about their terms, by failing to notify the class when there was a substantial change in the life insurance company's ability to honor the policy, by failing to notify the class when there had been (in the past) a substantial change in the life insurance company's ability to honor the policies, by failing to honor the Class's exercise of the exchange provision, and other breaches.

209.    Defendants' negligence was the direct and proximate cause of the lapse of policies owned by the Class and the Class's inability to exchange the policy upon demand.

210.    As a direct and proximate cause of Defendants material breaches of the Agreement, the Class was and will continue to be damaged in an amount to be proven at trial.

211.    The scope of this negligence is broader and distinct from Defendants' breach of contract, including its application to all parties regardless of their formal contract with Plaintiff and the duties owed to the Class which were broader than those described in the written contract between the parties.

## TENTH CLAIM FOR RELIEF

### Violation of General Business Law § 349
### (Plaintiff, Lincoln Security Class, and Legacy Policy Class against Defendants)

212.    The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 211 of this Complaint.

213.    New York General Business Law § 349 prohibits the use of deceptive acts or practices in the conduct of any business, including life insurance, in the State of New York.

214.    Defendants represented in their life insurance agreements that policies would be exchanged upon request.

215.    Defendants represented through their brokers and agents that policies can be exchanged upon request.

216.    Defendants have willfully violated § 349 by among other things failing to provide an exchange of life insurance policies upon request, failing to notify the policy owners that an exchange was unavailable and other failures arising out of failing to ensure an exchange was available for the duration of the relevant policies.

217.    The aforementioned conduct was likely to mislead and in fact has misled reasonable consumers acting reasonably under the circumstances.  For example, reasonable consumers would expect that when they purchase a life insurance policy with an exchange provision, they would be able to exchange their policies upon demand.

218.    No reasonable consumer would expect that after purchasing a life insurance policy with an exchange provision (and organizing their personal and financial lives around the expectations of insurance coverage) they would discover that in fact they

did not have coverage beyond the policy term because the policy was not exchangeable upon demand.

219.    Defendants' conduct is consumer-oriented and of a recurring nature.  The policies owned by Plaintiff and the Classes were policies with modest face values, primarily intended by its purchasers to cover mortgages (upon the untimely death of a primary family provider) and posthumous expenses (including funeral, compensation for lost income, and other related expenses).  The policies at issue in this Complaint were not exotic, investment-oriented Stranger-Owned Life Insurance policies; "jumbo" policies, etc . . . .  These were modest term policies primarily marketed to middle-income families.

220.    Defendants violation of § 349 occurred within the State of New York because the Wiseman Policy was purchased in New York, the Wiseman Policy was marketed in New York, the Wiseman Policy was administered in New York.

221.    Defendants violations of § 349 included denial of the exchange demand when Plaintiff was resident in New York, and the failure to have an option to exchange when Plaintiff was resident in New York.

222.    Even when Plaintiff later moved to New Jersey, the act of denying her exercise of the exchange provision was done by Defendants in the State of New York.

223.    Defendants' organization of ReliaStar Life Insurance of New York was the only entity within their portfolio with authority to market in (and solely) within the State of New York.

224.    Defendants' claim otherwise fall within the jurisdiction of §349.

225.    As a direct and proximate cause of Defendants' violation of § 349, the Plaintiff and the classes have been damaged as alleged in this Complaint in an amount to be proven at trial.

226.    Plaintiff on behalf of herself and the Classes also seeks declaratory and injunctive relief as well as costs and reasonable attorneys' fees.

## ELEVENTH CLAIM FOR RELIEF

### Unjust Enrichment
### (Plaintiff, Lincoln Security Class, and Legacy Policy Class against all Defendants)

227.    The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 226 of this Complaint.

228.    Plaintiff argues in the alternative that since Defendants lost the Plaintiff's (and Classes') original life insurance policies, therefore as of the loss of those policies, the relationship between the parties was not based on a written contract.

229.    Defendants' tortious conduct as described in this Complaint, allowed Defendants to realize substantial revenues by overcharging on premiums (which premiums were calculated on the basis of an option to exchange upon demand) to the detriment of Plaintiff and the Classes and to the Defendants' benefit and unjust enrichment.

230.    Under New York common law principles of unjust enrichment, it is inequitable for Defendants to retain the benefits conferred by Plaintiff's and the Classes' overpayment.

231.    Plaintiff on behalf of themselves and all class members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and the class members may seek restitution.

