UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GLORIA D. WISEMAN,

          PLAINTIFF,

v.

ING GROEP, N.V., VOYA FINANCIAL, INC.,
AND RELIASTAR LIFE INSURANCE COMPANY
OF NEW YORK,

          DEFENDANTS.

NO. 1:16-CV-07587 (AJN)

---

**MEMORANDUM OF LAW IN SUPPORT OF VOYA FINANCIAL, INC. AND RELIASTAR LIFE INSURANCE COMPANY OF NEW YORK'S MOTION TO DISMISS**

STITES & HARBISON PLLC
Clark C. Johnson (*pro hac vice*)
Michael T. Leigh
Jeffrey S. Moad (*pro hac vice*)
400 West Market St., Ste. 1800
Louisville, Kentucky  40202

O'TOOLE + O'TOOLE PLLC
Andrew D. O'Toole
22 Valley Road
Katonah, NY  10536

*Counsel for Voya Financial, Inc. and
ReliaStar Life Insurance Company of New York*

TABLE OF CONTENTS

Introduction ............................................................................................................. 1

Facts ...................................................................................................................... 3

Legal Standard ...................................................................................................... 6

Argument ............................................................................................................... 6

I.    Wiseman's Seven Claims Fail as a Matter of Law .......................................... 7

    A.    The Breach of Contract Claims Fail Because None of Wiseman's
        Allegations Constitutes a Breach of the Policy ........................................... 7

        1.    Wiseman Is Not Entitled to Exchange for a Policy That RLNY
            Did Not Issue at the Time of Exchange .............................................. 7

        2.    No Policy Terms Required Defendants to Notify Wiseman, Charge
            Premiums Other Than Those Identified in the Policy, or
            Maintain the Policy's Secondary Market Value .................................. 9

    B.    The Implied Covenant Claims Fail Because They Are Duplicative of the
        Breach of Contract Claims and Seek to Impose Substantive Obligations. ...... 9

    C.    The Negligence Claims Fail Because Wiseman Cannot Allege a Duty or
        Damages Independent of the Policy, the Statute of Limitations Has Run,
        and Her New Claim That RLNY "Lost" Her Policy Is Baseless ................. 11

        1.    Wiseman Alleges No Independent Duty or Injury. .......................... 11

        2.    The "Lost Policy" Theory Is Implausible. ...................................... 12

        3.    The Three-Year Statute of Limitations Has Run ............................. 14

    D.    The GBL § 349 Claim Fails Because It Is Duplicative of Wiseman's
        Contract Claim and Is Time-Barred. .......................................................... 16

        1.    Wiseman's GBL § 349 Claim Is Duplicative of Her
            Contract Claim. .............................................................................. 16

        2.    The Statute of Limitations Has Run ................................................ 17

    E.    The Unjust Enrichment Claim Fails Because a Contract Controls ............... 18

    F.    The Declaratory Judgment Claim Should Be Dismissed Because a
        Declaration Would Serve No Useful Purpose ............................................ 19

    G.    The Intentional Infliction of Emotional Distress Claim Fails Because
        the Conduct Alleged in the FAC Is Not "Outrageous." ............................. 20

II.   All Claims against Voya Financial Should Be Dismissed ............................... 21

    A.    RLNY's Corporate Parents Are Not Liable for RLNY's Acts. ................... 21

    B.    Wiseman Has No Article III Standing to Sue Any Entity But RLNY. ......... 24

Conclusion ........................................................................................................... 25

TABLE OF AUTHORITIES

## Cases

*24/7 Records, Inc. v. Sony Music Entm't, Inc.*,
429 F.3d 39 (2d Cir. 2005).................................................................................. 7

*ACE Secs. Corp. Home Equity Loan Trust v. DB Structured Prods.*,
5 F. Supp. 3d 543 (S.D.N.Y. 2014)......................................................... 4, 6, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................ 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................ 6

*Bob v. Scibal Assocs., Inc.*,
2014 U.S. Dist. LEXIS 120325 (S.D.N.Y. Feb. 10, 2014)............................. 11

*Bryant v. Comm'r of Soc. Sec.*,
2015 U.S. Dist. LEXIS 151143 (S.D.N.Y. Aug. 17, 2015)....................... 14, 15

*Certain Underwriters at Lloyd's v. Milberg LLP*,
2009 U.S. Dist. LEXIS 97284 (S.D.N.Y. Sept. 29, 2009)............................. 15

*CMG Holdings Grp. V. Wagner*,
2015 U.S. Dist. LEXIS 121135 (S.D.N.Y. Sept. 7, 2016).............................. 8

*Cunningham v. Security Mutual Ins. Co.*,
689 N.Y.S.2d 290 (App. Div. 1999)............................................................... 21

*Degraziano v. Verizon Commc'ns, Inc.*,
325 F. Supp. 2d 238 (E.D.N.Y. 2004).....................................................21, 22

*Deutsche Bank Sec., Inc. v. Rhodes*,
578 F. Supp. 2d 652 (S.D.N.Y. 2008) ........................................................... 10

*Dow Jones & Co. v. Harrods Ltd.*,
346 F.3d 357 (2d Cir. 2003)......................................................................... 19

*Fleischer v. Phx. Life Ins. Co.*,
858 F. Supp. 2d 290 (S.D.N.Y. 2012) ............................................. 10, 16, 17

*Fossil Indus. v. Arjo Wiggins, USA, Inc.*,
2015 U.S. Dist. LEXIS 122024 (E.D.N.Y. Sept. 12, 2015) .......................... 19

*Gallo v. Alitalia – Linee Aeree Italiane – Societa Per Azioni*,
585 F. Supp. 2d 520 (S.D.N.Y. 2008) ......................................................... 20

*Garcia v. Paris Maint.*,
2016 U.S. Dist. LEXIS 60111 (E.D.N.Y. May 4, 2016)................................. 22

*Gassiott v. Prudential Ins. Co. of Am.*,
2009 U.S. Dist. LEXIS 93136 (S.D.N.Y. Oct. 6, 2009) ................................ 15

TABLE OF AUTHORITIES

*Goldman v. Metro. Life Ins. Co.*,
 841 N.E.2d 742 (N.Y. 2005) ........................................................................ 18

*Guan N. v. N.Y.C. Dep't of Educ.*,
 2014 U.S. Dist. LEXIS 44783 (S.D.N.Y. Mar. 24, 2014) ............................. 25

*Harris v. Provident Life & Accident Ins. Co.*,
 310 F.3d 73 (2d Cir. 2002) ........................................................................... 10

*Hildene v. Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc.*,
 2012 U.S. Dist. LEXIS 115942 (S.D.N.Y. Aug. 15, 2012) ........................... 10

*Horowitz v. Aetna Life Ins.*,
 539 N.Y.S.2d 50 (App. Div. 1989) ................................................................ 22

*In re Digital Music Antitrust Litig.*,
 812 F. Supp. 2d 390 (S.D.N.Y. 2011) .......................................................... 22

*In re Lernout & Hauspie Secs. Litig. v. Lernout*,
 230 F. Supp. 2d 152 (D. Mass. 2002) ......................................................... 23

*Joseph H. v. Hogan*,
 561 F. Supp. 2d 280 (E.D.N.Y. 2008) .......................................................... 15

*Kant v. Columbia Univ.*,
 2010 U.S. Dist. LEXIS 21900 (S.D.N.Y. Mar. 9, 2010) ............................... 13

*Kiobel v. Royal Dutch Petroleum Co.*,
 621 F.3d 111 (2d Cir. 2010) ......................................................................... 22

