UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GLORIA D. WISEMAN,<br><br>　　　　PLAINTIFF,<br><br>V.<br><br>ING GROEP N.V., VOYA FINANCIAL, INC.,<br>AND RELIASTAR LIFE INSURANCE COMPANY<br>OF NEW YORK,<br><br>　　　　DEFENDANTS. | NO. 1:16-CV-07587 (AJN) |

**MEMORANDUM OF LAW IN SUPPORT OF ING GROEP N.V.'S MOTION TO DISMISS**

STITES & HARBISON PLLC
Clark C. Johnson (*pro hac vice*)
Michael T. Leigh
Jeffrey S. Moad (*pro hac vice*)
400 West Market St., Ste. 1800
Louisville, Kentucky 40202

O'TOOLE + O'TOOLE PLLC
Andrew D. O'Toole
22 Valley Road
Katonah, NY 10536

*Counsel for ING Groep N.V.*

## TABLE OF CONTENTS

Introduction ................................................................................................................. 1

Facts ............................................................................................................................. 2

Legal Standard ............................................................................................................. 4

Argument ...................................................................................................................... 5

I.    All Claims against ING Groep Should Be Dismissed. ............................................ 5

        A.    RLNY's Corporate Parents Are Not Liable for RLNY's Acts. ..................... 6

        B.    Wiseman Has No Article III Standing to Sue Any Entity But RLNY. ........... 9

II.    Wiseman's Seven Claims Fail as a Matter of Law. .................................................. 10

        A.    Wiseman Has No Claims Against ING Groep for the Same Reasons
             She Has No Claims Against RLNY and Voya Financial. ........................... 10

        B.    Wiseman's Claims Against ING Groep Fail Because the Chronology of
             Events Detailed in the FAC Demonstrates that ING Groep
             Cannot Be Liable for the Conduct or Injuries Alleged. ............................... 10

        C.    The Declaratory Judgment Claim Against ING Groep Fails. ..................... 13

Conclusion ................................................................................................................... 13

TABLE OF AUTHORITIES

## Cases

*Allmen v Stone & Co. Designs, Inc.*,
2016 N.Y. Misc. LEXIS 3354 (N.Y. Sup. Ct. 2016) ...................................................... 9

*Amer. Protein Corp. v. AB Volvo*,
844 F.2d 56 (2d Cir. 1988) ................................................................................................ 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................... 4

*Davison v. Ventrus Biosciences, Inc.*,
2014 U.S. Dist. LEXIS 63038 (S.D.N.Y. May 5, 2014) ............................................5, 12

*Degraziano v. Verizon Commc'ns, Inc.*,
325 F. Supp. 2d 238 (E.D.N.Y. 2004) ............................................................................... 6

*Freeman v. Complex Computing Co.*,
119 F.3d 1044 (2d Cir. 1997) ............................................................................................ 8

*Garcia v. Paris Maint.*,
2016 U.S. Dist. LEXIS 60111 (E.D.N.Y. May 4, 2016) .................................................. 6

*Georgia Malone & Co., Inc. v. Reider*,
19 N.Y.2d 511 (2012) ...................................................................................................... 12

*Guan N. v. N.Y.C. Dep't of Educ.*,
2014 U.S. Dist. LEXIS 44783 (S.D.N.Y. Mar. 24, 2014) ................................................ 9

*Horowitz v. Aetna Life Ins.*,
539 N.Y.S.2d 50 (2d Dep't 1989) ...................................................................................... 6

*In re Digital Music Antitrust Litig.*,
812 F. Supp. 2d 390 (S.D.N.Y. 2011) ............................................................................... 6

*In re Lernout & Hauspie Secs. Litig. v. Lernout*,
230 F. Supp. 2d 152 (D. Mass. 2002) ............................................................................... 7

*In re Ultrafem Inc. Sec. Litig.*,
91 F. Supp. 2d 678 (S.D.N.Y. 2000) ............................................................................... 12

*JFK Hotel Owner, LLC v. Hilton Hotels Corp.*,
986 N.Y.S.2d 866 (N.Y. Sup. Ct. 2014) ......................................................................... 12

*Johnson & Johnson Consumer Cos. v. Aini*,
2009 U.S. Dist. LEXIS 126035 (E.D.N.Y. Dec. 1, 2009), ............................................... 8

*Kiobel v. Royal Dutch Petroleum Co.*,
621 F.3d 111 (2d Cir. 2010) .............................................................................................. 6

