**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                    |

**GLORIA D. WISEMAN**          |     Civil Action No. <u>1:16-CV-07587</u>
                    |

       Plaintiff,      |

       *~ against ~*      |

**ING GROEP, N.V., VOYA FINANCIAL; and**  |
**RELIASTAR LIFE INSURANCE COMPANY**  |
**OF NEW YORK;**                |

       Defendants     |

-------------------------------------------------------------x

 

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS VOYA FINANCIAL, INC. AND**
**RELIASTAR LIFE INSURANCE COMPANY OF NEW YORK'S**
<u>**MOTION TO DISMISS**</u>

 

Baruch S. Gottesman, Esq.
**HOROWITZ AND RUBENSTEIN LLC**
c/o 185-12 Union Turnpike
Fresh Meadows, NY 11366
*Attorney for Plaintiff*

Dated: Fresh Meadows, NY
       February 6, 2017

**TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i – iii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 – 2

A.    Legal Standard for Motion to Dismiss
      and for Consideration of Matters Extrinsic to the Complaint . . . . . . . . . . . . . . . . . 2 – 4

B.    The Complaint States a Valid Claim for Breach of Contract . . . . . . . . . . . . . . . . 4 – 12

      1.    Breach of Contract under New York law . . . . . . . . . 4 – 6

      2.    Plaintiff Adequately Performed
            under the Insurance Contract . . . . . . . . . . . . . . . . . . . . 6 – 8

      3.    Defendants Breached the Contract . . . . . . . . . . . . . . 8 – 11

      4.    The Contract Required
            Continuing Coverage of the Exchange Option . . . . 11 – 12

C.    The Complaint States a Valid Claim for
      Breach of Covenant of Good Faith and Fair Dealing . . . . . . . . . . . . . . . . . . 12 – 14

D.    Claims Against Voya Financial Should Be Upheld . . . . . . . . . . . . . . . . . . . . . 15 – 22

      1.    Claims Against Voya Financial Should Be Upheld
            Because Voya Financial, Inc. has
            Direct Liability Under the Contract . . . . . . . . . . . . . . . . . . 15 – 18

      2.    Claims Against Voya Financial Should Be Upheld Because
            Voya Financial, Inc. Is Estopped From Claiming
            That It Is Not Liable Under the Policy . . . . . . . . . . . . . . 19 – 20

      3.    Claims Against Voya Financial Should be Upheld Because
            Voya Financial, Inc. has Directly Intervened in ReliaStar
            to Such an Extent that the Subsidiary's Paraphernalia
            of Incorporation, Directors and Officers
            are Completely Ignored . . . . . . . . . . . . . . . . . . . . . . . . . . 21 – 22

E.    Additional Causes of Action Should be Upheld . . . . . . . . . . . . . . . . . . . . . . . . . 22 – 24

      1.    The Intentional Infliction of Emotional Distress Claim
            Should be Upheld. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      2.    Unjust Enrichment Claim should be Upheld. . . . . . . . . . . . . . 23

      3.    Declaratory Judgment claim should be Upheld . . . . . . . . . . . . 23

      4.    GBL § 349 Claim should be Upheld . . . . . . . . . . . . . . . . 23 – 24

      5.    Negligence Claim should be Upheld . . . . . . . . . . . . . . . . . 24

      6.    Statute of Limitations has not Run . . . . . . . . . . . . . . . . 24

      F.    Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22 – 24

i

TABLE OF AUTHORITIES

*Cases*

*A. W. Fiur Co., Inc. v. Ataka & Co., Ltd.*, 71 A.D.2d 370, 374 (1st Dep't 1979) ............................18

*AG Capital Funding, L.P. v. State St. Bank & Trust Co.*, 5 N.Y.3d 582, 591 (2005)......................24

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................................. 3

*ATSI Commc'n Inc. v. Shaar Fund Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ................................................ 3

*Bell Atlantic v. Twombly*, 550 U.S. 544................................................................................................ 3

*Berkey v. Third Ave. Railway Co.*, 244 N.Y.84, 85 (1926)..........................................................25

*BWA Corp. v. Alltrans Express U.S.A.*, 493 N.Y.S.2d 1, 4 (1st Dep't 1985) ...................................22

*Carvel Corp. v. Diversified Mgmt. Group, Inc.*, 930 F.2d 228, 230 (2d Cir. 1991) .......................14

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)................................................ 4

*CMG Holdings Group v. Wagner*, 2015 U.S. Dist. LEXIS 121135 (S.D.N.Y. Sept. 7, 2016)......10

*Diesel Props S.r.l. v. Greystone Bus. Credit II L.L.C.*, 631 F.3d 42, 54 (2d Cir. 2011)...................27

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) ..................................................... 4

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004)....................................................................................................................................6, 13

*Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 462 (2004)........................................................14

*Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000).............................................................. 5

*Gaunt v. John Hancock Mutual Life Ins. Co.*, 60 F.2d 599, 602 (2d Cir. 1947), *cert. denied*, 331 U.S. 849 (1947)..................................................................................................................6, 10

*Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561 (2005...............................................................27

*Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) ..................................16

ii

*Harsco Corp. v. Segui,*
   91 F.3d 337, 348 (2d Cir. 1996) .......................................................................... 5

*K. Bell & Assoc., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 639 (2d Cir. 1996) ............................ 7

*Kirke La Shelle Co. v. Armstrong Co.*, 74 N.Y.2d 562 (N.Y. 1933) ..................... 16

*Leghorn v. Wells Fargo Bank, N.A.*, 950 F.Supp.2d 1093 (N.D.Cal. 2013) ........................................ 16

*Maniolos v. U.S.*, 741 F.Supp.2d 555, 566 (2d Cir. 2010) ................................................ 6

*Marshall v. Hyundai Motor America*, 51 F.Supp.3d 451, 471 (S.D.N.Y. 2014) ................................... 26

*Nektalov v. Kuwait Airways Corp.*, No. 15-cv-0033, (E.D.N.Y. Sept. 30, 2016) ............................ 25

*Orange County Choppers v. Olaes Enterprises*, 497 F.Supp.2d 541, 560 (S.D.N.Y. 2007) .......... 15

*Pani v. Empire Blue Cross Blue Shield,*
   152 F.3d 67, 71 (2d Cir. 1998) ............................................................................ 4

*Polley v. Fed. Reserve Bank of N.Y.*, 1994 WL 465923 (S.D.N.Y. 1994) .......................................... 26