## TWELFTH CLAIM FOR RELIEF

### Declaratory Judgment
### (Plaintiff, Lincoln Security Class, and Legacy Policy Class against all Defendants)

232.    The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 231 of this Complaint.

233.    There exists a real and actual dispute and controversy between the Plaintiff and the Defendants concerning Plaintiff's rights and Defendants' obligations to provide an exchange upon demand.

234.    Accordingly, the Plaintiff on behalf of herself and the Classes seeks a declaration that Defendants are obligated to provide all policy owners with an option to exchange upon demand, and that Defendants are obligated to immediately do all things necessary to allow the policies to be exchanged (including such appropriate underwriting and filings with the New York State Department of Financial Services and equivalent authorities in other relevant jurisdictions).

235.    Such a declaration will help prevent and limit further controversies under the policies by ameliorating the damage caused by the lack of ability to exchange the policies.

## THIRTEENTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress
### (Plaintiff against Defendants)

236.    The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 235 of this Complaint

237.    The Plaintiff paid premiums for 25 years and organized her personal and financial lives around the expectation that the life insurance Policy they purchased would always be available for exchange to a new policy.  And that upon an exchange, the Policy term would extend until their mother's passing.

238.    Because of Plaintiffs' breach of contract, Plaintiff was unable to exchange the Policy and upon maturity in October 2016 the Policy lapsed leaving the family with no coverage.

239.    It was extreme and outrageous conduct for multi-billion dollar insurance companies to blatantly violate their duties to Plaintiff by failing to provide an exchange option, at a time when the Plaintiff was most vulnerable.

240.    It was extreme and outrageous conduct for multi-billion dollar insurance companies to threaten that a life insurance policy on a 95-year-old woman would lapse if she survived through its term, with no option to exchange.

241.    Defendants' disregarded the substantial probability of causing Plaintiff severe emotional stress by failing to provide an option to exchange their policy after 25 years of duly paying all premiums.

242.    Defendants' disregarded the substantial probability of causing Plaintiff severe emotional stress by creating pressure on her 95 year old mother to pass

before the policy would lapse, when in fact the Defendants were obligated to provide an option to exchange the Policy on demand in which case the policy would not lapse.

243.    There was a direct and causal relationship between the tortious conduct of Defendants and the injury suffered by Plaintiff.

244.    Plaintiff did in fact suffer substantial and severe emotional distress as a direct consequence of Defendants' tortious conduct.

245.    Plaintiff suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

1.     Declaring this action to be a class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedures;

2.     Awarding Plaintiff compensatory and other damages pursuant to their First, Fourth, and Seventh Claims for Relief;

3.     Awarding the Lincoln Security Class compensatory and other damages pursuant to the Second, Fifth, and Eighth Claims for Relief;

4.     Awarding the Legacy Policy Class compensatory and other damages pursuant to the Third, Sixth, and Ninth Claims for Relief;

5.     Awarding the Plaintiff and the classes compensatory and other damages pursuant to the Tenth Claim for Relief;

6.     Awarding the Plaintiff and the classes compensatory and other damages pursuant to the Eleventh Claim for Relief;

7.     Awarding the Plaintiff and the classes injunctive relief pursuant to the Twelfth Claim for Relief;

8.     Awarding the Plaintiff damages pursuant to the Thirteenth Claim for Relief;

9.     Awarding the Plaintiff and the classes reasonable attorneys' fees pursuant to this Complaint;

10.    Awarding the Plaintiff and the classes pre-judgment and post-judgment interest, as well as costs; and

11.     Awarding the Plaintiff and the classes such other relief as this Court may
deem just and proper under the circumstances; and

12.     In the alternative, allowing Plaintiff limited Discovery on certain matters
to allow this case to move forward, including Discovery into the
relationship and co-venture between the Defendants, Defendants
possession of the original policy and other threshold matters.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff
hereby demands a trial by jury as to all issues so triable.

Dated: January 2, 2017
At: Fresh Meadows, NY

Baruch S. Gottesman, Esq. (BG2222)
*Of Counsel*
Horowitz and Rubenstein LLC
c/o 185-12 Union Turnpike
Fresh Meadows, NY 11366

Aryeh Kaufman, Esq.
Law Office of Aryeh Kaufman
(application for admission *phv* to be filed)
5482 Wilshire Blvd., #1907
Los Angeles, CA 90036

*Counsel for Plaintiff*
*and prospective Class Counsel*