*MaGee v. Paul Revere Life Ins. Co.*,
 954 F. Supp. 582 (S.D.N.Y. 1997) ............................................................... 21

*Mahon v. Ticor Title Ins. Co.*,
 683 F.3d 59 (2d Cir. 2012) ........................................................................... 25

*Marshall v. Hyundai Motor Am.*,
 51 F. Supp. 3d 461 (S.D.N.Y. 2014) ................................................. 16, 17, 18

*Millennium Partners, L.P. v. U.S. Bank Nat'l Ass'n*,
 2013 U.S. Dist. LEXIS 55729 (S.D.N.Y. Apr. 17, 2013) ............................. 12

*Nials v. Bank of Am.*,
 2014 U.S. Dist. LEXIS 77070 (S.D.N.Y. May 30, 2014) ............................. 16

*Nuevo Mundo Holdings v. PriceWaterhouseCoopers LLP*,
 2004 U.S. Dist. LEXIS 780 (S.D.N.Y. Jan. 22, 2004) ................................. 23

*Polidoro v. Chubb Corp.*,
 354 F. Supp. 2d 349 (S.D.N.Y. 2005) .......................................................... 11

*Rao v. Med. Soc'y*,
 1998 U.S. Dist. LEXIS 18050 (S.D.N.Y. Nov. 12, 1998) ............................. 16

## TABLE OF AUTHORITIES

*Rivera v. City of New York,*
2000 U.S. Dist. LEXIS 2227 (S.D.N.Y. Feb. 23, 2000) ................................................. 16

*Schandler v. N.Y. Life Ins. Co.,*
2011 U.S. Dist. LEXIS 46322 (S.D.N.Y. Apr. 26, 2011) ........................................... 17

*Seltzer v. Bayer,*
709 N.Y.S.2d 21 (App. Div. 2000)............................................................................. 20

*Sommer v. Fed. Signal Corp.,*
583 N.Y.S.2d 957 (N.Y. 1992) .................................................................................. 11

*Spagnola v. Chubb Corp.,*
574 F.3d 64 (2d Cir. 2009)......................................................................................... 17

*Statler v. Dell, Inc.,*
775 F. Supp. 2d 474 (E.D.N.Y. 2011)........................................................................ 17

*SUS, Inc. v. St. Paul's Travelers Group,*
75 A.D.3d 740 (3d Dept. 2010)................................................................................. 21

*Tag 380, LLC v. ComMet 380, Inc.,*
830 N.Y.S.2d 87 (App. Div. 2007)............................................................................ 11

*Vantone Grp. LLC v. Yangpu NGT Indus. Co.,*
2015 U.S. Dist. LEXIS 86653 (S.D.N.Y. July 2, 2015)............................................. 24

*Wallace v. N.Y.C. Dep't of Corrs.,*
1996 U.S. Dist. LEXIS 22368 (E.D.N.Y. Oct. 9, 1996) ........................................... 13

*Wiener v. Unumprovident Corp.,*
202 F. Supp. 2d 116 (S.D.N.Y. 2002) ..................................................................20, 21

*Wolff v. Rare Medium, Inc.,*
171 F. Supp. 2d 354 (S.D.N.Y. 2001) ......................................................................7, 9

**Miscellaneous Authorities**

N.Y. Dep't of Fin. Servs., *Lost Policy Finder* ................................................................ 14

**Statutes, Rules & Regulations**

Fed. R. Civ. P. 12 ............................................................................................................ 6

N.Y. Gen. Bus. Law § 349............................................................................................passim

N.Y. C.P.L.R. § 213(2) ................................................................................................... 9

N.Y. C.P.L.R. § 214(4) ................................................................................................. 14

## Introduction

In 1991, Gloria Wiseman purchased a $300,000 life insurance policy on the life of her 70-year-old mother, Olga. For years, the policy has been owned and administered by ReliaStar Life Insurance Company of New York ("RLNY"). Wiseman's policy: (*i*) defined its Maturity Date as October 23, 2016; (*ii*) stated that coverage terminated no later than maturity, and (*iii*) promised that on the Maturity Date the insurer would pay the policy's "cash value," not the $300,000 death benefit, if the insured was alive. (ECF No. 29-1, at 5, 10 & 17 (hereinafter "Policy").)

In 2015 and 2016, as the 25-year-old Policy approached maturity and her mother approached age 95, Wiseman sought to exchange the Policy for a new one. Wiseman demanded a new policy that would continue until Olga's death and pay a $300,000 death benefit, for a premium based on the same formula used to calculate the premium in 1991 when her mother was 70 years old. RLNY refused those requests, precipitating this lawsuit.

While the Policy contains an exchange option, it does not entitle Wiseman to a new policy with the features she demands. The Policy allowed her to exchange "to any plan of whole life or endowment *that we issue at the time of exchange*" with premiums for the new policy calculated "according to the rates in effect for the age and premium rate class of the Insured *at the time of exchange.*" (*Id.* at 18) (emphasis added). In other words, Wiseman could only exchange for a policy *that RLNY issued at the time* with premiums based on *2016 life insurance rates for a 95-year-old life*—not a nonexistent policy with 1991 rates for a 70-year-old life. No contract provision required RLNY to provide Wiseman a whole life policy that RLNY did not issue for the same premium or less than the original Policy. Thus, Wiseman's claim that RLNY breached the Policy by failing to honor her exchange request fails.

Wiseman's non-contractual claims also should be dismissed. The implied covenant of good faith and fair dealing claim duplicates the failed contract claim and seeks to alter the terms of the contract. The First Amended Complaint's ("FAC") new negligence claim fails to assert the breach of a non-contractual duty or damages independent of the alleged breach of contract, fails because Wiseman's new theory that RLNY "lost" her Policy is implausible, and is barred by the statute of limitations. Any claim based on New York General Business Law ("GBL") § 349 also is duplicative and fails because the statute of limitations has run. The unjust enrichment claim is meritless because there is no real dispute that a contract controls. The declaratory judgment claim—like the negligence, implied covenant, and GBL § 349 claims—serves no purpose and is redundant of the contract claim. And finally, the intentional infliction of emotional distress claim fails because the allegations fall far short of New York's "outrageousness" standard.

Even if any claims could proceed, Wiseman's attempt to substantially expand her individual claims and the putative classes by naming Voya Financial, Inc. ("Voya Financial") and ING Groep, N.V. ("ING Groep") as defendants should be rejected. Neither ING Groep nor Voya Financial is a party to Wiseman's contract, and they are not proper parties to the suit merely because they are RLNY's former (ING Groep) and current (Voya Financial) parent companies. Moreover, as Wiseman does not own a Voya Financial or ING Groep policy, she has no standing to sue those entities.

Wiseman's FAC adds over 20 pages of self-serving, immaterial allegations and far-fetched conspiracy theories, but fails to correct the deficiencies in her claims: Wiseman is not entitled to the exchange she seeks, cannot recast her failed contract claim as non-contract legal theories, and cannot expand the scope of this case with baseless allegations against parent corporations.  The FAC should be dismissed with prejudice.

## FACTS

In 1991, Gloria Wiseman purchased a $300,000, 25-year Flexible Premium Adjustable Life Insurance Policy from Lincoln Security Life Insurance Company ("Lincoln") to insure the life of her 70-year-old mother, Olga. (FAC, ECF No. 29, at ¶ 29.) The Policy stated a Maturity Date of October 23, 2016, (Policy at 5), when Olga would be 95 years old. The Policy stated that all coverage "shall end at the earliest of" the insured's death or the policy's Maturity Date, among other events. (*Id.* at 10.) The Policy's $300,000 death benefit was payable in the event that Olga died before the October 23, 2016 Maturity Date and the Policy was in force. (*Id.* at 17.) If Olga was alive and the Policy still in force at the Maturity Date, the insurer agreed to pay "any cash value, less any debt." (*Id.* at 10.)