TABLE OF AUTHORITIES

*Mahon v. Ticor Title Ins. Co.*,
   683 F.3d 59 (2d Cir. 2012) .......................................................................... 9

*Mariani v. Consolidated Edison Co.*,
   982 F. Supp. 267 (S.D.N.Y. 1997) ............................................................. 11

*Matana v. Merkin*,
   957 F. Supp. 2d 473 (S.D.N.Y. 2013) ....................................................... 11

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
   861 F. Supp. 2d 344 (S.D.N.Y. 2012) ......................................................... 9

*Nat'l Union Fire Ins. Co. v. Int'l Wire Group*,
   2003 U.S. Dist. LEXIS 9193 (S.D.N.Y. June 2, 2003) ............................... 13

*Nials v. Bank of Am.*,
   2014 U.S. Dist. LEXIS 77070 (S.D.N.Y. Mar. 3, 2014) ............................ 12

*Nuevo Mundo Holdings v. PriceWaterhouseCoopers LLP*,
   2004 U.S. Dist. LEXIS 780 (S.D.N.Y. Jan. 22, 2004) .................................. 7

*Rhodes v. Stewart*,
   488 U.S. 1 (1988) ....................................................................................... 13

*Rivera v. EMTC Med. Dep't*,
   2016 U.S. Dist. LEXIS 2195 (S.D.N.Y. Jan. 7, 2016) ................................. 4

*Schandler v. N.Y. Life Ins. Co.*,
   2011 U.S. Dist. LEXIS 46322 (S.D.N.Y. Apr. 26, 2011) ........................... 11

*SUS, Inc. v. St. Paul's Travelers Group*,
   75 A.D.3d 740 (3d Dept. 2010) .................................................................... 6

*Tavares v. N.Y. City Health & Hosp. Corp.*,
   2015 U.S. Dist. LEXIS 3815 (S.D.N.Y. Jan. 13, 2015) ........................ 4, 13

*TNS Holdings Inc. v. MKI Sec. Corp.*,
   92 N.Y.2d 335 (1998) ................................................................................... 8

*Vantone Grp. LLC v. Yangpu NGT Indus. Co.*,
   2015 U.S. Dist. LEXIS 86653 (S.D.N.Y. July 2, 2015) ............................... 7

**Miscellaneous Authorities**

ING Groep N.V. 2014 Annual Report (Form 20-F),
   page F-13 (Mar. 19, 2015) ........................................................................ 3, 4

*United States v. ING Bank N.V.*, Deferred Prosecution Agreement,
   1:12-cr-136 (D.D.C. ECF No. 1, filed June 11, 2012) .................................. 4

Voya Financial, Inc. 2014 Annual Report (Form 10-K),
   pages 7 & 400 (Feb. 27, 2015) ................................................................. 3, 4

### TABLE OF AUTHORITIES

**Statutes, Rules & Regulations**

Fed. R. Civ. P. 11 .................................................................................................. 4

Fed. R. Civ. P. 12 .................................................................................................. 4

N.Y. C.P.L.R. § 213(2) .......................................................................................... 11

N.Y. C.P.L.R. § 214(4) .......................................................................................... 11

N.Y. C.P.L.R. § 215(3) .......................................................................................... 11

## INTRODUCTION

This case concerns a life insurance policy that was owned and administered by ReliaStar Life Insurance Company of New York (RLNY). In her First Amended Complaint (FAC), Gloria Wiseman asserts that in early 2015 she sought to exchange the 25-year-old policy she owned on her 94-year-old mother (the Policy) as it was nearing maturity. Wiseman alleges she was unable to obtain the exchange she sought.[1] Voya Financial, Inc. and RLNY, in a separate motion to dismiss, maintain that the exchange Wiseman requested was one the Policy did not allow. (ECF Nos. 32–34.)[2] Though the FAC admits RLNY owned and administered the Policy, Wiseman asserts claims against RLNY; its grandparent company, Voya Financial; and RLNY's former indirect ultimate holding company, ING Groep N.V. (ING Groep), a Dutch company.

As the FAC admits, however, ING Groep has not been the sole stockholder of Voya Financial since 2013—long before Wiseman first sought to exchange her Policy. Indeed, the public record confirms that by March 2014—a year prior to Wiseman's request to RLNY for an exchange—ING Groep was not even a majority shareholder in Voya Financial.[3]

Wiseman's attempt to hold ING Groep liable simply for being RLNY's ultimate parent company over a number of years should be rejected. Wiseman advances no plausible factual allegations as to why the Court should disregard corporate forms as to RLNY's grandparent company, Voya Financial, and RLNY's *former* ultimate holding company.