*Prince v. ITT Life Ins. Corp.*, 453 N.Y.S.2d 495 (4th Dep't 1982) ........................................ 7

*River Seafoods, Inc. v. JP Morgan Chase Bank*, 796 N.Y.S.2d 71, 73 (1st Dep't 2005) ................. 22

*Russo-Lubrano v. Brooklyn Fed. Savs. Bank*, 2007 WL 121431, (E.D.N.Y. Jan. 12, 2007) ......... 25

*Spagnola v. Chubb Corp.*, 574 F.3d 64 (2d Cir. 2009) ...................................................... 27

*Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014)................................................... 3

*Stone Ridge Country Properties Corp. v. Mohonk Oil Co., Inc.* 923 N.Y.S.2d 282, 283 (3d Dep't 2011)......................................................................................................24

*Stroemann v. Mutual Life Ins. Co.*, 300 U.S. 435 (1937) ..................................................... 7

*SUS, Inc. v. St. Paul Travelers Group*, 905 N.Y.S.3d 321 (3d Dep't 2010) ................................. 20, 24

*Tetelbaum v. Traveler's Companies, Inc.*, Index #12-21101, 2013 N.Y. Slip. Op. 32961 at *4
   (S.Ct. Suffolk Co. Aug. 22, 2013) (Mayer, Justice Peter H.) (U)........................................19

*Thomas v. Mutual Benefit Acc. Ass'n*, 123 F.Supp. 167, 169 (S.D.N.Y. 1954)...................................7

iii

*U.S. Naval Inst. v. Charter Communications*, 875 F.2d 1044, 1048 (2d Cir. 1989) ................... 6, 13

*Viti v. Guardian Life Ins. Co. of America*,
   817 F.Supp.2d 214, 223 (S.D.N.Y 2011)................................................................. 4

*Voss v. Bank of America, NA*, No. 2016 U.S. Dist. LEXIS 88424 (N.D.N.Y. 2016)............... 15, 16

*Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)............................................................. 3

*Zaffino v. Surles*, 1995 WL 146207 (S.D.N.Y. 1995) ............................................................26

**Rules**

Fed.R.Civ.P. 12(b)(6) ........................................................................................*passim*

Federal Rule of Civil Procedure 8(a)(2) ....................................................................... 5

**Statutes**

*New York Business Corporations Law*
   § 1312(b)...............................................................................................................20

*New York Insurance Law* § 2403 ...............................................................................12

New York Insurance Law § 3211 ...............................................................................14

## PRELIMINARY STATEMENT

The First Amended Complaint alleged as follows:

In 1991, the Plaintiff, Ms. Gloria Wiseman, purchased a life insurance policy on her mother from Lincoln Security Life Insurance Company.  Unbeknownst to her or any legacy policy holders like her, Ms. Wiseman's life insurance policy traded hands behind the scenes several times at the whim of the market.  Most recently, the Policy was owned and directly administered by ING Groep, N.V., Voya Financial, Inc., and ReliaStar Life Insurance Company of New York, who are the Defendants in this action.

The life insurance policy allowed Ms. Wiseman to exchange her Policy at any time. In 2015, Ms. Wiseman diligently exercised her right to exchange the Policy by providing notice more than thirty-one days before the policy terminated.  After a quarter century during which Ms. Wiseman strictly kept her side of the bargain (including the payment of all policy premiums on time), the policy administrator, Voya Financial, Inc., refused to honor their obligation to exchange the Policy.

Ms. Wiseman has since learned that in 2000, when ING Groep, N.V., took ownership of her Policy, the Defendants were no longer able to honor her exchange request.  She further learned that during the backroom corporate activities, the Defendants negligently lost track of her policy and the Defendants' obligations to her and those of all legacy policy owners.

The deals between ReliaStar, ING and Voya failed to take into account their customer, Ms. Wiseman, whose reliance on the Policy and prerogatives under its terms were ignored.

And Ms. Wiseman was not alone.  All legacy policy owners were abandoned.  Their Policies were not maintained and their right to an exchange upon demand were not and could not be exercised.  This lawsuit seeks to put Ms. Wiseman and the legacy policy owners in the

1

position they would have been in, had the Defendants honored their obligations.

Defendants ReliaStar Life Insurance Company of New York and Voya Financial, Inc. moved to dismiss the First Amended Complaint pursuant to Rule 12(b)(6).  ECF ## 32, 33. (hereinafter "Voya's Motion to Dismiss").

Separately ING Groep, N.V. moved to dismiss arguing that they are not responsible for what happened to Ms. Wiseman's policy and that the statute of limitations has run. ECF #40.

<u>This Memorandum of Law opposes Voya's Motion to Dismiss.</u>

Voya's Motion to Dismiss admitted that while a contract existed, a document extrinsic to the Complaint shows that Ms. Wiseman failed to exercise the Policy's exchange provision properly.  Voya's Motion to Dismiss further argues that even if the Plaintiff had made a proper exchange demand, the Defendants had no obligation to make a Policy available to her for exchange upon demand.

In fact, the First Amended Complaint plausibly alleged that the Plaintiff properly exercised the exchange provision and that the Policy obliged Defendants to honor the demand.

Voya's Motion to Dismiss further argued that Voya Financial, Inc. is not a proper party to this suit and that the Causes of Action in the First Amended Complaint are duplicative of the Plaintiff's claim for breach of contract.

As described in this Memorandum of Law in Opposition, the Plaintiff disagrees and therefore respectfully opposes Voya's Motion to Dismiss.

### A.   LEGAL STANDARD FOR MOTION TO DISMISS AND FOR CONSIDERATION OF MATTERS EXTRINSIC TO THE COMPLAINT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *citing Bell Atlantic v. Twombly*, 550 U.S. 544 (internal quotation marks omitted). "Once a claim has been adequately stated, it may be supported by showing <u>any set of facts</u> consistent with the allegations in the complaint" *ATSI Commc'n Inc. v. Shaar Fund Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (*citing Twombly,* 550 U.S. at 561) (*emphasis added*), and the court must draw "all reasonable inferences in the plaintiff's favor." *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014).

The issue in a Rule 12(b)(6) motion to dismiss for failure to state a claim "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) *citations omitted*. "In ruling on a motion pursuant to Fed.R.Civ.P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (*citation and internal quotation marks omitted*).