The Policy also contained a provision that stated: "You may exchange this Policy for a new Policy. Such exchange may be to any plan of whole life or endowment *that we issue at the time of exchange* . . . . Written notice for such exchange must be given to us 31 days in advance . . . . We will issue the new Policy in the same premium rate class as this Policy. We will calculate the premium for the new Policy *according to the rates in effect for the age and premium rate class of the Insured at the time of exchange*. All plans of insurance available for exchange are subject to plan requirements." (*Id.* at 18 (emphasis added).)

In February 2015, with the Policy nearing maturity, Wiseman made written demands to exchange her Policy, but demanded a policy that was plainly at odds with the exchange provision. (FAC ¶¶ 57–72.)[1] She wrote to RLNY: "[I]t is written in the paragraph labelled

---

[1] The FAC adds allegations that Wiseman orally sought an exchange prior to sending her written demands in February 2015. The Policy plainly requires any exchange request be in writing, and allows waiver or modification of Policy terms only in limited circumstances, not satisfied by alleged oral representations by RLNY over the phone or by email. (Policy at 9.) In any event, the new allegations are inconsequential as the parties agree that Wiseman sent a writing demanding an exchange for the first time in February 2015, well before 31 days prior to the Policy's Maturity Date. (*Compare* Ex. 1 to Decl. of Michael T. Leigh *with* FAC ¶¶ 57 & 60.) The dispute concerns whether Wiseman sought an exchange she was entitled to, which, as RLNY and Voya demonstrate herein, she did not.

EXCHANGE: 'You may exchange this policy for a new policy. Such exchange may be to any plan of whole life.'" (*Id.* ¶ 60; Ex. 1 to Decl. of Michael T. Leigh.)[2] Her written demand omitted the subsequent language of the provision, which limits any exchange to a policy "that we [the insurer] issue at the time of exchange." (Policy at 18.) She continued: "I am giving you written notice that we wish to exchange this policy, for a similar policy with no age expiration, same premiums or less." (Ex. 1.) Wiseman also omitted subsequent language stating that the insurer would "calculate the premium for the new Policy according to the rates in effect for the age and premium rate class of the Insured at the time of exchange." (Policy at 18.) The FAC then vaguely describes subsequent correspondence between RLNY and Wiseman. (FAC at 71–72.) But it neglects to mention that RLNY did, in fact, offer Wiseman a policy available for exchange. It also neglects to mention that she declined that offer and continued to demand a policy to which she was not entitled.

Wiseman does not allege that RLNY issued a policy with the features Wiseman demanded. Indeed, the FAC correctly suggests RLNY did not carry a whole life policy for someone approaching 95 years old. (*Id.* ¶¶ 75–76.) Wiseman was not entitled, contractually or otherwise, to her requested "similar policy with no age expiration, same premiums or less." Basic insurance and underwriting principles suggest that the annual premiums for a whole life insurance policy for a 95-year-old would nearly equal the death benefit.

The FAC also inaccurately describes Defendants' corporate history and structure. According to the FAC, since Wiseman purchased her Policy from Lincoln in 1991, RLNY has become Lincoln's successor in interest. (*Id.* ¶ 13.) Voya Financial owns all of RLNY's stock. (*Id.* ¶ 8.) ING Groep used to be Voya Financial's parent company. (*Id.* ¶ 96.) The FAC

---

[2] The Court may properly consider documents relied upon by Wiseman and integral to the claims and allegations in her FAC. *ACE Secs. Corp. Home Equity Loan Trust v. DB Structured Prods.*, 5 F. Supp. 3d 543, 551 (S.D.N.Y. 2014) (Nathan, J.).

also incorrectly describes RLNY as a "shell company" or "brand name" for Voya Financial. (*Id.* ¶ 86.) To support this allegation, the FAC identifies various shared marketing materials and attaches life insurance illustrations obtained in New York and New Jersey bearing Voya Financial logos . (*Id.* at 87–95; ECF No. 29-2, 29-3.) The FAC also alleges that ING Groep (Voya and RLNY's former parent company) formerly set the "policies, practices and actuarial models" for Voya Financial and RLNY. (FAC ¶¶ 96–100.) The FAC identifies no way in which ING Groep or Voya Financial used the corporate form to commit a wrong.

The FAC asserts a new theory on "information and belief" that RLNY lost Wiseman's policy. (FAC ¶ 33.) The duplicate policy attached to her initial complaint and the FAC, she alleges, was "stitched together from various forms" and "is not an accurate copy." (*Id.* ¶ 34–36.) The FAC concludes that the real policy contains language that is equally favorable or "more favorable to the Plaintiff." (*Id.* ¶ 52.) She attached the duplicate policy to her original complaint without mention of this theory, (ECF No. 1-1), and only raised it in response to a motion to dismiss based on the Policy terms. The stated "basis for Plaintiff's belief" is that the duplicate policy RLNY provided her "contains no illustrations," "no application," and "no signatures," (*id.* ¶ 34). In truth, RLNY has an application with illustrations and Olga Wiseman's signature, she just never requested it. (*See* Ex. 2.)

Wiseman asserts seven claims, all but one on behalf of herself and two classes. The first class—the "Lincoln Security Class"—comprises individuals who purchased policies from Lincoln that were in force on January 1, 1998, contained an exchange provision, and "which were at any time unavailable for exchange." (FAC ¶ 115.) The second class—the "Legacy Policy Class"—is significantly larger. It comprises "All owners of life insurance policies issued by any life insurance company with an exchange provision that were at any time after September 1, 2000, owned and/or administered by ING Groep, N.V., Voya

Financial, Inc., ReliaStar Life Insurance Company of New York, (and its owners and assigns) which were at any time unavailable for exchange." (*Id.* ¶ 116.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, the plaintiff must allege facts sufficient "to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In addition to the allegations in the complaint itself, a court may consider documents attached as exhibits, incorporated by reference, or relied upon by the plaintiff in bringing suit . . . ." *ACE Secs. Corp. Home Equity Loan Trust v. DB Structured Prods.*, 5 F. Supp. 3d 543, 551 (S.D.N.Y. 2014). "If a document relied on in the complaint contradicts the allegations in the complaint, the document, not the allegations, control and the court need not accept the allegations in the complaint as true." *Id.*

## ARGUMENT

All seven of Wiseman's claims should be dismissed. The FAC fails to state a breach of contract claim because the policy terms are directly at odds with her allegations of breach. The six remaining claims are simply reiterations of her failed contract claim—all are based on the same erroneous interpretation of her policy's exchange provision—and fail on this ground alone. Moreover, the negligence and GBL § 349 claims fail because the statute of limitations for each has run. The unjust enrichment claim fails because there is no dispute that a contract governs this action. The declaratory judgment claim serves no useful purpose because the legal issues it raises necessarily will be decided in litigating the damages claims. And the IIED allegations fall far short of New York's "outrageousness" standard.

Even if any claims could proceed, they could only do so against RLNY. The only allegations against Voya Financial concern shared marketing materials (in a case where marketing materials are not at issue) and baseless allegations seeking to disregard RLNY's corporate form. Voya Financial cannot be liable for RLNY's alleged acts on the basis that it is RLNY's parent company and shares an irrelevant marketing strategy with it. And as Wiseman does not own a Voya Financial policy, she has no standing to assert claims against it, either individually or as a putative class representative.