---

[1]   ING Groep notes that in their Motion to Dismiss, Voya Financial and RLNY state that RLNY did in fact offer Wiseman a policy available for exchange, but that Wiseman declined that policy.

[2]   As detailed below, the claims against ING Groep fail for the same reasons outlined in RLNY and Voya Financial's motion to dismiss, and ING Groep adopts those arguments in full.

[3]   For precision, prior to Voya Financial's 2013 IPO that made it a stand-alone company, RLNY was a wholly owned subsidiary of ReliaStar Life Insurance Company, which in turn was a wholly owned subsidiary of Lion Connecticut Holdings, Inc., which in turn was a wholly owned subsidiary of ING U.S., Inc., which in turn was a wholly owned subsidiary of ING Insurance International B.V., which in turn was a wholly owned subsidiary of ING Groep.

Even if Wiseman could demonstrate a basis for the extraordinary step of piercing the corporate veil, her allegations are either (*i*) facially time-barred, as Wiseman alleges conduct by ING Groep only in and about 2000, or (*ii*) lack proximate cause as Wiseman's only concrete alleged injury began in 2015, long after ING Groep stopped being RLNY's ultimate holding company.

The FAC should be dismissed in its entirety as to ING Groep. Given that Plaintiff has amended her pleading once already and that the pleading defects are irremediable, ING Groep should be dismissed with prejudice.

## FACTS

At its core, the FAC asserts that all Defendants breached Wiseman's Policy when she requested that RLNY exchange her Policy for a new one with the features she demanded. Wiseman attempts to parlay that core complaint into an assortment of non-contract claims, again against all Defendants. In summary, Wiseman's factual allegations are that:

- In 1991, she purchased a $300,000, 25-year Flexible Premium Adjustable Life Insurance Policy from Lincoln Security Life Insurance Company to insure the life of her then-70-year-old mother, Olga. (FAC, ECF No. 29, at ¶ 29.)

- The Policy contained a provision stating that "You may exchange this Policy for a new Policy. Such exchange may be to any plan of whole life or endowment that we issue at the time of exchange . . . . Written notice for such exchange must be given to us 31 days in advance . . . . We will issue the new Policy in the same premium rate class as this Policy. We will calculate the premium for the new Policy according to the rates in effect for the age and premium rate class of the Insured at the time of exchange. All plans of insurance available for exchange are subject to plan requirements." (*Id.* at 18.)

- The Policy listed its Maturity Date, when coverage would cease (if not earlier), of October 23, 2016. (*Id.* at 5.)

- In December 2014, RLNY mailed Wiseman a copy of the Policy stamped "duplicate" that Wiseman alleges does not actually represent the actual terms of her Policy, and that RLNY "does not have a possession of the Wiseman Policy or any copy of the Wiseman Policy." (FAC ¶¶ 32–34.)

- In early 2015 Wiseman sought to exchange her Policy for a new one, seemingly per the exchange provision in the duplicate Policy she received from RLNY, but was denied the exchange she requested. (FAC ¶¶ 55–76.)

Wiseman's allegations specific to ING Groep—RLNY's and Voya Financial's indirect ultimate holding company— are divorced from any injury or actionable conduct:

- From on or about September 1, 2000, through October 29, 2013, ING Groep was the ultimate holding company of RLNY. (FAC ¶¶ 10, 39, 43, 73, 96, 144.)

- By virtue of its corporate ownership of RLNY's parent company (and, thus, RLNY), ING Groep represented to regulators that it would be "responsible" for administering RLNY policies, and that during the approximately 13 years it owned RLNY ING Groep administered Wiseman's and the putative class members' policies under ING branding. (FAC ¶¶ 10, 21, 40–43, 73, 144–147.)

- In 2013, ING Groep stopped being the sole owner of RLNY's parent company, Voya Financial. (*Id.* at ¶¶ 96–97.)

- After ING Groep sold its majority share of Voya Financial, some of the same executives and managers remained with Voya Financial, and Voya Financial and RLNY allegedly continued to use ING Groep policies and practices in administering Wiseman's and putative class members' policies. (*Id.* at ¶¶ 98, 100–01.)