"A district court's analysis on a motion to dismiss is confined to the allegations contained within the four corners of the complaint." *Viti v. Guardian Life Ins. Co. of America*, 817 F.Supp.2d 214, 223 (S.D.N.Y 2011) *citing Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998). Although for purposes of Rule 12(b)(6), "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference, . . . this standard has been misinterpreted on occasion". *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). The *Chambers* decision "reiterate[d] that a plaintiff's <u>reliance</u> on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document

on a dismissal motion; mere notice or possession [by Plaintiff] is not enough." *Id.* (emphasis in original).

*Chambers* held that the documents extrinsic to the Complaint should be excluded because "[c]onsideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires only that the complaint contain a short plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 154 (citations omitted), and because "when a district court considers certain extra-pleading materials and excludes others, it risks depriving the parties of a fair adjudication of the claims by examining an incomplete record." *Id.* at 155.

The Second Circuit has similarly held that "a district court errs when it . . . relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss." *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) (internal citations omitted).

### B.   THE COMPLAINT STATES A VALID CLAIM FOR BREACH OF CONTRACT

#### 1.   Breach of Contract under New York law

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).

In interpreting correspondence and contracts between sophisticated, multi-national life insurance companies and their lay customers, Judge Learned Hand explained that "the canon contra proferentum is more rigorously applied in insurance than in other contracts, in recognition of the difference between the parties in their acquaintance with the subject matter." *Gaunt v.*

*John Hancock Mutual Life Ins. Co.*, 60 F.2d 599, 602 (2d Cir. 1947), *cert. denied*, 331 U.S. 849 (1947) (interpreting Connecticut contract law) (internal footnotes omitted).   With respect to contracts and correspondence in general, Judge Hand highlighted that: "A man must indeed read what he signs, and he is charged, if he does not; but insurers who seek to impose upon words of common speech an esoteric significance intelligible only to their craft, must bear the burden of any resulting confusion." *Id.*

So while "[u]nder New York law, the initial interpretation of a contract is a matter of law for the court to decide" *Maniolos v. U.S.*, 741 F.Supp.2d 555, 566 (2d Cir. 2010) (internal quotations and citations omitted), "[u]nless for some reason an ambiguity must be construed against the plaintiff, a claim predicated on a materially ambiguous contract term is not dismissible on the pleadings." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004) (vacating 12(b)(6) dismissal of breach of contract claim). Ultimately, "[t]he meaning of a contract term that is susceptible to at least two reasonable interpretations is generally an issue of fact, requiring the trier of fact to determine the parties' intent." *U.S. Naval Inst. v. Charter Communications*, 875 F.2d 1044, 1048 (2d Cir. 1989).

That is why "[u]nder New York law, an insurer bears the burden of showing that there is no ambiguity in a policy." *K. Bell & Assoc., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 639 (2d Cir. 1996) *citing Prince v. ITT Life Ins. Corp.*, 453 N.Y.S.2d 495 (4th Dep't 1982). "The reason for this rule is apparent.  The insurance company, as a rule, is dealing with a layman.  It presents to him a rather long and involved insurance policy.  He does not customarily have the advice of counsel when he takes out insurance and, therefore, if the insurance policy is not clear upon its face and is susceptible of two constructions, that construction properly should be taken which is most favorable to the insured." *Thomas v. Mutual Benefit Acc. Ass'n*, 123 F.Supp. 167, 169

(S.D.N.Y. 1954) *citing Stroemann v. Mutual Life Ins. Co.*, 300 U.S. 435 (1937).

Voya's Motion to Dimiss should be denied because a fair application of the pleading standard to the First Amended Complaint shows that the cause of action for breach of contract can be sustained.

### 2.    Plaintiff adequately performed under the Insurance Contract

Defendants acknowledge that an agreement existed but urge the court to dismiss the Plaintiff's claim for breach of contract because Plaintiff allegedly sought an exchange to which she was not entitled.

In fact, the First Amended Complaint alleges that Plaintiff made herculean efforts to exercise the exchange provision for a policy to which she was entitled.    FAC ¶ 54. The pleadings allege in detail how the Plaintiff <u>first exercised the exchange provision</u> by telephonic conference with Defendants in January and February 2015.   FAC ¶¶ 55 – 56. The pleadings allege that the Plaintiff again <u>exercised the exchange provision a second time</u> in writing by e-mail dated February 10, 2015. FAC ¶¶ 57 – 59.  According to the First Amended Complaint the Plaintiff <u>exercised the exchange provision a third time</u> in writing by letter dated February 22, 2015. FAC ¶¶ 60 – 70.   The pleadings also allege that Plaintiff exercised the exchange provision a <u>fourth time</u> subsequent to the February 22, 2015, letter.  FAC ¶¶ 71 – 72.

The First Amended Complaint alleged that even if a fact-finder were to find that the February 22, 2015, letter was an inadequate exercise of the exchange provision (because it sought a policy to which the Plaintiff was not entitled), the February 10, 2015, e-mail alone was sufficient. *See, e.g.*, FAC ¶ 70.  The pleadings also allege that Plaintiff acted at all times at the direction of Defendants on how to exercise the exchange provision and that therefore the Defendant is now estopped from claiming that the Plaintiff failed to perform under the contract.

*See, e.g.,* ¶¶ 56, 58, 63, and 72.

The First Amended Complaint alleged that Plaintiff's third exercise of the exchange provision without the assistance of counsel and that the expressed "wishes" for certain terms in the new policy did not negate the exercise of the exchange provision.  ¶¶ FAC 62 – 70.

By contrast, the Defendants urge the court to dismiss the complaint because: (i.) "Wiseman does not and cannot allege . . . that she would have paid the significant premiums underwritten for a 95-year-old" *Memorandum in Support of Defendants' Motion to Dismiss*, at p. 13; (ii.) "Wiseman does not and cannot allege that she requested, in writing, a policy that RLNY issued at the time of exchange." *Id.*

The Defendants' speculation about whether Wiseman would have paid the premiums underwritten for a 95-year-old is irrelevant.  At this Motion to Dismiss stage, Defendants' baseless factual speculation about what Plaintiff may have done if a policy was issued is entirely speculation.  Similarly, Defendants' factual claim that Wiseman failed to exercise the exchange provision is belied by the extensive description of Plaintiff's exercise of the exchange provision. FAC at ¶¶ 55 – 76.