**I.      Wiseman's Seven Claims Fail as a Matter of Law.**

> **A.      The Breach of Contract Claims Fail Because None of Wiseman's Allegations Constitutes a Breach of the Policy.**

To state a breach of contract claim under New York law, a plaintiff must plausibly plead the existence of a contract, adequate performance by the plaintiff, breach by the defendant, and damages. *24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 429 F.3d 39, 41–42 (2d Cir. 2005). "In pleading these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 357–58 (S.D.N.Y. 2001). Wiseman's claims fail because she has not and cannot allege a breach of any Policy terms.

> **1.      Wiseman Is Not Entitled to Exchange for a Policy That RLNY Did Not Issue at the Time of Exchange.**

Wiseman's allegation that Defendants breached the contract by failing to provide an option to exchange the policy upon demand fails because Wiseman demanded—and seeks in this litigation—an exchange not required by the Policy. The Policy allowed for an exchange after 31 days' written notice to "any plan of whole life or endowment *that we issue at the time of exchange*." (Policy at 18 (emphasis added).) It stated that the rate for the new policy would be calculated "according to the rates in effect for the age and premium rate

class of the Insured *at the time of exchange*." (*Id.*) But Wiseman did not demand a policy that

met those requirements. Instead, she demanded a whole life policy for her 95-year-old

mother —which RLNY did not issue—for *the same $300,000 death benefit* at *the same or lower*

*premiums* as those paid for her existing Policy with a maturity date and premiums that were

underwritten 25 years ago for a 70-year-old insured. (Ex. 1.) Wiseman does not and cannot

allege that she requested, in writing, a policy that RLNY issued at the time of exchange, or

that she would have paid the significant premiums underwritten for a 95-year-old. No policy

provision requires RLNY to exchange an expiring policy for a policy that it never offered.

Wiseman cannot prove that Defendants breached the Policy where she cannot allege and

prove the she sought an exchange to which she was entitled. *CMG Holdings Grp. V. Wagner*,

2015 U.S. Dist. LEXIS 121135, at *23–24 (S.D.N.Y. Sept. 7, 2016) (dismissing complaint

where plaintiff did not allege and could not prove its own performance).

     The new allegations in the FAC concerning telephone calls, emails, and letters, (FAC

¶¶ 55–72), and the conclusory—and speculative—allegation as to the purpose of the

exchange provision, (*id.* at ¶ 79), cannot change what Wiseman was entitled to under Policy,

or the fact that she demanded an exchange to which she plainly was not entitled.[3] Indeed,

the FAC lacks any allegation that Wiseman would have accepted a new policy offered by

RLNY at current-day premiums on a 95-year-old life, and *all* allegations and documents

referenced in the FAC are to the contrary: The only policy Wiseman demanded was a whole

life policy "with no age expiration, same premium or less." (FAC ¶ 65; Ex. 1.) And

Wiseman's new speculative allegation that the underlying purpose of the exchange provision

---

[3] Wiseman's new allegations of correspondence and oral communications she asserts constitute RLNY's "acceptance" of her exchange demand and "waiver" of the Policy terms should also not be credited because they are flatly wrong as shown by the documents relied upon and incorporated by reference in the FAC. For example, the April 24, 2015 RLNY letter she selectively quotes as a purported admission omits the subsequent sentence in the letter in which RLNY referred to the limited parameters of what the exchange provision required. (Ex. 3, 4/24/2015 Ltr.)

was for her to obtain a new policy with "more benefits or more favorable pricing," (*id.* at ¶ 28), makes clear that this case is merely a further effort to secure something her Policy did not require. As Wiseman cannot identify any term that RLNY breached, any contract claim based on a failure to exchange should be dismissed.

> ### 2. No Policy Terms Required Defendants to Notify Wiseman, Charge Premiums Other Than Those Identified in the Policy, or Maintain the Policy's Secondary Market Value.

Wiseman's remaining breach of contract allegations are entirely divorced from the contract. No Policy provision requires the insurer to notify the owner "that the policy could not be exchanged upon demand." (FAC ¶¶ 131(b), 139(b), 148(b).) Likewise, while Wiseman theorizes that Defendants overcharged premiums, there is no allegation that Defendants ever charged Wiseman more in premium than what her contract required. No Policy provision required Defendants to calculate premiums based on Wiseman's claim that she was entitled to effectively extend her Policy indefinitely at no additional cost. (*Id.* ¶¶ 131(c), 139(c), 148(c).) And no Policy provision required Defendants to somehow maintain the value of the Policy on a secondary market. (*Id.* ¶¶ 131(d), 139(d), 148(d).) These remaining allegations are not tied to any contract provisions; the breach of contract claim therefore fails as a matter of law and should be dismissed with prejudice. *Wolff*, 171 F. Supp. 2d at 357–58 (dismissing contract claim for failure to specify breached provisions).[4]

> ### B. The Implied Covenant Claims Fail Because They Are Duplicative of the Breach of Contract Claims and Seek to Impose Substantive Obligations.

"A party may maintain a claim for breach of the implied covenant only if the claim is based on allegations different from the allegations underlying the accompanying breach of

---

[4]  To the extent Wiseman's new allegation that "the [FAC] also seeks to recover all damages caused by Defendants' breaches. . . beginning in 2000," (FAC ¶ 103), seeks to assert breach of contract claims prior to September 29, 2010, any such effort is time barred by New York's six-year statute of limitations for contract claims. N.Y. C.P.L.R. § 213(2).

contract claim." *Fleischer v. Phx. Life Ins. Co.*, 858 F. Supp. 2d 290, 299 (S.D.N.Y. 2012)

(quoting *Deutsche Bank Sec., Inc. v. Rhodes*, 578 F. Supp. 2d 652, 654 (S.D.N.Y. 2008)).

"Accordingly, [a] claim for breach of the implied covenant will be dismissed as redundant

where the conduct allegedly violating the implied covenant is also the predicate for breach

. . . of an express provision of the underlying contract." *Id.* New York law does not

recognize a separate cause of action for breach of the implied covenant of good faith and

fair dealing when a plaintiff also pursues a breach of contract claim based upon the same

facts. *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002).

Wiseman's implied covenant claim mirrors her breach of contract claim. The crux of

her contract claim is that Defendants allegedly did not allow her to exchange her policy, did

not notify her that an exchange was (allegedly) unavailable, and overcharged her premiums

because an exchange was unavailable. (*E.g.*, FAC ¶ 131.) Her implied covenant claim stems

from precisely the same three allegations. (*Id.* at ¶¶ 161, 171, 182.) Wiseman cannot assert

both a breach of contract claim and an implied covenant claim on the same factual bases; as

a result, the implied covenant claims should be dismissed.

Wiseman cannot use an implied covenant claim to alter the substantive obligations in

the Policy. *See Hildene v. Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc.*, 2012 U.S.

Dist. LEXIS 115942, at *22–24 (S.D.N.Y. Aug. 15, 2012) (Nathan. J.) (dismissing implied

covenant claim as "an impermissible request that the Court impose broad obligations on

[the defendant] found nowhere in the text of the indentures"). As discussed above, the

express terms of Wiseman's Policy provides an option to exchange only for a policy that

Defendants issued at the time an exchange was sought. Wiseman acknowledges as much in

her implied covenant claims by basing her allegations entirely on the exchange provision

meaning "if and only if" a policy exists for which she could exchange her existing policy,

(FAC ¶¶ 161(a), (b), (c))—the obvious and reasonable interpretation of the policy language. Wiseman's implied covenant claims thus seek to rewrite the Policy to remove the limiting language in the Policy that any exchange could only be had for a policy that RLNY issued at the time of the desired exchange and with premiums underwritten at the time of exchange. As Wiseman's implied covenant claim seeks to add substantive obligations to the contract, it fails as a matter of law.