- "[U]pon information and belief," ING Groep's divestment of Voya Financial "was sheer window-dressing necessitated by the passing of the Justice Against Sponsors of Terrorism Act . . . and the substantial liability accrued to ING Groep N.V. during the 2012–2016 Battle of Aleppo . . . and that no substantive change was made from ING Groep N.V.'s substantive role in the administration of the Wiseman Policy." (*Id.* at ¶ 99.)[4]

---

[4] ING Groep rejects that it had control over Voya Financial after its May 2013 IPO, as well as the allegations in the FAC that the divestiture was fictitious. (FAC ¶¶ 22, 43, 98–101.) Public-record SEC filings by ING Groep and Voya Financial demonstrate that the divestiture was genuine, and resulted in ING Groep relinquishing corporate control over Voya Financial upon its 2013 IPO, or, at the latest, in March 2014 when its indirect holdings dropped to 43% of Voya Financial's stock. *See* ING Groep N.V. 2014 Annual Report (Form 20-F), page F-13 (Mar. 19, 2015), https://www.sec.gov/Archives/edgar/data/1039765/000119312515097885/d882257d20f.htm; Voya Financial, Inc. 2014 Annual Report (Form 10-K), pages 7 & 400 (Feb. 27, 2015), https://www.sec.gov/Archives/edgar/data/1535929/000119312515069733/d877740d10k.htm. While Wiseman states her allegations are based on "information and belief," (*id.* at ¶ 99), there is no support for the allegations, not even the public-record events she cites in paragraph 99. The Justice Against Sponsors of Terrorism Act was introduced on September 16, 2015, passed by Congress on September 9, 2016, and became law on September 28, 2016—years after ING Groep's divestiture of Voya Financial. Congress.gov, All Actions: S-2040, https://web.archive.org/web/20170124044149/https://www.congress.gov/bill/114th-congress/senate-bill/2040/all-actions?overview=closed. The deferred prosecution agreement cited by Wiseman similarly lends no support for her allegation—it relates to a separate legal entity and

In reality, Voya Financial became a publicly traded company in May 2013.[5] At the latest, ING Groep lost its ability to control Voya Financial after March 2014 when ING Groep's ownership of stock in Voya Financial was reduced to 43%.[6]

Notwithstanding this backdrop, Wiseman asserts all of her seven claims against ING Groep, and all but the IIED claim on behalf of herself and two putative classes.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, the plaintiff must allege facts sufficient "to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition to the allegations in the FAC, the Court "may . . . look to public records . . . in deciding a motion to dismiss," *Rivera v. EMTC Med. Dep't*, 2016 U.S. Dist. LEXIS 2195, at *3 (S.D.N.Y. Jan. 7, 2016) (Nathan, J.). While the Court "generally may accept the complaint's factual allegations as true, it is permitted to reject the truthfulness of those allegations when they are contradicted by matters of which judicial notice may be taken, such as public records," including SEC filings. *Tavares v. N.Y. City Health & Hosp. Corp.*, 2015 U.S. Dist. LEXIS 3815, at *10 (S.D.N.Y. Jan. 13, 2015);

---

does not even concern the 2012–2016 Battle of Aleppo, but instead concerns events related to Cuba and Iran from the 1990s to 2007. *United States v. ING Bank N.V.*, Deferred Prosecution Agreement, 1:12-cr-136 (D.D.C. ECF No. 1, filed June 11, 2012). Wiseman's allegations lack any "evidentiary support" and are not "likely [to] have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). These spurious allegations, intended only to inflame the action, should be rejected.

[5]  *See* ING Groep N.V. 2014 Annual Report (Form 20-F), at page F-13; Voya Financial, Inc. 2014 Annual Report (Form 10-K), at pages 7 & 400. The Court "may . . . look to public records . . . in deciding a motion to dismiss." *Rivera v. EMTC Med. Dep't*, 2016 U.S. Dist. LEXIS 2195, at *3 (S.D.N.Y. Jan. 7, 2016) (Nathan, J.).

[6]  *See* ING Groep N.V. 2014 Annual Report (Form 20-F), page F-13 (Mar. 19, 2015) (disclosing that "In March 2014, ING Group sold a further 13.3% [of Voya Financial stock] to reduce ING Group's interest in Voya to approximately 43.2% resulting in ING Group losing control over Voya.").

*Davison v. Ventrus Biosciences, Inc.*, 2014 U.S. Dist. LEXIS 63038, at *10 (S.D.N.Y. May 5, 2014) (rejecting allegations contradicted by public SEC filings).