Defendants' Motion to Dismiss tries to make hay out of an inelegant line by the Plaintiff in her February 22, 2015, letter – a letter that was drafted at Defendants' direction and without the assistance of counsel.  Leaving to one side the three undisputed exchange requests, and leaving to the other side the several ways that Plaintiff alleged the February 22, 2015, should be bifurcated (FAC ¶¶ 64 – 70) the letter is entirely consistent with the terms of the Policy.

Plaintiff wrote:

> "I am giving you written notice that we wish to exchange this policy, for a similar policy with no age expiration, same premium or less".

FAC at ¶ 65, *Affidavit in Support of Motion to Dismiss*, Exhibit 2.

That language tracked the terms of the exchange provision itself which provided that, "[w]e will issue the new Policy in the same premium rate class as this Policy." Defendants' interpretation of Plaintiff's request as a demand that she pay the same premiums "that were underwritten 25 years ago for a 70-year-old insured" *Memo in Support of Mot. to Dismiss* at p. 8, seems to be an intentionally strained reading of a layman's letter to their insurance company. It evokes Judge Learned Hand's warning about "insurers who seek to impose upon words of common speech an esoteric significance intelligible only to their craft, must bear the burden of any resulting confusion." *Guant* at 602. The exchange demand simply requested what the owner was due.

Defendants cite *CMG Holdings Group v. Wagner*, 2015 U.S. Dist. LEXIS 121135 (S.D.N.Y. Sept. 7, 2016), where a non-compete clause kicked in "if and only if" Plaintiff tendered a certain payment within two (2) business days of the employment termination. The court in *CMG Holdings Group* dismissed the breach of contract claim for Plaintiff's admitted failure to pay the payment. By contrast, the First Amended Complaint has plausibly alleged that the Plaintiff exercised the exchange provision and performed their obligations under the contract.

### 3.      Defendants Breached the Contract

The policy made a solemn commitment that upon demand, the Plaintiff "may exchange this Policy for a new Policy. Such exchange may be to any plan of whole life or endowment that we issue at the time of exchange, except: (1.) Flexible premium adjustable life insurance; or (2.) Adjustable cash value plans."[1]

---

[1]      As alleged in the First Amended Complaint, the actual policy may contain terms more favorable for the Plaintiff. FAC ¶ 52. For example, the actual policy may have provided a shorter notice provision or may not have required that the exchange demand be in writing. Similarly, the actual policy may have provided Plaintiff a wider selection of policies into which they may exchange.

The Plaintiff has alleged (and Defendant has not and cannot dispute) that upon ING Groep N.V.'s purchase of ReliaStar in 2000, the Defendants no longer had a policy available for exchange.  FAC at ¶¶ 73 – 75.  And the Plaintiff alleged that upon the purchase in 2000 the Defendants physically lost the policies and failed to maintain their obligations to their policy owners.  FAC ¶ 181, *et passim*.[2]

To the extent that the Defendants may argue that they had no contractual or statutory

---

[2]    The First Amended Complaint alleged that the Plaintiff requested from the Defendants a copy of their policy and that on December 23, 2014, the Defendants sent Plaintiff a document that Defendants represented to be a "duplicate policy", FAC ¶ 32.  The duplicate policy was stamped on each page with the words "DUPLICATE POLICY". FAC, Exhibit A.  The pleadings alleged that the "duplicate policy" appeared stitched together from various forms that may have been used at the time that the policy was issued, is not an accurate copy of the original policy, and contained no illustrations or policy application.  FAC ¶¶ 33 – 34.

The Defendants attached to their Affidavit in Support of their Motion to Dismiss a marked up document which is dated October 9, 2015, 1:27:25 P.M., (ECF #34, Exhibit 2) that counsel for the Defendants personally represented to be a "true and correct redacted copy of the Lincoln Security Life Insurance Company Application for Life Insurance". *Affidavit in Support*, ECF #34, ¶ 5.

Defendants' Exhibit 2 is not marked "DUPLICATE POLICY" (as opposed to the alleged copy of the policy sent from Defendants to Plaintiff in 2014); Exhibit 2 does not contain any illustration and policy booklet, which are of the essence of any life insurance policy; Exhibit 2 is cryptically described by counsel for Defendants as an "Application [which] resulted in the life insurance policy at issue" without clearly stating whether the document was part of the Policy or whether it was an initial or supplemental application or was something else; and Exhibit 2 is extrinsic to the pleadings and inappropriate for consideration in a Motion to Dismiss.

In addition, the Policy itself provides that "Such applications [referring either to the original and/or any supplemental application] shall not be used as evidence in any action relative to such Policy unless a copy of such application is attached to or endorsed upon the Policy."  First Amended Complaint, Exhibit A at p. 9, Paragraph "THE CONTRACT".  Without an application attached to or endorsed upon the Policy, any policy application may not be used by Defendants as evidence in any action relative to the Policy.

That said, even assuming the truth and admissibility of Mr. Leigh's personal representations about what the 2015 document might be (representations that are contradicted on the face of the document), the existence of Exhibit 2 provides no guidance on whether Defendants currently have or ever had a copy of the Policy, when the policy was lost, when Exhibit 2 was obtained by Defendants, and under what circumstances Exhibit 2 was found.

Therefore Defendants proffered documents and unsubstantiated factual allegations are inappropriate for consideration at this stage during a Motion to Dismiss.

obligation to have a policy available for exchange, such an argument is contradicted by the plain language of the Policy.  Language which allowed the Plaintiff to exchange the Policy for any policy offered by Defendants – but Defendants were required to offer a policy for exchange.

In addition, reading the contract as only requiring an exchange if the Defendants chose to offer policies would lead to an absurd result.  Such a reading would make the exchange provision a dead letter because a life insurance company would be allowed to sell a Policy priced and marketed on the basis of an exchange provision on Day One.  Then, on Day Two, the life insurance company may hollow out their commitment by now choosing to no longer offer a Policy available for exchange to any policy owner.

Reading the contract as only requiring an exchange if the Defendants' just-so-happened to offer policies for sale would be inconsistent with New York laws, rules, regulations, and standard industry practice relating to life insurance policies.  For example, New York law and practice strictly prohibits the use of deceptive or misleading information in the presentation of life insurance policies.  *See, e.g., New York Insurance Law* § 2403.

An interpretation of the contract that only required the Defendants to exchange the policy if they chose to offer a policy would also be in conflict with other sections of the Policy agreement that provide for the broadest reading of Defendants' duties.