### C.    The Negligence Claims Fail Because Wiseman Cannot Allege a Duty or Damages Independent of the Policy, the Statute of Limitations Has Run, and Her New Claim That RLNY "Lost" Her Policy Is Baseless.

Wiseman's new negligence claims should be dismissed for three reasons: (*i*) she fails to allege an extra-contractual duty or injury, (*ii*) her theory that RLNY lost her policy and cobbled together one with different terms is specious, and (*iii*) her allegations of negligence based on events in 1998 and 2000 are barred by the three-year statute of limitations.

### 1.    Wiseman Alleges No Independent Duty or Injury.

"It is well settled that a party to a contract may not interpose a tort claim unless a legal duty independent of the contract has been breached." *Tag 380, LLC v. ComMet 380, Inc.*, 830 N.Y.S.2d 87, 93 (App. Div. 2007) (dismissing negligence claim as redundant of breach of insurance policy claim); *accord Bob v. Scibal Assocs., Inc.*, 2014 U.S. Dist. LEXIS 120325, at *13–14 (S.D.N.Y. Feb. 10, 2014) (dismissing negligence claim against insurer that "essentially charge[d] defendant with a failure to perform its obligation under its insurance contract"); *Polidoro v. Chubb Corp.*, 354 F. Supp. 2d 349, 351–52 (S.D.N.Y. 2005) (same).

"In disentangling tort and contract claims," the court considers "the nature of the injury, the manner in which the injury occurred, and the resulting harm." *Sommer v. Fed. Signal Corp.*, 583 N.Y.S.2d 957, 961 (N.Y. 1992). Where the "plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory" only. *Id.* A

negligence claim should be dismissed where "the nature of Plaintiffs' injury and the resulting harm caused by the alleged breach of Defendants' tort duty are identical to the injury and harm caused by the alleged breach of contract." *Millennium Partners, L.P. v. U.S. Bank Nat'l Ass'n*, 2013 U.S. Dist. LEXIS 55729, at *13–14 (S.D.N.Y. Apr. 17, 2013).

Wiseman's negligence claims should be dismissed because she claims precisely the same injury for her negligence and contract claims and has merely charged RLNY with failing to perform under her Policy. The only injuries she claims to have suffered as a result of RLNY's alleged negligence are the same as those she claims to have suffered as a result of RLNY's alleged breach of contract—the "lapse of the Wiseman policy and Plaintiff's inability to exchange the policy upon demand." (FAC ¶ 210.) And the scattershot "duties" alleged in the FAC—duty to notify of a change in management that affected exchange rights, duty to protect value by ensuring all of the Policy terms could be exercised, two alleged duties relating to a merger in 1998 or 2008 that allegedly affected RLNY's ability to comply with policy terms, and a duty "to keep a copy of all in-force policies"—stem directly from RLNY's alleged failure to exchange her policy in accordance with its terms. (*See* FAC ¶ 206.) As Wiseman alleges no extra-contractual duties or damages, her negligence claims fail.

### 2. The "Lost Policy" Theory Is Implausible.

Wiseman's new theory that RLNY failed "to keep track of her legacy policy," "los[t] the physical policy document," and did not have "any direct information about its terms," (FAC ¶ 190), is contradicted by documents attached to the FAC; the Policy application referenced in the FAC and that RLNY attaches here, (Ex. 2); and the accepted insurance-industry practice that the insured (not the insurer) receives the original policy.

*First*, the timing of the claim and the inconsistency of the new allegations compared to the original allegations render Wiseman's "lost policy" conspiracy theory implausible.

Wiseman filed suit on the basis of the duplicate Policy, and attached it to her original

Complaint and the FAC. (ECF Nos. 1-1 & 29-1.) When confronted with RLNY's first

motion to dismiss demonstrating that the Policy language does not entitle Wiseman to what

she demanded pre-litigation or seeks to enforce in this case, Wiseman went back to the

drawing board to concoct her theory that the original Policy must have had an exchange

provision at least as favorable as the one in the duplicate Policy. (FAC ¶¶ 33–36, 49–53.) But

Wiseman identifies no *new* information she received that led to her to make her baseless new

allegations, and they should not be credited by the Court. *See Wallace v. N.Y.C. Dep't of Corrs.*,

1996 U.S. Dist. LEXIS 22368, at *4 (E.D.N.Y. Oct. 9, 1996) (accepting only allegations in

original complaint as true where the plaintiff "blatantly change[d] his statement of the facts

in order to respond to the defendant's motion to dismiss"); *Cf. Kant v. Columbia Univ.*, 2010

U.S. Dist. LEXIS 21900, at *20–21 (S.D.N.Y. Mar. 9, 2010) (collecting cases and denying

motion for leave to amend complaint to assert inconsistent allegations to overcome adverse

arguments in motion to dismiss). To be clear, there is no dispute about the Policy terms:

RLNY agrees that the duplicate Policy incorporated into the original Complaint and FAC,

and the exchange provision language specifically pled in both complaints, (¶¶ ECF No. 1

¶ 45; FAC ¶ 53), sets forth the accurate language of the Wiseman Policy. (*See* Defs.' Mot. to

Dismiss, ECF No. 20.)

    *Second*, the entire "basis for Plaintiff's belief"—that the duplicate policy RLNY

provided her "contains no illustrations," "no application," and "no signatures," (*id.* ¶ 34)—is

inapposite to her theory. Exhibit 2, which is referenced in the FAC and integral to the "lost

policy" theory, *see ACE Secs. Corp. Home Equity Loan Trust*, 5 F. Supp. 3d at 551, demonstrates

that RLNY does, in fact, possess a signed application with illustrations. (*See* Ex. 2.) As the

"information" that forms the basis for Wiseman's "belief" is directly contradicted by

documents attached to or referenced in the FAC, any claim based on the new theory that RLNY "lost" her policy should be dismissed.

*Third*, RLNY had no obligation to maintain the original policy—that was Wiseman's responsibility, and she admits that she lost it. (*See* FAC ¶ 19.). When a person purchases a policy, the insurance company delivers the original and keeps only a duplicate. If, as here, the insured loses the policy, she can request a duplicate. *Cf.* N.Y. Dep't of Fin. Servs., *Lost Policy Finder*, available at http://www.dfs.ny.gov/consumer/lost_policy_find.htm (suggesting that beneficiaries review the deceased's personal papers for an insurance policy). In accordance with this practice, RLNY's predecessor sent Wiseman her original Policy at the time of purchase, she lost it, she requested a duplicate, and RLNY sent her one. Wiseman cannot avoid the Policy terms by asserting without support that another contract with more favorable terms must exist; the "lost policy" claims should be dismissed.

### 3.    The Three-Year Statute of Limitations Has Run.

Setting aside that Wiseman has failed to state a plausible negligence claim, the allegations on which she bases her claim are time-barred by New York's three-year statute of limitations. C.P.L.R. § 214(4). The discovery rule does not apply. *Bryant v. Comm'r of Soc. Sec.*, 2015 U.S. Dist. LEXIS 151143, at *41–42 (S.D.N.Y. Aug. 17, 2015). Wiseman's alleged breaches are based on the Policy's acquisition by RLNY in 1998 and RLNY's acquisition by ING Groep in 2000, specifically, breach of (*i*) a "duty to notify" after a "substantial change in management," (*ii*) a "duty to protect the value of the policy by ensuring all its riders and provisions could be exercised," (*iii*) a "duty to conduct due diligence before taking responsibility for life insurance policies by purchasing companies," and (*iv*) a "duty to ensure that upon the purchase of a life insurance company that the successor company had knowledge of what policies were 'on the books.'" (FAC ¶¶ 38–39 & 188(a)–(d).)