A<span style="font-variant:small-caps;">RGUMENT</span>

All claims against ING Groep should be dismissed. To begin, the FAC is devoid of any plausible allegations that could support piercing RLNY's corporate veil to reach its *former* ultimate holding company. This is particularly true where, as here, the only concrete allegations of wrongdoing by RLNY and concrete injury suffered by Wiseman occurred long after ING Groep sold its majority stake in RLNY's parent company. That disconnect between the time when ING Groep was affiliated with Voya Financial and RLNY, and the only time Wiseman has alleged any concrete wrongdoing or injury, is fatal to any claim against ING Groep. Moreover, Wiseman lacks standing to sue ING Groep as it never owned or administered her Policy.

In addition, each of Wiseman's causes of action fail to state a claim against ING Groep. First, all of the claims fail for the reasons articulated in RLNY and Voya Financial's motion. (ECFR Nos. 32–34.) Second, the timeline alleged in the FAC renders implausible any claim against ING Groep. All of the allegations of any purported conduct by ING Groep date to approximately 2000 when ING Groep's subsidiary purchased RLNY, and thus are facially time-barred. Wiseman does not allege that ING Groep did anything wrongful or that Wiseman suffered any harm within the statute of limitations. The only wrongdoing and injury Wiseman alleges occurred in 2015, long *after* ING Groep severed ties with Voya Financial and RLNY.

## I.    All Claims against ING Groep Should Be Dismissed.

Setting aside that the FAC states no claims against any defendant, ING Groep is an improper party that Wiseman has named in an effort to expand a putative class to include

policyholders outside of New York. The FAC contains no facts to hold RLNY's *former* indirect ultimate holding company liable for the acts of RLNY. *See SUS, Inc. v. St. Paul's Travelers Group*, 75 A.D.3d 740 (3d Dept. 2010) (affirming dismissal of insurer's parent companies where plaintiff failed to sufficiently allege facts to hold them liable for policy issued by subsidiary). Moreover, Wiseman has no standing to sue ING Groep because it is not a party to her Policy.

### A.    RLNY's Corporate Parents Are Not Liable for RLNY's Acts.

"[L]iability is never imposed solely upon the fact that a parent owns a controlling interest in the shares of a subsidiary." *Degraziano v. Verizon Commc'ns, Inc.*, 325 F. Supp. 2d 238, 245–46 (E.D.N.Y. 2004). To pierce the corporate veil and hold a parent company liable for its subsidiary's acts, a plaintiff must show: (*i*) that the parent "exercised complete domination over the corporation with respect to the transaction at issue"; and (*ii*) "that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Id.*; *see also Horowitz v. Aetna Life Ins.*, 539 N.Y.S.2d 50, 53 (2d Dep't 1989) ("A parent company is not liable for the torts of its subsidiary, even if it is a wholly owned subsidiary, unless it can be shown that the parent's control over the subsidiary disregards its corporate independence."); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 417–19 (S.D.N.Y. 2011) (dismissing claims against corporate parents where the plaintiff alleged no actionable conduct against the parent and alleged "dominion and control" in only conclusory terms). A plaintiff cannot "overcome the presumption of separateness afforded to related corporations" with "the bare allegation that one corporation dominated and controlled another." *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 194–96 (2d Cir. 2010); *Garcia v. Paris Maint.*, 2016 U.S. Dist. LEXIS 60111, at *14–15 (E.D.N.Y. May 4, 2016).

The FAC acknowledges that RLNY, Voya Financial, and ING Groep are separate legal entities, (FAC ¶¶ 4–14 (describing ING Groep as a Dutch corporation, Voya Financial as a Delaware corporation, and RLNY as a New York corporation)), but identifies no relevant factors to justify holding ING Groep liable for RLNY's acts. After discounting unsupported and conclusory buzzwords like "alter ego" or "shell company," the only allegation made in support of veil-piercing is that prior to Voya Financial's initial public offering, RLNY "marketed itself exclusively under the ING brand, using the ING orange lion logo, and held itself out as acting at all times at the direction of ING." (FAC ¶ 42.) But co-branding and shared marketing efforts are insufficient to support the extraordinary step of disregarding corporate forms. *Nuevo Mundo Holdings v. PriceWaterhouseCoopers LLP*, 2004 U.S. Dist. LEXIS 780, at \*6–23 (S.D.N.Y. Jan. 22, 2004) (rejecting argument that individual member firms of PwC-associated companies are a single entity for purposes of veil piercing by virtue of using a single brand name); *In re Lernout & Hauspie Secs. Litig. v. Lernout*, 230 F. Supp. 2d 152, 170 (D. Mass. 2002) (rejecting "single entity" theory of liability grounded in allegation that "KPMG Int'l markets itself and all of its member firms as a single entity").