The Policy provided:

"**All coverage** under the Policy shall end at the earliest of the following events:

"1.     The Insured dies;
"2.     The Policy matures;
"3.     The Grace Period ends;
"4.     The Policy debt equals or exceeds the cash values, if the required premium has not been paid within two months;
"5.     The Policy is surrendered; or
"6.     The Owner requests that coverage be terminated."

*First Amended Complaint*, Exhibit A at p. 10. (Paragraph "TERMINATION") (emphasis added).

So long as the Policy remained in force, the Defendants had an obligation to provide "<u>all coverage</u> under th[e] Policy", including the exchange upon demand.

All that said, to the extent that the requirement to have a policy available for exchange may be a factual dispute or that the language of the Policy about this issue is somehow ambiguous, then pursuant to the doctrine of *contra proferentum*, the policy should be read to require full coverage until policy termination. *See, e.g., Eternity Glob. Master Fund Ltd., Id.* at 178. Further, any factual dispute in this case about a contractual clause that may be open to different readings nshould ultimately be decided by the fact-finder and not dismissed at the pleading stage. *See, e.g., U.S. Naval Inst.*, Id. at 1048.

### 4.    The Contract Required Continuing Coverage of the Exchange Option

Defendants argue that aside from the exchange provision, no additional breaches of contract were made because:

(i.)     no provision in the contract required the Defendants to notify the owner that the policy could not be exchanged upon demand;

(ii.)    the Plaintiff was not overcharged on her premiums;

(iii.)   that premiums for the policy were not calculated based on the actual terms of the policy including the exchange provision; and

(iv.)    that the Plaintiff was not entitled to maintain Plaintiff's right to exchange the policy.
*Memorandum of Law in Support of Defendants Motion to Dismiss* at p. 9.

None of this is true.

The Policy provided the policy owner additional benefits including the right to sell her Policy, which also remained in force so long as the Policy had not yet matured. On the basis of the allegations of the First Amended Complaint, and upon full review of the information about the valuation of the Policy (which is solely in Defendants' custody) a reasonable fact-finder would be able to conclude that as a matter of fact:

11

(i.) that so long as the Policy remained in force, the Plaintiff had a continuing right to exercise the exchange provision upon demand and Defendants were required to notify Plaintiff of any disruption to that right; and

(ii.) that the premiums charged to the Plaintiff were erroneous because they were based on the right to exchange the policy, when in fact the company refused to exchange the Policy upon demand.

As a corollary, New York law strictly requires Notice to a policy owner upon any substantial change or diminution in their life insurance coverage.  For example, New York Insurance Law § 3211 provides strict requirements for formal notice to a life insurance owner before coverage is lapsed.  New York statutes, regulations, the terms of the Policy and industry practice set a standard of care for life insurance companies in New York to provide due notice to their customers before lapsing their policies or any provision in their policies.

This case is especially egregious.  As alleged in the Complaint, the Defendants lost the life insurance policies upon the purchase of ReliaStar by ING in 2000.  Defendants' negligence prevented Plaintiff from exercising her rights and was a blatant violation of New York law because it failed to provide notice that the Policy was lost and could not be exchanged.

### C.   THE COMPLAINT STATES A VALID CLAIM FOR BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

"Under New York law, every contract contains an implied covenant of good faith and fair dealing." *Carvel Corp. v. Diversified Mgmt. Group, Inc.,* 930 F.2d 228, 230 (2d Cir. 1991).  "The covenant of good faith and fair dealing embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 462 (2004) (Citations and quotation marks omitted) "This is particularly true in relationships where the parties do not deal as equals either in terms of access to information or business acumen and thus, often lack equal bargaining power." *Id.* (citation and quotation marks omitted).

Plaintiff acknowledges that "in most circumstances, claims for breach of contract and the covenant of good faith and fair dealing are duplicative; however, in some cases a party may be in breach of its implied duty of good faith and fair dealing even if it is not in breach of its express contractual obligations." *Orange County Choppers v. Olaes Enterprises*, 497 F.Supp.2d 541, 560 (S.D.N.Y. 2007) (citation omitted).

In *Orange County Choppers*, the court found the implied covenant of good faith created additional and distinct obligations that did allow for recovery separate from the contract. *Orange County Choppers* dismissed the claim for express breach of contract while allowing the claim for breach of the covenant of good faith and fair dealing to go ahead with respect to those matters not covered by the contract.

Similarly, in *Voss v. Bank of America, NA*, 2016 U.S. Dist. LEXIS 88424 (N.D.N.Y. 2016), the court dismissed a claim for breach of contract but allowed a claim for breach of the covenant of good faith and fair dealing to move forward where "Defendants' conduct had the effect of destroying or injuring the right of Plaintiff to receive the fruits of the contract." *Voss*, at *7, *citing Kirke La Shelle Co. v. Armstrong Co.*, 74 N.Y.2d 562 (N.Y. 1933). To survive a Motion to Dismiss with respect to the covenant the Plaintiff must "state[] a claim under the implied covenant that Defendants abused this discretion by acting in bad faith and outside the reasonable expectations of the parties.  Whether Defendants' acts were done in bad faith and not within the reasonable expectations of the parties is a question of fact that cannot be decided at the pleading stage." *Voss* at *7, *citing Leghorn v. Wells Fargo Bank, N.A.*, 950 F.Supp.2d 1093 (N.D.Cal. 2013)

The First Amended Complaint alleged that Defendants acted in bad faith. FAC ¶ 160.  The First Amended Complaint argued that should a fact-finder interpret the

language of the contract as only requiring an exchange if – and only if – the Defendants chose to honor their obligations,[3] then the covenant of good faith provides a separate and distinct claim that the Defendants acted in bad faith and not within the reasonable expectations of the parties. FAC ¶ 152 – 174, *et passim*.

While "New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a plaintiff also pursues a breach of contract claim based upon the same facts." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002).  Here, the Plaintiff argues that even if the breach of contract claims are dismissed, the case should move forward for Defendants' breach of the covenant of good faith and fair dealing.  See, e.g., *Voss* and *Orange County Choppers* where breach of contract claim was dismissed, but the claim for breach of the covenant moved forward on the same transaction.