Contrary to Wiseman's assertion, (FAC ¶¶ 107–112), equitable tolling does not save her claims. "Only extraordinary circumstances will necessitate an equitable tolling." *Gassiott v. Prudential Ins. Co. of Am.*, 2009 U.S. Dist. LEXIS 93136, at *16–18 (S.D.N.Y. Oct. 6, 2009). "A plaintiff seeking equitable tolling must demonstrate that he acted with 'reasonable diligence' during the period he wishes to have tolled, but despite his efforts, extraordinary circumstances 'beyond his control' prevented successful filing during that time." *Joseph H. v. Hogan*, 561 F. Supp. 2d 280, 316 (E.D.N.Y. 2008). She "must demonstrate that [she] was induced by fraud, misrepresentations, or deception to refrain from filing a timely action." *Certain Underwriters at Lloyd's v. Milberg LLP*, 2009 U.S. Dist. LEXIS 97284, at *8–9 (S.D.N.Y. Sept. 29, 2009) (rejecting equitable argument and dismissing claims under insurance contracts as time-barred).

There is no allegation that RLNY concealed its acquisition of Wiseman's Policy or took any other action to actively conceal, deceive, or prejudice Wiseman's ability to know the terms of her Policy or her ability to file this litigation. After all, Wiseman owned the Policy, was given the original, lost it at some point, but then obtained a duplicate in 2014. (FAC ¶ 50.) As soon as she inquired about an exchange, RLNY notified her of what was and was not available to her in keeping with the terms of the exchange provision. (*See id.* at ¶¶ 73–76.) Wiseman cannot demonstrate that she acted with reasonable diligence by waiting until her Policy was about to expire (when Olga approached age 95) before seeking to obtain a whole life policy, and cannot demonstrate that RLNY deceived her.

Wiseman's allegations also are not "continuing wrongs," (FAC ¶ 106), that can extend the statute of limitations; that doctrine "may only be predicated on continuing unlawful acts and not on the continuing effects of an earlier unlawful act." *Bryant*, 2015 U.S. Dist. LEXIS 151143, at *39–40. The doctrine is disfavored in the Second Circuit, and will

be applied only upon a showing of compelling circumstances." *Rao v. Med. Soc'y*, 1998 U.S. Dist. LEXIS 18050, at *11 (S.D.N.Y. Nov. 12, 1998); *accord Rivera v. City of New York*, 2000 U.S. Dist. LEXIS 2227, at *12 (S.D.N.Y. Feb. 23, 2000)("Courts have been reluctant to apply the continuing-violation doctrine outside the context of Title VII actions."). For the same reasons equitable tolling does not apply, there are no compelling circumstances weighing in favor of applying the continuing-wrong doctrine here. The allegations concerning the mergers all occurred in or around 2000. While Wiseman may believe the time-barred 1998 and 2000 mergers still affect her (e.g., RLNY's claimed failure to investigate Wiseman's Policy caused her harm in 2016), these duties (to the extent they existed) necessarily were breached (if at all) over 15 years ago and are time-barred. These claims should be dismissed.

**D.     The GBL § 349 Claim Fails Because It Is Duplicative of Wiseman's Contract Claim and Is Time-Barred.**

To state a claim under New York GBL § 349, a plaintiff must plausibly allege that the defendant engaged in conduct that (*i*) was consumer oriented; (*ii*) was deceptive or misleading in a material way; and (*iii*) caused the plaintiff injury. *Nials v. Bank of Am.*, 2014 U.S. Dist. LEXIS 77070, at *8 (S.D.N.Y. May 30, 2014) (Nathan, J.). The injury alleged must not be duplicative of a breach of contract claim. *Fleischer v. Phx. Life Ins. Co.*, 858 F. Supp. 2d 290, 304–06 (S.D.N.Y. 2012). The statute of limitations is three years, and it begins to run when the alleged deception occurred and the plaintiff was first injured—not "upon any date when discovery of the alleged deceptive practice is said to occur." *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 461–64 (S.D.N.Y. 2014). Wiseman's GBL § 349 claim should be dismissed because (*i*) it duplicates her contract claim, and (*ii*) it is time-barred.

**1.     Wiseman's GBL § 349 Claim Is Duplicative of Her Contract Claim.**

The GBL § 349 claim fails because it mirrors the contract claim. A GBL § 349

without unique injury is not actionable. *See Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). To satisfy the injury requirement, a monetary loss "must be independent of the loss caused by the alleged breach of contract." *Id.* "[T]wo claims predicated on the same conduct are likely to involve similar injury." *Fleischer*, 858 F. Supp. 2d at 304–06 (dismissing § 349 claim as "any loss alleged in connection with" the § 349 claim "cannot be unique . . . but rather must stem from the alleged breach of contract").

The allegations giving rise to the contract and GBL § 349 claims are substantively identical. She asserts a contract claim because Defendants failed to provide an option to exchange her Policy, failed to notify her that her Policy could not be exchanged, overcharged premiums based on the exchange option, and devalued her Policy on the secondary market based on the exchange option—all of which caused the Policy to lapse and Wiseman to lose her premiums paid. (FAC ¶¶ 131, 139, 148.) Likewise, in support of her GBL § 349 claim, Wiseman alleges that Defendants (*i*) "represented in their life insurance agreements" and "through their brokers" that "policies can be exchanged upon request"; (*ii*) failed "to provide an exchange of life insurance policies upon request"; and (*iii*) failed "to notify the policy owners that an exchange was unavailable." (*Id.* at ¶¶ 214–16.) Wiseman's GBL § 349 claim also relies upon the same alleged injury: lost premiums and secondary market value. With no unique allegations or damages, the GBL § 349 fails.

### 2. The Statute of Limitations Has Run.

Wiseman's GBL § 349 claim also is subject to a three-year statute of limitations. *Schandler v. N.Y. Life Ins. Co.*, 2011 U.S. Dist. LEXIS 46322, at *4 (S.D.N.Y. Apr. 26, 2011). The "discovery rule" does not apply to § 349 claims. *Marshall*, 51 F. Supp. at 461–64. Rather, "accrual occurs when [the] plaintiff first suffered injury." *Id.*; *see also Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 484 (E.D.N.Y. 2011) (holding GBL § 349 claim time-barred because

"accrual occurs when [p]laintiff first suffered injury" and "the allegedly faulty capacitors were present in the computers purchased at the time of delivery").

Here, the conduct Wiseman alleges was deceptive and misleading occurred, and the injuries Wiseman alleges flowed from that conduct were first suffered, over a decade prior to this suit. For instance, Wiseman alleges that she was deceived by Defendants' "life insurance agreements" and "brokers" that "policies can be exchanged upon request" when she purchased her Policy 25 years ago. (*See* FAC ¶ 214–15.) And one of Wiseman's alleged injuries—that she overpaid premiums—began 25 years ago in 1991. (*See id.* at ¶¶ 81.) Wiseman's other alleged injury—that the value of her Policy was "substantially lowered on the secondary market" because it "could not be exchanged," (*id.* at 82), likewise would have begun in 2000. (*Id.* at ¶¶ 39–40.) As the conduct giving rise to this claim occurred decades ago, and the injuries first occurred in 1991 and 2000, Wiseman's § 349 claim is time-barred.[5]

### E.    The Unjust Enrichment Claim Fails Because a Contract Controls.

"[W]hen a matter is controlled by contract, the plaintiff has no valid claim for unjust enrichment under New York law." *Marshall*, 51 F. Supp. 3d at 471; *see also Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005) (affirming dismissal of unjust enrichment claim where "the disputed terms and conditions fall entirely within the insurance contract"). Absent a "bona fine dispute whether a relevant contract exists or covers the dispute at issue," an unjust enrichment claim fails. *Marshall*, 51 F. Supp. 3d at 471.