Moreover, Wiseman does not—and cannot—allege that any purported domination by ING Groep defrauded or injured her, or that RLNY was merely a mechanism to achieve wrongdoing by ING Groep. *Vantone Grp. LLC v. Yangpu NGT Indus. Co.*, 2015 U.S. Dist. LEXIS 86653, at \*23–24 (S.D.N.Y. July 2, 2015) ("Where the challenged complaint lacks this causative element—i.e., the use of domination to cause the injury, it should result in the dismissal of the corporate veil-piercing allegation."). To the contrary, the allegations in the FAC are that ING Groep's sole ownership of RLNY's parent company *ended* in 2013, and public-record documents confirm that fact (and establish that it in fact ended months earlier than Plaintiff alleges). Wiseman "bear[s] a heavy burden of showing that [RLNY] was

- 7 -

dominated *as to the transaction attacked*," *TNS Holdings Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339 (1998) (emphasis added). She fails in that burden. Her conclusory allegations of domination by ING Groep are temporally disconnected to the only time period in which Wiseman alleges RLNY committed wrongdoing and she suffered any injury: 2015 onward when she unsuccessfully demanded to exchange her Policy for a new one. By then, ING Groep was no longer RLNY's sole corporate owner, and RLNY was instead an indirect subsidiary of a public company, Voya Financial. Wiseman thus cannot show that any conduct or domination by ING Groep *proximately caused* her injury, and her claims against ING Groep fail. *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997) (domination and control must proximately cause alleged injury); *Johnson & Johnson Consumer Cos. v. Aini*, 2009 U.S. Dist. LEXIS 126035, at *26–28 (E.D.N.Y. Dec. 1, 2009), *adopted by* 2010 U.S. Dist. LEXIS 25006, (E.D.N.Y. Mar. 17, 2010) (party seeking to pierce the corporate veil must demonstrate "a nexus between the failure to maintain separate corporate formalities and the wrong suffered by the plaintiff.").

Wiseman's allegations that certain Voya Financial executives and managers remained with Voya Financial after it became a publicly owned company, and that Voya Financial continued after its IPO to administer Wiseman's and others' insurance policies according to the pre-IPO policies, practices, and actuarial models, are inadequate to withstand dismissal. (FAC ¶¶ 98, 100–01.) Even when companies actually share a *present* corporate relationship, the existence of overlapping senior managers and directors is insufficient to disregard a corporate form. *Amer. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988). Similarly, Wiseman's baseless claim that RLNY administered its policies using the same practices that were in place when ING Groep owned Voya Financial is irrelevant to the analysis—even if true, one admittedly distinct corporation (RLNY) had the discretion to make such a

business judgment during and after the time it was indirectly affiliated with another entity (ING Groep). *See, e.g.*, *Allmen v Stone & Co. Designs, Inc.*, 2016 N.Y. Misc. LEXIS 3354, 5–8 (N.Y. Sup. Ct. 2016) (rejecting alter ego allegations as pure speculation); *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 376–77 (S.D.N.Y. 2012) (rejecting piercing allegations where they failed to address any veil piercing elements).

Wiseman seeks to include ING Groep in this action only in search of another deep pocket or to harass ING Groep through specious and unfounded statements in the FAC—not because under any set of facts ING Groep is liable under New York law for the alleged wrongdoing of its *former* subsidiary's subsidiary well after ING Groep divested itself of ownership of RLNY. All of Wiseman's claims against ING Groep should be dismissed.

### B.    Wiseman Has No Article III Standing to Sue Any Entity But RLNY.

Wiseman also has no standing to sue ING Groep in her putative "Legacy Policy Class" because she does not have an ING Groep policy. A plaintiff, even a putative class action plaintiff, has no standing to sue defendants that have not injured her. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62–66 (2d Cir. 2012). "[T]he fact that this case is a putative class action does not affect the showing that Article III requires the named Plaintiffs themselves to make." *Guan N. v. N.Y.C. Dep't of Educ.*, 2014 U.S. Dist. LEXIS 44783, at *24–25 (S.D.N.Y. Mar. 24, 2014) (Nathan, J.).

Wiseman's attempt to bootstrap her claims based on her contract with one entity (RLNY) to include another (ING Groep) that allegedly owns and administers policies elsewhere in the world should be rejected. ING Groep could not have caused Wiseman any injury-in-fact because it *never owned or administered her Policy*. Thus, Wiseman lacks Article III standing to sue ING Groep either individually or on behalf of her putative "Legacy Policy Class," and any claims against ING Groep should be dismissed with prejudice.