Similarly, "unlike a breach of contract claim, which requires a plaintiff to identify the specific contractual provision allegedly breached, the covenant of good faith and fair dealing applies to the contract as a whole" *Voss*, at *6.  The requirement to exchange the policy upon demand, provide proper notice, charge fair premiums, and the other duties from Defendants to Plaintiff arise from different facts and do not conflict with the contractual duties and should move forward <u>together</u> with the breach of contract claim.[4]

---

[3]       Which as explained earlier is an absurd reading of the exchange provision.  And to the extent that the exchange provision is somehow ambiguous it should be read in a light most favorable to Plaintiff, both because of the procedural status of this litigation and because of the doctrine of *contra proferentum*.

[4]       This is distinguishable from *Wolff v. Rare Medium, Inc.*, 210 F.Supp.2d 490 (S.D.N.Y. 2002), cited by Defendants, where no allegations were made to support a cause of action for Breach of Contract. Here, the First Amended Complaint in great detail the obligations that Defendants assumed for the maintenance of the Plaintiff's rights, independent of the language in the Contract.

### D.   CLAIMS AGAINST VOYA FINANCIAL SHOULD BE UPHELD

The First Amended Complaint plausibly alleged claims against Voya Financial, Inc. itself because Voya Financial, Inc. was a party to the contract; because Voya Financial, Inc. is estopped from alleging it is not liable for the breach of contract (and other claims); and because Voya Financial, Inc. and ReliaStar are alter egos of one another.[5]

### 1.   Claims Against Voya Financial Should be Upheld Because Voya Financial, Inc. has Direct Liability Under the Contract.

Under New York law, "[a] parent corporation may not be held liable for the contracts of its subsidiary solely because of stock ownership.  A corporation, however, may become an actor in the whole business of a subsidiary corporation.  When this occurs it will be legally responsible." *A. W. Fiur Co., Inc. v. Ataka & Co., Ltd.*, 71 A.D.2d 370, 374 (1st Dep't 1979).

In this case, Voya Financial, Inc. became an actor in the Wiseman policy.  The Policy described itself as a "legal contract between you and Lincoln Security Life Insurance Company." FAC, Exhibit A at p.2.  The Policy said that with respect to the Policy " 'we' means the Lincoln Security Life Insurance Company.  We promise to pay the Death Benefit to the Beneficiary subject to the provisions of this Policy."

Who is "we"?

How would a layman insurance policy owner and a reasonable fact-finder understand the

---

[5]      In contrast to the cases cited by the Defendants, such as *Degraziano v. Verizon Communications*, Inc., 325 F.Supp.2d 238 (E.D.N.Y. 2004); *Horowitz v. Aetna Life Insurance*, 539 N.Y.S.2d 50, 53 (2d Dep't 1989); *Garcia v. Paris Maint.*, 2016 U.S. Dist. LEXIS 60111 (E.D.N.Y. May 4, 2016), the First Amended Complaint does not allege that mere stock ownership gave rise to Voya Financial, Inc.'s liability.

Similarly Defendants' citation to *In re Digital Music Antitrust Litig.*, 812 F.Supp. 390 (S.D.N.Y. 2011) where an antitrust conspiracy was dismissed because "no allegations [were made] that any Parent Company did anything actionable in the alleged antitrust conspiracy". *Id.* at 419, is distinct from the First Amended Complaint's allegations of Breach of Contract.

identities of the parties to this contract?

The Policy provides some clues on how to identify the counterparty.  The Policy provides that, "[f]or information or service on this Policy, contact . . . any of <u>our</u> offices including <u>our</u> Home Office."  FAC, Exhibit A, p.2.  In fact the First Amended Complaint alleged that the only contact by and between the parties was through Voya Financial, Inc., at Voya Financial, Inc.'s home office.  See, e.g., FAC ¶ 57, 87, and elsewhere.  *See also Memorandum of Law in Support of Motion Dismiss* at Exhibits 1 and 3.[6]

The Policy provided with respect to the exchange provision that, "[w]ritten notice for such exchange must be given to <u>us</u> 31 days in advance. . . . <u>We</u> will issue the new Policy in the same premium rate class as this Policy.  <u>We</u> will calculate the premium for the new Policy according to the rates in effect for the age and premium rate class of the Insured at the time of exchange."  Voya Financial, Inc. has not and cannot dispute that all correspondence including the request was properly made to Voya Financial, Inc. <u>as a principal to the Policy</u> – regardless of whatever formal legal relationship Voya Financial, Inc. may or may not have internally with ReliaStar.

The First Amended Complaint alleged that Voya Financial, Inc. itself became the actual counterparty to the Policy.  *See* FAC ¶15, 86, 87 – 95 and elsewhere.  The First Amended Complaint alleged that "despite the formal name 'ReliaStar' as policy administrator in New York, Plaintiff's insurance contract was one between her and Voya, the actual company that administered and was responsible for the Wiseman Policy." FAC at ¶ 87.

The substitution of a Party in a life insurance contract is not a foreign idea.  New York

---

[6]     Reference to Defendants' Exhibits is for purposes of argument only.  As explained, the consideration of documents extrinsic to the pleadings is inappropriate at this stage of the litigation.  Note also that Defendants' Exhibit 3, while under "ReliaStar" letterhead is executed by Lauren Rowe, whom the First Amended Complaint alleged was an agent of Voya Financial, Inc., FAC ¶ 56.

Courts have held in an analogous case with the Travelers' family of life insurance companies that "upon review of the policy – which contains numerous references to 'Travelers' companies apart from the reference appearing on the declarations pages – it cannot be said to state clearly and unambiguously that Farmington [the New York handle for Travelers] is the only party which provided the insurance." *Tetelbaum v. Traveler's Companies, Inc.*, Index #12-21101, 2013 N.Y. Slip. Op. 32961 at *4 (S.Ct. Suffolk Co. Aug. 22, 2013) (Mayer, Justice Peter H.) (U) *citing SUS, Inc. v. St. Paul Travelers Group*, 905 N.Y.S.3d 321 (3d Dep't 2010) (allowing claim against Insurance Family to move forward).

While Defendants are in sole custody of most of the information that would further substantiate the corporate decision to substitute Voya Financial, Inc. as the actual policy administrator, the First Amended Complaint alleged sufficient facts so that it cannot be said clearly and unambiguously that Voya Financial, Inc. is not a party to the contract.

To the contrary, any reasonable jury would find that Voya Financial, Inc. was the principal counterparty to a valid insurance contract. *See New York Business Corporations Law* § 1312(b).