Wiseman admits that she and RLNY are parties to a contract that governs this dispute; a copy of which was attached to the original Complaint, and is attached to the FAC. (FAC Counts 1–3; ECF No. 1-1; ECF No. 29-1). The contract contains specific provisions that resolve Wiseman's claims—it identifies the maturity date in October 2016,

---

[5] For the reasons articulated in Part I.C.3, above, the continuing violation and equitable tolling doctrines do not toll or extend the statute of limitations as to Wiseman's GBL § 349 claim.

(Policy at 5), states that coverage terminates at maturity, (*id.* at 10), offers an option for an exchange to a policy "that we issue at the time of exchange," (*id.* at 18), and states that the premium rate for a new policy is calculated "according to the rates in effect . . . at the time of exchange," (*id.*). As detailed above, Wiseman's new unfounded theory that RLNY "lost" her Policy and forged a duplicate is simply implausible. The Policy controls this dispute; Wiseman's implausible new theory is insufficient to state a claim for unjust enrichment.

### F.   The Declaratory Judgment Claim Should Be Dismissed Because a Declaration Would Serve No Useful Purpose.

In deciding whether to exercise its broad discretion to decline jurisdiction over a declaratory judgment action, a court considers five factors: (*i*) whether the judgment would serve a useful purpose in clarifying or settling the legal issues; (*ii*) whether a judgment would finalize the controversy and offer relief from uncertainty; (*iii*) whether the proposed declaration is being used merely for "procedural fencing"; (*iv*) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (*v*) whether there is better or more effective remedy. *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359–60 (2d Cir. 2003) (affirming dismissal of declaratory action).

Wiseman's declaratory judgment claim serves no useful purpose because the legal issues it raises necessarily will be decided in litigation concerning her damages claims. *Fossil Indus. v. Arjo Wiggins, USA, Inc.*, 2015 U.S. Dist. LEXIS 122024, at *40–43 (E.D.N.Y. Sept. 12, 2015) (dismissing declaratory judgment claim and collecting cases holding that "[w]here, as here, a plaintiff seeks declaratory relief that will be resolved by the litigation of its damage claims, courts have found a declaratory judgment to serve no 'useful purpose' and dismissed claims seeking such relief"). In both her damages and declaratory judgment

claims, Wiseman alleges a dispute over Defendants' obligation to provide her an exchange. (*E.g.*, FAC ¶ 131, 223.) To resolve that, the Court must decide whether a provision entitling an insured to exchange her Policy to one "that [it] issue[s] at the time of exchange," "according to the rates in effect for the age . . . of the Insured at the time of exchange," means that the policy owner is entitled to exchange to a policy with features the insurer does not offer: *e.g.*, a policy with a premium determined by a 25-year-old policy formula based on an insured life 25 years younger with no policy maturity date. With or without a declaration, the Court will decide the issue. As the a better remedy exists in the form of deciding the damages claims, the Court should decline to exercise jurisdiction and dismiss this claim.

> ### G.   The Intentional Infliction of Emotional Distress Claim Fails Because the Conduct Alleged in the FAC Is Not "Outrageous."

The elements of intentional infliction of emotional distress are (*i*) extreme and outrageous conduct, (*ii*) intent to cause severe emotional distress, (*iii*) severe emotional distress, and (*iv*) causation. *Wiener v. Unumprovident Corp.,* 202 F. Supp. 2d 116, 123 (S.D.N.Y. 2002). The allegations must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Seltzer v. Bayer*, 709 N.Y.S.2d 21, 23 (App. Div. 2000).

The outrageousness element is "all but impossible" to satisfy. *Gallo v. Alitalia – Linee Aeree Italiane – Societa Per Azioni*, 585 F. Supp. 2d 520, 554 (S.D.N.Y. 2008). Of the IIED claims considered by the New York Court of Appeals, "every one has failed because the conduct was not sufficiently outrageous." *Seltzer*, 709 N.Y.S.2d at 23. Courts applying New York law have dismissed claims where the plaintiff alleged the defendant: (*i*) dumped a pile of cement in front of the plaintiff's house, threw lit cigarettes into his backyard, threw eggs on his front steps, and threatened to paint offensive symbols on his house, *id.*; (*ii*) terminated

the plaintiff's disability benefits after calling the plaintiff's treating physicians in an attempt to influence their opinions, *MaGee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 587 (S.D.N.Y. 1997); and (*iii*) failed to timely compensate the plaintiff under an insurance policy after a home was destroyed by fire, leaving the plaintiff homeless and without possessions for over a year, and then accused the plaintiff of arson and lying under oath, *Cunningham v. Security Mutual Ins. Co.*, 689 N.Y.S.2d 290, 291 (App. Div. 1999). In other cases involving the terms of insurance policies, courts have rejected IIED claims as "true contract cases recast in tort." *Wiener*, 202 F. Supp. 2d at 122–23 (collecting cases).

Wiseman, too, has improperly recast a contract dispute as a tort claim. Her allegation that RLNY declined to exchange an expiring life insurance policy into a whole life policy that RLNY did not issue at no additional cost does not even involve improper—much less "outrageous"—conduct. (*See* Policy at 18.) The allegations fall far short of the "all but impossible" standard for outrageousness, and as a result the IIED claim fails.

## II.    All Claims against Voya Financial Should Be Dismissed.

Setting aside that the FAC states no claims against any defendant, Voya Financial is an improper party that Wiseman has named to expand a putative class to include policyholders outside of New York. Wiseman has pled no facts to hold RLNY's corporate parent liable for the acts of its subsidiary. *See SUS, Inc. v. St. Paul's Travelers Group*, 75 A.D.3d 740 (3d Dept. 2010) (affirming dismissal of insurer's parent companies where plaintiff failed to sufficiently allege facts to hold parents liable for policy issued by subsidiary). Moreover, Wiseman has no standing to sue Voya Financial because it is not a party to her contract.

### A.    RLNY's Corporate Parents Are Not Liable for RLNY's Acts.

"[L]iability is never imposed solely upon the fact that a parent owns a controlling interest in the shares of a subsidiary." *Degraziano v. Verizon Commc'ns, Inc.*, 325 F. Supp. 2d

238, 245–46 (E.D.N.Y. 2004). To pierce the corporate veil and hold a parent company liable for its subsidiary's acts, a plaintiff must show: (*i*) that the parent "exercised complete domination over the corporation with respect to the transaction at issue"; and (*ii*) "that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Id.*; *see also Horowitz v. Aetna Life Ins.*, 539 N.Y.S.2d 50, 53 (App. Div. 1989) ("A parent company is not liable for the torts of its subsidiary, even if it is a wholly owned subsidiary, unless it can be shown that the parent's control over the subsidiary disregards its corporate independence."); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 417–19 (S.D.N.Y. 2011) (dismissing claims against corporate parents where the plaintiff alleged no actionable conduct against the parent and alleged "dominion and control" in only conclusory terms). A plaintiff cannot "overcome the presumption of separateness afforded to related corporations" with "the bare allegation that one corporation dominated and controlled another." *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 194–96 (2d Cir. 2010).