II.     **Wiseman's Seven Claims Fail as a Matter of Law.**

Setting aside that ING Groep cannot be liable as a former indirect ultimate holding company to RLNY, Wiseman has not stated any plausible claim against ING Groep. *First*, the claims fail for the reasons outlined in Voya Financial and RLNY's motion. (ECF Nos. 32–34.) *Second*, the claims fail because ING Groep cannot be liable under the timeline of events alleged in the FAC.

   A.     **Wiseman Has No Claims Against ING Groep for the Same Reasons She Has No Claims Against RLNY and Voya Financial.**

The claims against ING Groep should be dismissed for the reasons outlined in Voya Financial and RLNY's motion, which ING Groep incorporates and adopts in full. Moreover, as ING Groep is not a party to Wiseman's Policy (or any putative class member's policy), it lacks any relationship to the Policy other than its prior, attenuated corporate relationship with RLNY. The prior parent-subsidiary relationship between ING Groep and Voya Financial and RLNY ended long before 2015 when Wiseman allegedly sought to exchange her Policy. As a result, the arguments in Voya Financial and RLNY's motion apply with even greater force to ING Groep, and ING Groep adopts them in full.

   B.     **Wiseman's Claims Against ING Groep Fail Because the Chronology of Events Detailed in the FAC Demonstrates that ING Groep Cannot Be Liable for the Conduct or Injuries Alleged.**

The timeline of allegations in the FAC demonstrates that all claims fail as to ING Groep because (*i*) the only allegations of conduct by ING Groep are plainly time-barred, and (*ii*) the only alleged wrongdoing and injury is alleged to have occurred in 2015, well after ING Groep ended its corporate affiliation with Voya Financial and RLNY.

*First*, as Wiseman filed suit on September 29, 2016, the following statutes of limitations periods apply to her claims:

- The limitations period for Wiseman's breach of contract, implied covenant, and unjust enrichment claims is six years—barring allegations prior to September 26, 2010. N.Y. C.P.L.R. § 213(2); *Matana v. Merkin*, 957 F. Supp. 2d 473, 494 (S.D.N.Y. 2013) (unjust enrichment claim seeking equitable remedy of disgorgement subject to six-year limitations period).

- The limitations period for Wiseman's negligence and GBL § 349 claims is three years—barring allegations prior to September 26, 2013. N.Y. C.P.L.R. § 214(4); *Schandler v. N.Y. Life Ins. Co.*, 2011 U.S. Dist. LEXIS 46322, at *4 (S.D.N.Y. Apr. 26, 2011).

- The limitations period for Wiseman's IIED claim is one year—barring allegations prior to September 26, 2015. N.Y. C.P.L.R. § 215(3); *Mariani v. Consolidated Edison Co.*, 982 F. Supp. 267, 273 (S.D.N.Y. 1997).

All of Wiseman's claims are time-barred as to ING Groep because the only allegations of conduct by ING Groep is alleged to have occurred in and around 2000—well before the *earliest* of the statute of limitations periods ends. Wiseman alleges that ING Groep was the corporate parent of a company that purchased RLNY in September 2000, made representations to New York regulators at that time, breached a so-called duty to notify policy-holders of a "substantial" change in management at that time, and committed other alleged wrongdoing. (*See, e.g.*, FAC ¶¶ 38–39, 188, 197 & 205.) Wiseman's 16-year-old allegations are time-barred.[7]

*Second*, the remainder of the FAC fails to state a claim against ING Groep because Wiseman fails to allege any non-time-barred conduct by ING Groep, and the only wrongdoing and injury Wiseman alleges occurred well after ING Groep became entirely unaffiliated with Voya Financial and RLNY.

Due to the statutes of limitations and ING Groep's losing a majority stake in Voya Financial in March 2014, only a short period of time within the limitations period overlaps with ING Groep's ownership of Voya Financial: for the contract, implied covenant, and

---

[7] ING Groep agrees with and adopts the arguments advanced by Voya Financial and RLNY as to why the continuing violation and equitable tolling doctrines do not toll or extend the statute of limitations as to Wiseman's claims.

unjust enrichment claims, September 26, 2010 to March 2014; and for the negligence and GBL § 349 claims, September 26, 2013, to March 2014. There is no such period of overlap for Wiseman's IIED claim.