The Plaintiff also respectfully points the Court's attention to Exhibits B and C of the First Amended Complaint. Those Exhibits demonstrate that as recently as December 2016, the purchase of life insurance through "ReliaStar" is conducted solely through the Voya.com agent website and life insurance applications are formatted, computed, and offered solely by Voya Financial, Inc. New York policies (allegedly offered by ReliaStar) and New Jersey policies (allegedly offered by Security Life of Denver Insurance Company) are in fact all Voya Financial, Inc. policies and proudly announce their status in the "Voya® Family of Companies."

Voya Financial, Inc.'s claim that they are not a party to the contract is an attempt to have

their cake and eat it too.  The Defendants intentionally and expressly represented to Plaintiff, legacy class members, and all customers that Voya Financial, Inc. stood behind each Policy.  But when called to account, Voya Financial, Inc. now wants to eat their cake and claim they are not a party to the Policies marketed in their name.  That absurd result is why New York law courts require life insurance conglomerates to stand behind policies that they represent as coming from their "Family."  *See Tetelbaum v. Traveler's.*

To be clear, the First Amended Complaint alleged that at all relevant times Voya Financial, Inc., marketed ReliaStar policies under the Voya name with the customer's reasonable reliance on the good reputation of Voya in their decision to make that purchase.  FAC ¶ 89 – 92. The First Amended Complaint alleged that with respect to the Plaintiff, the Defendants represented the administrator as part of the Voya® Family of Companies. FAC ¶ 90.

The First Amended Complaint further alleged that all correspondence between the Plaintiff and the Defendants about the exchange provision was conducted through Voya phone numbers, Voya agents, Voya correspondence and Voya e-mails.  See FAC ¶¶ 56, 57, 62, 71 and elsewhere. *See also Defendants' Memorandum of Law in Support of the Motion to Dismiss* at Exhibit C[7] (a document executed by Lauren Rowe, a Voya Financial, Inc. agent, See FAC ¶ 56).

At the very least, the Court should allow jurisdictional discovery into what representations Voya Financial, Inc. made to the Plaintiff, the legacy policy class, and other parties so that the fact-finder can have the basis on which to knowledgeably determine whether, when, and how Voya Financial, Inc. elected to stand as a principal to the Policy.

---

[7]     Reference to Defendants' Exhibits if for purposes of argument only.  As argued earlier in this Memo, the consideration of documents extrinsic to the pleadings is inappropriate at this stage of the litigation.

2.      **Claims Against Voya Financial Should Be Upheld Because**
        **Voya Financial, Inc. Is Estopped From Claiming**
        **That It Is Not Liable Under the Policy**

> Under New York law, a plaintiff asserting estoppel must show that
> defendant engaged in "(1) Conduct which amounts to a false
> representation or concealment of material facts, or, at least, which
> is calculated to convey the impression that the facts are otherwise
> than and inconsistent with, those which the party subsequently
> seeks to assert; (2) intention, or at least expectation, that such
> conduct will be acted upon by the other party; (3) and, in some
> situations, knowledge, actual or constructive, of the real facts."

*BWA Corp. v. Alltrans Express U.S.A.*, 493 N.Y.S.2d 1, 4 (1st Dep't 1985).

Regarding its own conduct, a Plaintiff must "demonstrate a lack of knowledge of the true

facts; reliance upon the conduct of the party estopped; and a prejudicial change in position."

*River Seafoods, Inc. v. JP Morgan Chase Bank*, 796 N.Y.S.2d 71, 73 (1st Dep't 2005).

The First Amended Complaint plausibly alleged that in all correspondence and

interactions with the Plaintiff and its customers, ReliaStar proudly represented itself as "Part of

the Voya® Family of Companies" (*See, e.g.*, FAC ¶ 88 and Exhs. B & C).  This was not an

accident.  The First Amended Complaint plausibly alleged that after the disastrous collapse of

ING's reputation following its deferred prosecution agreement with the Treasury Department

and the sanguinary results of ING's actions in various civil wars, the "Voya" name was adopted

by all ING-related companies to whitewash ING's history, promote further sales, and prevent

customers from dropping ING-related policies. (FAC ¶ 99).

The First Amended Complaint plausibly alleged that the use of the Voya name in all

correspondence related to ReliaStar policies was intended to convey the impression to reasonable

customers that Voya stood behind all ReliaStar insurance products.   The First Amended

Complaint alleged that all correspondence with respect to the Policy was conducted with and

through Voya.  The First Amended Complaint plausibly alleged (and the Defendants surely do

19

not deny) that the marketing and correspondence under the name Voya was intentionally done so that the Plaintiff, legacy policy holders, and all customers feel comfortable dealing with a national life insurance brand.

The First Amended Complaint plausibly alleged that the Plaintiff did in fact think that they were, at all relevant times, dealing with the Voya Financial, Inc. as the policy administrator and the counter-party to their Policy.   All correspondence between the Plaintiff and the Defendants about the exchange provision at all times were conducted through Voya phone numbers, Voya agents, Voya correspondence and Voya e-mails.  See FAC ¶¶ 56, 57, 62, 71 and elsewhere. See also Defendants' Memorandum of Law in Support of the Motion to Dismiss at Exhibit C[8] (executed by Lauren Rowe, a Voya Financial, Inc. agent, See FAC ¶ 56).   Such reliance was in good faith, and created a change in position because as the First Amended Complaint plausibly alleged that had Plaintiff known that the Voya® Family of Companies would not stand behind her Policy (including the exchange provision) she would not have maintained the Policy, would have made her exchange demand to a different party, and otherwise would have acted earlier and/or differently to preserve her rights.

Therefore the First Amended Complaint has plausibly alleged that under New York law, Voya Financial, Inc. is estopped from now claiming that they are not responsible for the Policy. Voya Financial, Inc. is therefore a proper party to the claim for Breach of Contract and related claims.

---

[8]   Reference to Defendants' Exhibits if for purposes of argument only.   As explained, the consideration of documents extrinsic to the pleadings is inappropriate at this stage of the litigation.