In determining whether a parent company has exercised "complete domination," courts consider a number of factors, "including the intermingling of corporate and shareholder funds, undercapitalization of the corporation, failure to observe corporate formalities such as the maintenance of separate books and records, failure to pay dividends, insolvency at the time of a transaction, siphoning off of funds by the dominant shareholder, and the inactivity of other officers and directors." *Garcia v. Paris Maint.*, 2016 U.S. Dist. LEXIS 60111, at 14–15* (E.D.N.Y. May 4, 2016) (quoting *Kiobel*, 621 F.3d at 195).

The FAC acknowledges that RLNY and Voya Financial are separate entities, (FAC ¶¶ 7–14 (describing Voya Financial as a Delaware corporation and RLNY as a New York corporation)), but identifies no relevant factors to justify holding Voya Financial liable for RLNY's acts. After discounting unsupported and conclusory buzzwords like "alter ego" or

"shell company," the FAC merely alleges that RLNY and Voya Financial shared marketing materials, and, incorrectly, that "all correspondence with Plaintiff by Defendants were [*sic*] done in the name of and on behalf of "Voya Financial." (FAC ¶¶ 87 –93.) Co-branding and shared marketing efforts are insufficient to support the extraordinary step of disregarding corporate forms. *Nuevo Mundo Holdings v. PriceWaterhouseCoopers LLP*, 2004 U.S. Dist. LEXIS 780, at *6–23 (S.D.N.Y. Jan. 22, 2004) (rejecting argument that individual member firms of PwC-associated companies are a single entity for purposes of veil piercing by virtue of using a single brand name); *In re Lernout & Hauspie Secs. Litig. v. Lernout*, 230 F. Supp. 2d 152, 170 (D. Mass. 2002) (rejecting "single entity" theory of liability grounded in allegation that "KPMG Int'l markets itself and all of its member firms as a single entity."). And as demonstrated by the April 24, 2015 RLNY letter to Wiseman quoted in the FAC and attached hereto as Exhibit 3, all correspondence to Wiseman was *not* done "by and on behalf of" Voya; rather, correspondence was sent by RLNY, on RLNY letterhead, concerning an RLNY-administered policy. (Ex. 3.)

The two policy illustrations Wiseman attached to the FAC do not support her allegations that the separate subsidiaries that issued the illustrations "are in fact managed, administered, actuarially assessed, and that all decisions are made exclusively by Voya," or the illustrations "clearly use[] the same actuarial software." (FAC ¶¶ 89–90.) Instead, the two illustrations—one issued in New Jersey by Security Life of Denver Insurance Company, and one issued in New York by RLNY—helpfully demonstrate the unique offerings of subsidiary insurance companies within the Voya family of companies. (*See* ECF Nos. 29-2 & 29-3.) While the two policy illustrations feature the Voya branding, each specifies that it is "offered by" Security Life of Denver Insurance Company, in the case of the New Jersey illustration, or RLNY, in the case of the New York illustration, and each notes that the

offering company is "solely responsible for all obligations" under any policy issued. (ECF No. 29-2 at 3 & 10; ECF No. 29-3 at 8 & 32.) Moreover, Wiseman's use of the exact same inputs for the hypothetical insured—50-year-old male, no tobacco, $250,000 death benefit, etc., (ECF No. 29-2 at 6; ECF No. 29-3 at 22)—generated substantially different policy outcomes. For instance, as the chart below demonstrates, the illustrated surrender values differed significantly between the RLNY and Security Life policies, and the illustrated premiums diverge sharply over time:

| | 5 year surrender | 10 year surrender | Initial premium | 5 year premium | 10 year premium | Max annual premium |
|---|---|---|---|---|---|---|
| RLNY | $10,399 | $32,350 | $6,103.49 | $30,517.45 | $61,034.90 | $91,552.35 |
| Security Life | $1,499 | $4,827 | $4,754.44 | $23,772.20 | $47,544.40 | $71,316.60 |

(*See* ECF No. 29-2 at 6–8; ECF No. 29-3 at 22–26.)

Moreover, Wiseman does not allege that any purported domination defrauded or injured her, or that RLNY was merely a mechanism to achieve wrongdoing by Voya.[6] *Vantone Grp. LLC v. Yangpu NGT Indus. Co.*, 2015 U.S. Dist. LEXIS 86653, at *23–24 (S.D.N.Y. July 2, 2015) ("Where the challenged complaint lacks this causative element—i.e., the use of domination to cause the injury, it should result in the dismissal of the corporate veil-piercing allegation."). The only reason Wiseman sued three entities is to expand a putative class action beyond New York—not because Voya Financial abused RLNY's corporate form to commit wrongdoing. Voya Financial should be dismissed.[7]

### B.   Wiseman Has No Article III Standing to Sue Any Entity But RLNY.

Last, Wiseman has no standing to sue Voya Financial (or ING Groep) in her putative "Legacy Policy Class" because she does not have a Voya Financial (or ING Groep)

---

[6]   As a result, Wiseman fails to advance non-conclusory allegations that would support her request to take discovery on her alter-ego theory. (*See* FAC ¶ 86.)

[7]   The same argument requires dismissal of ING Groep, the *former* corporate parent of RLNY.

policy. A plaintiff, even a putative class action plaintiff, has no standing to sue defendants that have not injured her. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62–66 (2d Cir. 2012). "[T]he fact that this case is a putative class action does not affect the showing that Article III requires the named Plaintiffs themselves to make." *Guan N. v. N.Y.C. Dep't of Educ.*, 2014 U.S. Dist. LEXIS 44783, at *24–25 (S.D.N.Y. Mar. 24, 2014) (Nathan, J.)

Wiseman's attempt to bootstrap her claims based on her contract with one entity (RLNY) to include another (Voya Financial or ING Groep) that allegedly owns and administers policies elsewhere should be rejected. Voya Financial (or ING Groep) could not have caused Wiseman any injury-in-fact because *Voya Financial (or ING Groep) never owned or administered her Policy*. Thus, Wiseman lacks Article III standing to sue Voya Financial (or ING Groep) either individually or on behalf of her putative "Legacy Policy Class," and any claims against Voya Financial (or ING Groep) should be dismissed with prejudice.

## CONCLUSION

The Complaint should be dismissed in its entirety with prejudice.

Respectfully submitted,

Dated: January 17, 2017          _/s/  Michael T. Leigh_____
Louisville, Kentucky              Clark C. Johnson (*pro hac vice*)
                                  Michael T. Leigh
                                  Jeffrey S. Moad (*pro hac vice*)
                                  Stites & Harbison PLLC
                                  400 West Market Street, Suite 1800
                                  Louisville, KY   40202-3352
                                  Tel:    (502) 587-3400
                                  Email: cjohnson@stites.com
                                          mleigh@stites.com
                                          jmoad@stites.com

                                  Andrew D. O'Toole
                                  O'Toole + O'Toole PLLC
                                  22 Valley Road
                                  Katonah, NY  10536
                                  Tel:    (914) 232.1511
                                  Email: aotoole@otoolegroup.com

                                  *Counsel for Voya Financial, Inc. and*
                                  *ReliaStar Life Insurance Company of New York*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2017, I served the foregoing document on all counsel of record through CM/ECF, and on the following by email:

Baruch S. Gottesman, Esq.
Horowitz & Rubenstein LLC
baruchesq@yahoo.com
*Counsel for Plaintiff*

Aryeh Kaufman, Esq.
Law Office of Aryeh Kaufman
aryeh@akaufmanlegal.com
aryehkaufmanesq@gmail.com
*Counsel for Plaintiff*

  /s/  Michael T. Leigh
*Counsel for Voya Financial, Inc. and*
*ReliaStar Life Insurance Company of New York*