The FAC contains no concrete alleged conduct by ING Groep of injury suffered during these brief periods of overlap. As a result, Wiseman cannot demonstrate that ING Groep breached her contract resulting in damages to her (a contract, of course, to which ING Groep was not party), violated any implied contractual covenant, violated a duty that caused her any injury, undertook any deceptive act that caused her injury, or possessed a sufficiently close relationship to Wiseman to support an unjust enrichment claim. *See JFK Hotel Owner, LLC v. Hilton Hotels Corp.*, 986 N.Y.S.2d 866, 866 (N.Y. Sup. Ct. 2014) (contract claim requires "resulting damages" from a defendant's breach); *In re Ultrafem Inc. Sec. Litig.*, 91 F. Supp. 2d 678, 691 (S.D.N.Y. 2000) (noting plaintiffs had failed to specify the basis for negligence claim, including "damage resulting proximately from the breach"); *Georgia Malone & Co., Inc. v. Reider*, 19 N.Y.2d 511 (2012) (affirming dismissal of unjust enrichment claim for lack of sufficient connection); *Nials v. Bank of Am.*, 2014 U.S. Dist. LEXIS 77070, at *8 (S.D.N.Y. Mar. 3, 2014) (GBL § 349 claim requires plausible allegations of a deceptive act that cause plaintiff's injury).

In the only time period in which Wiseman alleges any concrete, non-speculative wrongdoing by RLNY and injury—2015 forward—ING Groep had ceased any corporate affiliation with Voya Financial and RLNY. Wiseman cannot show that ING Groep did *anything* wrongful or caused *any* harm after Voya Financial's IPO. As Wiseman acknowledges, (FAC ¶ 96), and SEC filings confirm, ING Groep's divestment commenced in 2013, and by March 2014, ING Groep no longer owned a majority of Voya Financial; the FAC's allegations of conduct by "Defendants" in every count is simply implausible in

light of the FAC's other allegations and the public record. (*See* FAC Counts 1–13 (asserting every claim and allegation within each claim against all "Defendants").) *Tavares*, 2015 U.S. Dist. LEXIS 3815 at *10 (court need not accept as true allegations contradicted by other allegations and public records); *Davison*, 2014 U.S. Dist. LEXIS 63038 at *10 (rejecting allegations contradicted by SEC filings). Wiseman's claims fail as to ING Groep.

### C.   The Declaratory Judgment Claim Against ING Groep Fails.

Last, Wiseman's declaratory judgment claim against ING Groep must be dismissed because "declaratory relief is intended to operate prospectively. There is no basis for declaratory relief where only past acts are involved." *Nat'l Union Fire Ins. Co. v. Int'l Wire Group*, 2003 U.S. Dist. LEXIS 9193, *15 (S.D.N.Y. June 2, 2003) (dismissing declaratory judgment claim); *accord Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) ("The real value of the judicial pronouncement - what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion – is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff.*") (emphasis in original). As ING Groep indisputably has divested its indirect ownership interest in Voya Financial and RLNY, and no longer has any even indirect corporate relationship to Voya Financial, RLNY, Wiseman's Policy, or the putative class members' policies, any prospective declaratory relief Wiseman might obtain necessarily will serve no useful purpose as to ING Groep. The declaratory judgment claim should be dismissed.

### CONCLUSION

The public record defeats any alter ego claim. The claims against ING Groep are time barred. The factual allegations in the FAC establish that Plaintiff has no claim against ING Groep. The FAC should be dismissed in its entirety with prejudice.

Respectfully submitted,

Dated: January 27, 2017
Louisville, Kentucky

_/s/ Michael T. Leigh_
Clark C. Johnson (*pro hac vice*)
Michael T. Leigh
Jeffrey S. Moad (*pro hac vice*)
Stites & Harbison PLLC
400 West Market Street, Suite 1800
Louisville, KY  40202-3352
Tel:     (502) 587-3400
Email: cjohnson@stites.com
           mleigh@stites.com
           jmoad@stites.com

Andrew D. O'Toole
O'Toole + O'Toole PLLC
22 Valley Road
Katonah, NY 10536
Tel:     (914) 232.1511
Email: aotoole@otoolegroup.com

*Counsel for ING Groep N.V.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2017, I served the foregoing document on all counsel of record through CM/ECF, and on the following by email:

Baruch S. Gottesman, Esq.
Horowitz & Rubenstein LLC
baruchesq@yahoo.com
*Counsel for Plaintiff*

Aryeh Kaufman, Esq.
Law Office of Aryeh Kaufman
aryeh@akaufmanlegal.com
aryehkaufmanesq@gmail.com
*Counsel for Plaintiff*

                                        */s/ Michael T. Leigh*
                                        *Counsel for ING Groep N.V.*