**3.** **Claims Against Voya Financial Should be Upheld Because Voya Financial, Inc. has Directly Intervened in ReliaStar to Such an Extent that the Subsidiary's Paraphernalia of Incorporation, Directors and Officers are Completely Ignored**

Under New York law, "[w]hile generally a parent corporation's liability cannot be based solely upon its ownership of a subsidiary, [a claim <u>may</u> move forward where] plaintiff has alleged sufficient facts indicating direct intervention by [the ultimate parent company] in the management of the [counterparty] to such an extent that [the counterparty's] paraphrenalia of incorporation may be ignored." *Stone Ridge Country Properties Corp. v. Mohonk Oil Co., Inc.* 923 N.Y.S.2d 282, 283 (3d Dep't 2011) *citing SUS, Inc. v. St. Paul Travelers Group*, 75 A.D.3d 740 (3d Dep't 2010) (internal quotations and square parenthesis omitted).  *Stone Ridge* clarified that "[w]hether plaintiff will ultimately be successful on its claims against [the ultimate parent company] is not part of the calculus in determining a motion to dismiss." Id., citing *AG Capital Funding, L.P. v. State St. Bank & Trust Co.*, 5 N.Y.3d 582, 591 (2005).

Justice Cardozo articulated and Plaintiff acknowledges that "[s]tock ownership alone would be insufficient to charge the dominant company with liability for the torts of the subsidiary." *Berkey v. Third Ave. Railway Co.*, 244 N.Y.84, 85 (1926); *Motion to Dismiss*, p. 21 – 24 (collecting cases).

By contrast, here the Plaintiff and Defendants have in fact blended their companies. Voya Financial, Inc. is an unauthorized foreign corporation and therefore not allowed to operate in New York State.  In fact, the First Amended Complaint alleged that Voya Financial, Inc. maintains its home office at New York City, which is allegedly ReliaStar territory.  So while Defendants are in possession of the information necessary to describe the internal workings of their relationship, Voya Financial, Inc.'s extraordinary activity in New York as an unauthorized foreign corporation (in addition to Voya's representations as the principal of the Policy) is

sufficient for the First Amended Complaint to have alleged that the Parties have ignored the paraphernalia of their corporate form with respect to their New York State activities.

## E.   ADDITIONAL CAUSES OF ACTION SHOULD BE UPHELD

### 1.   The Intentional Infliction of Emotional Distress Claim Should be Upheld

"To survive a motion to dismiss [on a claim for intentional Infliction of Emotional Distress] the conduct alleged must be such that it can be fairly characterized as egregious, utterly despicable, heartless or flagrant."   *Nektalov v. Kuwait Airways Corp.*, No. 15-cv-0033, (E.D.N.Y. Sept. 30, 2016) *citing Russo-Lubrano v. Brooklyn Fed. Savs. Bank*, 2007 WL 121431, (E.D.N.Y. Jan. 12, 2007).

While our courts have held that "acts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities . . . [are] not sufficiently outrageous" *Id.*, a pattern of "repeated and long-term harassment of the plaintiffs may serve as a basis for an Intentional Infliction of Emotional Distress claim under New York law." *Polley v. Fed. Reserve Bank of N.Y.*, 1994 WL 465923 (S.D.N.Y. 1994); *Zaffino v. Surles*, 1995 WL 146207 (S.D.N.Y. 1995).

The First Amended Complaint plausibly alleged that the failure to maintain the Policy and the pressure that Plaintiff's mother felt to pass before the policy lapsed rises to the level of harassment, which New York requires for an Intentional Infliction of Emotional Distress claim. FAC ¶ 84.

Further, the evolving standards of our culture and the sensitivities related to the relationship a life insurance company has with its insureds, militates for the application of a plausible Intentional Infliction of Emotional Distress claim in this case.

### 2.      Unjust Enrichment Claim should be Upheld

"The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement." *Marshall v. Hyundai Motor America*, 51 F.Supp.3d 451, 471 (S.D.N.Y. 2014) *citing Diesel Props S.r.l. v. Greystone Bus. Credit II L.L.C.*, 631 F.3d 42, 54 (2d Cir. 2011). "Thus, when a matter is controlled by contract, the plaintiff has no valid claim for unjust enrichment under New York law". *Id. citing Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561 (2005).

The First Amended Complaint plausibly alleged that the Defendants lost the Policy.  FAC ¶ 52.  If a fact-finder determines that no contract controls, the claim for Unjust Enrichment can move forward on a quasi-contract theory of Unjust Enrichment.[9]

### 3.      Declaratory Judgment claim should be Upheld

A declaratory Judgment in this case would finalize the controversy and provide relief for Plaintiff and others who would face a similar situation as Plaintiff, should they choose to exercise the exchange provision in their policies.

### 4.      GBL § 349 Claim should be Upheld

Defendants cite *Spagnola v. Chubb Corp.*, 574 F.3d 64 (2d Cir. 2009) for the proposition that "[a]lthough a monetary loss is a sufficient injury to satisfy the requirement under § 349, that loss must be independent of the loss caused by the alleged breach of contract" *Id.* at 74.

The First Amended Complaint plausibly alleged that the Defendants lost the Policy.  FAC ¶ 52.  If a fact-finder determines that no contract controls, the claim under GBL § 349 should

---

[9]      *See* fn. 2 earlier explaining why a document presented by Defendants is inappropriate for consideration at this stage of the litigation.  And which in substance provides no guidance on whether the Defendants have a copy of the Policy.

move forward.[10]  With respect to the statute of limitations issue, the factual basis for the tolling of the statute of limitations is alleged at FAC ¶¶ 103-112, and the Plaintiff's legal argument is expounded in their Opposition to the Motion to Dismiss by ING Groep, N.V.

### 5.    Negligence Claim should be Upheld

As described more fully in the Plaintiff's Opposition to the Motion to Dismiss by ING Groep, N.V., the negligence claim can move forward independent of the Breach of Contract claim.

### 6.    Statute of Limitations has not Run

With respect to all causes of action, the Statute of Limitations has not run.  The factual basis for the tolling of the statute of limitations is alleged at FAC ¶¶ 103-112, and the Plaintiff's legal argument is expounded more completely in their Opposition to the Motion to Dismiss by ING Groep, N.V.

### F.    CONCLUSION

For the reasons described in this Memorandum, the Plaintiff respectfully prays that the Motion to Dismiss filed by Defendants ReliaStar Life Insurance Company of New York and Voya Financial, Inc. should be denied in its entirety.


At: Fresh Meadows, NY

Date: February 6, 2017

RESPECTFULLY SUBMITTED,

Baruch S. Gottesman, Esq.
HOROWITZ AND RUBENSTEIN LLC
c/o 185-12 Union Turnpike
Fresh Meadows, NY 11366

---

[10]    *See* fns. 2 and 9 earlier.