UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GLORIA D. WISEMAN,

PLAINTIFF,

v.                                                          NO. 1:16-CV-7587-AJN

RELIASTAR LIFE INSURANCE
COMPANY OF NEW YORK,

DEFENDANT.

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Clark C. Johnson
Michael T. Leigh
KAPLAN JOHNSON ABATE & BIRD LLP
710 West Main Street
Louisville, Kentucky 40202
Tel: (502) 416-1630
cjohnson@kplouisville.com
mleigh@kplouisville.com

Andrew D. O'Toole
O'TOOLE + O'TOOLE PLLC
22 Valley Road
Katonah, NY 10536
Tel: (914) 232-1511
aotoole@otoolegroup.com

*Counsel to Defendant ReliaStar Life Ins. Co.
of New York*

Dated: February 9, 2017

TABLE OF CONTENTS

Introduction ................................................................................................................ 1

Statement of Facts ..................................................................................................... 2

Argument.................................................................................................................... 6

I.   Plaintiff Bears the Burden of Establishing Each Element of Rule 23 by a
     Preponderance of the Evidence but Submits Almost No Evidence in Support of
     Certification, Warranting Summary Denial of Her Motion. ....................................... 7

II.  Plaintiff's Claim for Breach of the Implied Covenant Defies Certification Under
     Rule 23(b)(3) Because Common Questions Do Not Predominate and a Class
     Action is Not Superior to Individual Actions............................................................ 9

     A.  Plaintiff Cannot Demonstrate Predominance of Common Issues.. ...................... 9

     B.  A Class Action Is Not a Superior Method of Resolving this Case.. ................... 15

III. Plaintiff Fails to Establish Other Requirements for Certification. ........................... 16

     Numerosity. ............................................................................................................ 16

     Typicality. .............................................................................................................. 18

     Ascertainability...................................................................................................... 19

Conclusion................................................................................................................ 21

TABLE OF AUTHORITIES

## CASES

*Amchem Prods. Inc, v. Windsor*,
  521 U.S. 591 (1997) ............................................................................... 16

*Avritt v. ReliaStar Life Ins. Co.*,
  615 F.3d 1023 (8th 2010) .................................................................. 11, 12

*Califano v. Yamasaki*,
  422 U.S. 682 (1979) ................................................................................. 6

*Cassese v. Washington Mut., Inc.*,
  262 F.R.D. 179, 183 (E.D.N.Y. 2009) ...................................................... 6

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ......................................................................... 7, 8, 10

*Demarco v. Edens*,
  390 F.2d 836 (2d Cir. 1968 ..................................................................... 17

*Garcia v. Veneman*,
  224 F.R.D. 8 (D.D.C. 2004) ................................................................ 9, 18

*In re LifeUSA Holding, Inc.*,
  242 F.3d 136 (3d Cir. 2001) ................................................................... 11

*In re Petrobras Sec.*,
  862 F.3d 250 (2d Cir. 2017) ......................................................... 7, 20, 21

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
  214 F.R.D. 614 (W.D. Wash. 2003) ........................................................ 16

*Jeffries v. Pension Trust Fund of the Pension, Hospitalization and Benefit Plan
  of the Elec. Indus.*,
  172 F. Supp. 2d (S.D.N.Y. 2001) ............................................................ 17

*Kapiti v. Kelly*,
  2008 U.S. Dist. LEXIS 64154 (S.D.N.Y Aug. 18, 2008) .......................... 17

*Kiobel v. Royal Dutch Petroleum Co.*,
  2004 U.S. Dist. LEXIS 28812 (S.D.N.Y. Mar. 31, 2004) ......................... 20

*Kunzelmann v. Wells Fargo Bank, N.A.*,
  2013 U.S. Dist. LEXIS 3962 (S.D. Fla. Jan. 10, 2013) ....................... 12, 14

*Monaco v. Bear Sterns Co.*,
  2012 U.S. Dist. LEXIS 189628 (C.D. Cal. Dec. 5, 2012) ..................... 11, 14

*Moore v. Paine Webber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002) ................................................................... 9

*N.J. Carpenters Health Fund v. Residential Capital LLC*,
  272 F.R.D. 160 (S.D.N.Y 2011) ......................................................... 15, 16

*Pilgrim v. Universal Health Card, LLC*,
   660 F.3d 943 (6th Cir. 2011) ...................................................................9, 18

*Reese v. Arrow Fin. Servs., LLC*,
   202 F.R.D. 83 (D. Conn. 2001) ................................................................ 17

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) ...................................................................... 8

*Spagnola v. Chubb Corp*,
   264 F.R.D. 76 (S.D.N.Y. 2010) ........................................................ 9, 10, 18

*Stout v. J.D. Byrider*,
   228 F.3d 709 (6th Cir. 2000)................................................................11, 14

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
   546 F.3d 196 (2d Cir. 2008).................................................................... 8

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .................................................................................. 6

## STATUTES & RULES

Fed. R. Civ. P. 23 ....................................................................................*passim*

N.Y. C.P.L.R. § 213(2) ............................................................................ 19

## MISCELLANEOUS AUTHORITIES

Manual on Complex Litigation § 24 (4th ed. 2004) ....................................... 15

## INTRODUCTION

In 1991, Plaintiff's mother, Olga Wiseman, purchased a $300,000 universal life insurance contract (the "Policy") on her own life from Lincoln Security Life, a predecessor of Defendant ReliaStar Life Insurance Company of New York ("RLNY"). She was 70 years old at the time. Plaintiff became the owner of her mother's policy at some point, but Olga paid all premiums due on the Policy, even after Plaintiff became the owner.

The Policy states that it matures and the face amount death benefit will be reduced to the cash value of the Policy on October 23, 2016, when Olga, the insured, turned 95 years old. Nevertheless, Plaintiff testified that she and her mother believed in 1991, and for the next twenty-plus years, that the Policy was a whole life insurance policy because Olga asked their insurance agent, Murray Zucker, for a whole life policy and he told Olga that he was selling her a whole life policy.

When Plaintiff was reminded by RLNY in 2014 that the Policy would mature in October 2016, she asked RLNY, in February 2015, to exchange the Policy for "a similar policy with no expiration, same premium or less" as the existing Policy. Plaintiff testified that when Olga purchased the Policy in 1991, Mr. Zucker "guaranteed" her that RLNY would always have a whole life policy available for exchange, despite that, as the Court has already held, the contract terms unambiguously do not make any such guarantee. The Policy allows for certain possible exchanges of coverage, and on two occasions, RLNY offered Plaintiff potential life insurance policies for exchange, each of which would have provided $300,000 in life insurance coverage on Plaintiff's mother extending after the October 2016 Maturity Date of the Policy. RLNY did not have a policy "with no expiration

date, same premiums or less," as Plaintiff demanded, and Plaintiff was not interested in the two policies RLNY offered because she thought the premiums were too high.

This putative class action attacks Defendant's failure to exchange the Policy for one with no maturity date and the same face amount at premiums Plaintiff would find acceptable. On a Rule 12(b)(6) motion, the Court dismissed all of the putative class claims except for a claim for breach of the implied covenant of good faith and fair dealing. Taking the pleadings as true, the Court concluded that Plaintiff had adequately alleged, based on the exchange provision in the contract "and other factors," that Plaintiff might reasonably expect that RLNY would have a contract available for exchange at all times.

Plaintiff has moved for class certification of her implied covenant claim. The Court must determine whether Plaintiff has carried her burden to establish with competent proof, after "rigorous analysis," that the elements of Rule 23 are satisfied. Because Plaintiff's and her mother's understanding and expectations as to insurance coverage and exchange options are tethered exclusively to the unique oral representations of their independent insurance agent more than 20 years ago, this case is not subject to any "generalized proof" that would tend to establish any element of the implied covenant claim on a class-wide basis. Indeed, given that neither Plaintiff nor her mother ever received a copy of the contract until 2014, Plaintiff's expectations are not rooted in any respect in the express contract terms—the only thing she arguably has in common with the putative class members.

The Court should deny Plaintiff's motion.

### STATEMENT OF FACTS

In 1991, Olga Wiseman purchased a $300,000, 25-year Flexible Premium Adjustable Life Insurance Policy from Lincoln Security Life Insurance Company to insure her own life.

(Ex. A, Policy at 4.), RLNY is Lincoln's successor in interest. (Ans. of RLNY ¶ 38, ECF No. 55.) The Policy states a maturity date of October 23, 2016, when Olga would be 95 years old. (*Id.* at 4.) The Policy provides that all coverage "shall end at the earliest of" the insured's death or the Policy's Maturity Date, among other events. (*Id.* at 9 ("Termination").) The Policy's $300,000 death benefit was payable if Olga died before the October 23, 2016 Maturity Date and the Policy was in force. (*Id.* at 16 ("Death "Benefit").) If Olga was alive and the Policy still in force at the Maturity Date, the insurer agreed to pay "any cash value, less any debt." (*Id.* at 10 ("Payments By Us").) Olga lived past the Maturity Date of October 23, 2016, and remains alive. (First Am. Compl. ("FAC") ¶ 30.)

Plaintiff Gloria Wiseman ("Plaintiff") became the owner of her mother, Olga's, policy at some point but does not know when, or under what circumstances. (Ex. B, Pl. Dep. 32:25–35:2.) Even after Plaintiff became the owner, her mother continued to pay the annual premiums on the Policy. (*Id.* at 30:16–32:22.)

The Policy's Maturity Date and end of coverage are clearly described. (Ex. A at 4.) Plaintiff was not present for her mother's purchase of the Policy, and her knowledge of what her mother expected from the policy is based on second-hand knowledge and recollected conversations more than two decades ago, prior to the Policy's purchase, between her and her mother about the value of whole life insurance versus term life insurance. (Ex. B 19:8–20:5; 22:5–14; 27:4–17; 29:5–30:15; 76:19–25.) Based on those casual conversations with her mother before her mother purchased the Policy, Plaintiff insists that when her mother bought the contract in 1991, her mother wanted a whole life insurance contract that would continue in-force to her death irrespective of her age and that her agent (and family friend) Murray Zucker assured her mother that the Policy he sold her was a whole life policy. (*Id.* at

8:21–23; 52:2–9; 76:19–25.) Plaintiff testified that neither she nor her mother ever received a copy of the Policy from RLNY or Mr. Zucker, until requesting a copy in late 2014. (*Id.* at 12:22–13:2.) Plaintiff testified that had she received a copy sooner, she would have known the Policy was not a whole life policy and would have taken steps promptly to secure whole life coverage.[1] (*Id.* at 23:19–25, 106:10–15.)

The Policy also contains a provision that states: "You may exchange this Policy for a new Policy. Such exchange may be to any plan of whole life or endowment that we issue at the time of exchange . . . Written notice for such exchange must be given to us 31 days in advance . . . We will issue the new Policy in the same premium rate class as this Policy. We will calculate the premium for the new Policy according to the rates in effect for the age and premium rate class of the Insured at the time of exchange. All plans of insurance available for exchange are subject to plan requirements." (Ex. A at 18 ("Exchange").)

In February 2015, with the Policy nearing maturity, Plaintiff made a written exchange request that was plainly at odds with this provision. She wrote to RLNY: "I am giving you written notice that we wish to exchange this policy, for a similar policy with no age expiration, same premiums or less." (Ex. C, Feb. 2015 Letter.) Plaintiff's written exchange demand omitted the subsequent language of the provision, which limits any exchange to a policy "that we [the insurer] issue at the time of exchange" and states that the

---

[1] Plaintiff bought a policy on her own life in 1994 from RLNY's predecessor that, like her mother's policy, contains a Maturity Date, or end of coverage date, when Plaintiff turns 95, or in 2051. Plaintiff testified that she had wanted to purchase a whole life policy from Mr. Zucker and that Mr. Zucker assured her that the 1994 contract was in fact a whole life insurance contract. She testified that she did not receive a copy of the contract from RLNY or Mr. Zucker. She has not sought to exchange the contract for a different insurance policy and continues to pay the premiums despite now knowing the contract is not a whole life contract.

premiums on any new policy obtained through exchange would be calculated based upon the rates in effect and based on the age of the insured at the time of exchange.

RLNY did not have a whole life insurance contract available for a 95-year old person, and particularly not at rates that were calculated for a 70-year old in 1991 ("same premiums or less"), and so did not honor Plaintiff's exchange request. (Ex. D, Interrog. Ans. Nos. 3.vi. & 8.) However, on two occasions, RLNY offered Plaintiff life insurance policies for extended coverage. The first such offer, in March 2016, came after Plaintiff threatened suit. Plaintiff declined that policy. (Ex. E, Mar. 2016 Nelson Email.; Ex. B 87:5 – 92:7.) The second offer was made in response to an inquiry from Plaintiff's agent, Zucker, but Plaintiff testified that Zucker never conveyed that offer to her. (Ex. F, Mueller 2017 Email; Ex. B 93:3–99:23.) Olga was in her late nineties at the time of these offers, so the premiums were significantly higher. Plaintiff testified that though she is aware that insurance premiums are set based on the insured's age and that rates to insure a 95-year-old are higher than to insure a 70-year-old, she would not be interested in either of the policies RLNY offered for exchange. (Ex. B 68:18–69:7, 90:17–91:25, 98:23–99:23.)

Plaintiff is aware of no other attempts by anyone to exchange their RLNY policy for a different RLNY policy, (*Id.* at 111:12–112:14), and, indeed, the evidence demonstrates that within the six-year statute of limitations period for breach of implied covenant claims, there has not been a single request for exchange other than Plaintiff's deficient request to exchange the Policy. (Ex. D Interrog. Ans. No. 9.) In addition, Plaintiff has not attempted to exchange her RLNY policy on her own life. (Ex. B 15:3–17:18.) There are no other lawsuits against RLNY based on the exchange provision of Lincoln Security Life Insurance Company (or any other legacy company's) policies.

Plaintiff brought numerous claims against RLNY and its past and present parent companies. (*See generally* FAC.) The Court dismissed all claims except those against RLNY for breach of the implied covenant of good faith and fair dealing. (Mem. & Order, ECF No. 53.) Plaintiff seeks an early ruling on class certification and set the deadline for her motion for class certification to coincide with the start of discovery. She now seeks class certification for her implied covenant claims on behalf of the Lincoln Security Class, defined as "All owners of life insurance policies issued by Lincoln Security Life Insurance Company with an exchange provision that were in force on January 1, 1998, and which were at any time unavailable for exchange."[2] (Pl. Mem. 1, ECF No. 59-1.) For the reasons that follow, the Court should deny class certification.

## ARGUMENT

A class action is an exception to the usual rule that litigation is conducted by individually named parties only. *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979). Given the due process implications of certification, the Court must conduct a rigorous analysis, beyond the allegations, into the merits of Plaintiff's underlying claims to determine whether to certify a class. *Wal-Mart Stores v, Dukes*, 546 U.S. 338, 346–47 (2011). Plaintiff bears the

---

[2] Plaintiff purports to seek certification of another class—the Legacy Policy Class, (Pl.'s Mem. 1)— but this Court's dismissal of Voya Financial, Inc. and ING Groep, N.V. is fatal to Plaintiff's effort. In dismissing Voya Financial and ING Groep from this action, the Court found dispositive that neither entity was party to Plaintiff's policy, and so could not be sued for any claims related to that policy. (Mem. & Order 24–28, ECF No. 53.) Similarly, as Plaintiff owns only RLNY policies that were issued by RLNY's predecessor-in-interest Lincoln Security Life, Plaintiff has no standing to assert claims based on any other predecessor-in-interest of RLNY. *Cassese v. Washington Mut., Inc.*, 262 F.R.D. 179, 183 (E.D.N.Y. 2009). Thus, to the extent Plaintiff's "Legacy Policy Class" relates to RLNY predecessors-in-interest other than Lincoln Security Life, she lacks standing to pursue claims as to those policies; to the extent it relates to the Lincoln Security Life policies she owns, it is duplicative of her proposed "Lincoln Security Class."

burden of establishing that all the requirements for certification are met. *Id.* at 350. She falls far short of carrying her burden.

As an initial matter, Plaintiff submits almost no evidence in support of her motion to certify despite bearing the burden of proof. Given the evidentiary record, there is no basis to conclude that there are discoverable facts that might support certification. Accordingly, Plaintiff's motion should be summarily denied. (*See* Part I, below.) Moreover, if the particular requirements for certification here are assessed *seriatim*, it is plain that the merits of any claim for breach of the implied covenant necessarily will turn on the highly individualized and unique interactions that Plaintiff (or her mother) had with their independent insurance agent over 20 years ago. Plaintiff cannot offer any generalized proof to establish any element of her claim on a class-wide basis. Accordingly, the motion fails the predominance and superiority requirements of Rule 23(b)(3). (*See* Part II, below.) Finally, Plaintiff's proposed class also fails the numerosity, typicality, and ascertainability requirements for certification, requiring denial of certification. (*See* Part III, below.)

## I.   Plaintiff Bears the Burden of Establishing Each Element of Rule 23 by a Preponderance of the Evidence but Submits Almost No Evidence in Support of Certification, Warranting Summary Denial of Her Motion.

"[A] party seeking to maintain a class action must affirmatively demonstrate … compliance with Rule 23." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *see also In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017). This requirement is not a "mere pleading standard," but rather a requirement that Plaintiffs prove "in fact" each element of Rule 23(a) and the applicable provisions of Rule 23(b). *Comcast*, 569 U.S. at 33 (quoting *Wal-Mart*, 563 U.S. at 350). Plaintiffs must present enough "evidence, by affidavits, documents, or testimony, to [demonstrate] that each Rule 23 requirement has been met." *Teamsters Local*

*445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 204 (2d Cir. 2008), so that the Court may conduct the "rigorous analysis" required of it in determining that the proposed class satisfies each element of Rule 23. *Comcast Corp.*, 569 U.S. at 33; *see also Roach v. T.L. Cannon Corp.,* 778 F.3d 401, 405 (2d Cir. 2015).

Without wading into the particular requirements of Rule 23, it is immediately apparent that Plaintiff proffers virtually no evidence in support of her motion. The only evidence submitted is a press release filed with the U.S. Securities & Exchange Commission on May 1, 2000. (ECF No. 59-2.) This document reflects that almost eighteen years ago, RLNY's *parent* company had approximately $4.2 billion in annual premiums and is offered only to establish Rule 23(a)'s numerosity requirement though it is not probative even as to that.[3] The amount of a parent company's premiums almost two decades ago does not yield any information  about the number of persons with a contract with an exchange provision, let alone the number who sought but were unable to exercise that right.

Moreover, Plaintiff's meager evidence stands in sharp contrast with discovery already developed that demonstrates the falsity of Plaintiff's class—and merits— contentions. Chiefly, Plaintiff's Policy was not "unavailable for exchange." (FAC ¶ 114; Pl. Mem. 1, ECF No. 59-1.) Rather, Plaintiff was, in fact, twice offered a policy for exchange that would have extended coverage at the same death benefit after her original Policy matured, but Plaintiff declined those offers. (Ex. D, Interrog. Resp. No. 8.) In addition, during the six-year statute of limitations for implied covenant claims, Plaintiff's (deficient)

---

[3]  The press release was filed by ING Groep, N.V. pursuant to requirements in SEC Rule 425 that acquirers file all written public communications about a proposed merger until its closing.

request to exchange her Policy on her mother is the *only one* RLNY received; *no other requests* for exchange have been made. (*Id.* at Interrog. Resp. No. 9.)

Given Plaintiff's own admissions and the record already developed, no additional amount of discovery will cure the manifest deficiencies in her motion for certification. *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (affirming rejection of class allegations and noting "[t]he problem for the plaintiffs is that we cannot see how discovery or for that matter more time would have helped them. To this day, they do not explain what type of discovery or what type of factual development would alter the central defect in this class claim"); *Garcia v. Veneman*, 224 F.R.D. 8, 16 (D.D.C. 2004) (denying class certification and rejecting request for additional discovery because there was no "probable cause to believe that a searching and expensive discovery program would unearth sufficient evidence…to support class certification").

Plaintiff did not—and in light of the existing record could not—tender evidence to establish the Rule 23 requirements. There is no basis to conclude, much less after rigorous analysis, that *any* of the requirements for class certification are met, much less *all* of them.

## II.  Plaintiff's Claim for Breach of the Implied Covenant Defies Certification Under Rule 23(b)(3) Because Common Questions Do Not Predominate and a Class Action is Not Superior to Individual Actions.

### A.  Plaintiff Cannot Demonstrate Predominance of Common Issues.

Rule 23(b)(3) requires Plaintiff to establish with evidence that common issues predominate over individual issues. Predominance "is a more demanding criterion than the commonality inquiry under Rule 23(a)." *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir. 2002); *see also Spagnola v. Chubb Corp.,* 264 F.R.D. 76, 98 (S.D.N.Y. 2010). "Common questions of law and fact predominate when issues subject to generalized proof and

applicable to the class as a whole predominate over, and are more substantial than, issues that are subject to individualized proof." *Spagnola,* 264 F.R.D. at 98. District courts have a "duty to take a 'close look' at whether common questions predominate over individual ones." *Comcast Corp.*, 569 U.S. at 34 (quoting *Amchem Prods.*, 521 U.S. at 615). "[A] court must deny certification where individual issues of fact abound." *Spagnola,* 264 F.R.D. at 98.

Dismissing Plaintiff's breach of contract claim, the Court held that Plaintiff's "insurance contract unambiguously required [RLNY] to exchange the policy only for another policy that it offered at the time of the exchange," (Mem. & Order 9, ECF No. 53), that RLNY was not obligated "to maintain whole life policies" for exchange at any time, (*id.* at 15), and that the only policies RLNY was obligated to maintain for exchange—those "generally offered," (*id.* at 14 & 15)—would necessarily and permissibly take into account an insured's "age and risk factors" at the time of exchange, (*id.* at 13).

In permitting Plaintiff's breach of implied covenant claim to proceed beyond the motion to dismiss, the Court allowed for the possibility that a contract owner might reasonably expect that, based on the contract language *and other factors,* RLNY would always have "*some* policy...for which the customer could exchange the original policy," (*id.* at 18) (emphasis original). The inquiry, then, is what Plaintiff and her mother would be justified in understanding was the guarantee of the exchange provision based on the contract terms and other factors, and whether that understanding is predominantly a common inquiry (involving the same common factors) across all class members. (*Id.* at 17.)

Here, Plaintiff's idiosyncratic relationship to the Policy, and idiosyncratic conduct when seeking to exchange the Policy, demonstrate that common issues do not predominate. Plaintiff's expectations as to her right to exchange were predicated *solely* on her (and her

mother's) independent insurance agent Zucker's oral assurances to Olga over 20 years ago that RLNY would always have a whole life policy available for exchange and that the Policy was a whole life policy. Plaintiff did not rely on the Policy language in forming her expectations because she never saw the contract until 2014 or 2015.[4] Moreover, Zucker's oral representations were directly contrary to the clear and express terms of the Policy: there is a specified maturity date and the exchange option is limited to only policies generally offered "at the time of exchange." As Plaintiff testified, had she or her mother reviewed the contract at the time of Zucker's alleged representations any expectation that the Policy was a whole life policy or that a whole life policy would always be available for exchange would be dispelled. (Ex. B 113:2–12.) *In re LifeUSA Holding, Inc.*, 242 F.3d 136, 146–47 (3d Cir. 2001) (reversing certification where financial product sold through independent agents and individual meetings); *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (affirming denial of certification where claims implicated each buyer's understanding of terms of transaction); *Monaco v. Bear Sterns Co.*, 2012 U.S. Dist. LEXIS 189628, at *9–10, 15–16 (C.D. Cal. 2012) (denying certification of claims involving form contract because evidence from each putative class member was necessary).

In *Avritt v. ReliaStar Life Ins. Co.*, 615 F.3d 1023 (8th Cir. 2010), the Eighth Circuit affirmed denial of class certification of implied covenant claims because common questions did not predominate. The Eighth Circuit observed that although "the duty of good faith and fair dealing is defined by objectively reasonable conduct, . . . what is objectively reasonable

---

[4] Plaintiff testified that she may have seen a sample contract when she purchased her own contract in 1994, but was not certain. (Ex. B 40:6–9, 42:21–25.) By her own admission, however, had she seen a sample contract, she would have known at the time the contract was not a whole life contract as Zucker had promised her and so likewise would be on notice that his assurances about exchange were not reliable.

depends on the nature and context of the parties' bargain," and that inquiries into the

"nature and context" of in-person sales discussions between independent insurance agents

and their clients necessarily present predominant individualized factual issues. *Avritt*, 615

F.3d at 1032; *Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 3962, at *19

(S.D. Fla. Jan. 10, 2013) (denying certification because a claim for "breach of the implied

covenant of good faith and fair dealing requires examination of the particular circumstances

of an individual case as well as the expectations of the parties to determine whether an

inequity would result or whether their reasonable expectations were met").

Likewise, as noted, Plaintiff's expectations as to the availability of a policy for

exchange were informed principally if not exclusively by her (mother's) in-person, one-on-

one interactions with Murray Zucker, who, according to Plaintiff decades ago assured her

mother that the contract was a whole life insurance contract and "guaranteed" that RLNY

would always have a whole life contract available for exchange, notwithstanding the

absence of any guarantee in the Policy. There also are questions unique to Plaintiff

concerning the reasonableness of her individual expectations from the Policy, since her

apparent assumption—that any exchange would be available for "the same premium or

less" (1991 rates on a 70-year old for a 95-year old in 2015)—contravenes the Policy's clear

language that any exchange would be based on the age of the insured at the time of

exchange and Plaintiff's admission that she understands insurance rates become more

expensive as a person gets older. (Ex. A at 18 ("Exchange"); Ex.B 10:15–16 & 69:3–7)

(acknowledging life insurance premiums on a 95-year-old life "would be very expensive").

In other words, Plaintiff's proof or support of the "other factors" that led her to expect that

RLNY always would have a whole life contract available for exchange—and one at "same

premium or less" as the premium set 25 years earlier—is not "generalized proof" that would apply equally to the claims of other class members. Indeed, her proof is the opposite: it is highly individualized, fact intensive, and untethered to the Policy terms. Her proof lacks any connection to the claims of putative class members, and each of their own expectations.

Other factors render Plaintiff's case unique and not subject to the common proof necessary for a predominance finding. *First*, Plaintiff's unique demand for exchange into a contract for 95-year old, at "same premiums or less" for those set for a 70-year old, subjects her request to individualized questions about the adequacy of her request to exchange. *Second*, the fact that Plaintiff received and declined two offers (once through her counsel and a second time through her insurance agent)[5] to exchange into a policy that provided continued life insurance for her mother, raises individualized questions as to whether the implied covenant was breached as well as available defenses such as waiver and estoppel.

Plaintiff argues that cases involving form contracts are particularly suited to certification. However, as the Court has noted, the claims here proceed not for breach of a form contract but for breach of the implied covenant. That claim turns on the reasonable expectations of the contract owner in light of the contract terms *and other factors*. Thus, the form contract is just one consideration;[6] plus, given that Plaintiff testified that she never

---

[5] Although Plaintiff may contend that the first offer was made to her counsel in the context of a settlement discussion, the fact of the offer is not being highlighted to "prove or disprove the validity or amount of a disputed claim," and Federal Rule of Evidence 408 does not apply. In any event, separate and apart from that offer, Plaintiff confirmed in deposition that she would not be interested in exchanging for a policy with rates based on the age of her mother at the time of exchange because such a policy would be too expensive. (Ex. B 68:18–69:7, 90:17–91:25, 98:23–99:23.)

[6] Moreover, even to the extent Plaintiff's "form contract" assertions are credited, she has not provided any basis to conclude that contracts "containing an exchange provision," as her class definition requires, contain substantially the same exchange provision as her contract.

received the form, she cannot legitimately assert that her own expectations had anything to do with the express terms of her contract, again making her unlike putative class members.

Plaintiff also notes that the contract cannot be varied by oral representations; be that as it may, it remains the case that the expectations undergirding an implied covenant claim can be and are informed by those representations, which are, like Mr. Zucker's assurances to Plaintiff's mother, wholly individualized. *Stout*, 228 F.3d at 717 (affirming denial of certification where claims implicated each buyer's understanding of terms of transaction); *Kunzelmann*, 2013 U.S. Dist. LEXIS 3962 at *19 (denying certification because a claim for "breach of the implied covenant of good faith and fair dealing requires examination of the particular circumstances of an individual case as well as the expectations of the parties to determine whether an inequity would result or whether their reasonable expectations were met."); *Monaco*, 2012 U.S. Dist. LEXIS 189628 at *9–10, 15–16 (denying certification of claims involving form contract because evidence from each putative class member was necessary). There is no evidence (nor could there be) of any sales "script" or other direction from RLNY to independent agents to make guarantees about the availability of exchange or to present contracts with specific maturity dates as whole life insurance policies.

Plaintiff's proof of her claim—and RLNY's defenses to that claim—would be fraught with individualized proof as to: her (and her mother's) interactions with their agent, Zucker; her particular request to exchange; and her consideration of two proposed exchanges. Moreover, Plaintiff's policy on her own life, which would be part of the class had she sought an exchange and been denied any "generally offered" policy that would continue her death benefit, would involve consideration of the same individualized proof, as well as issues concerning defenses and membership in the proposed class given that she has *not* sought to

exchange her policy, and instead has continued to pay its premiums since filing this action. Individual issues predominate over common ones, there is no generalized proof that resolves any substantial class-wide issue, and no class can be certified under Rule 23(b)(3).

### B.  A Class Action Is Not a Superior Method of Resolving this Case.

Class actions "range from claims involving very small individual recoveries (such as consumer claims) that would otherwise likely not be litigated because no individual has a stake sufficient to justify individual litigation, to claims in which individual damages are high but the volume of claims creates advantages for group resolution." Manual on Complex Litigation § 24 (4th ed. 2004). Accordingly, a plaintiff bears the burden under Rule 23(b)(3) to prove that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy" by establishing either: (*i*) that the individual claims are so small that no one is likely to seek a remedy individually, (*ii*) that the volume of claims is so high that there are efficiencies to be gained by class litigation in avoiding a deluge of separate suits. *N.J. Carpenters Health Fund v. Residential Capital LLC*, 272 F.R.D. 160, 170 (S.D.N.Y. 2011), *aff'd* 477 F. App'x 809 (2d Cir. 2012).

As discussed in Part II.A, individualized issues abound in Plaintiff's claim, and class certification is improper for that reason, as well as Plaintiff's failure to meet Rule 23(a) criteria, below. But in addition, nothing about this case supports a conclusion that the class device is a superior mechanism for resolving Plaintiff's claim. *First*, life insurance policies typically do not feature *de minimis* death benefits, and Plaintiff's two policies are prime examples: The one her mother purchased on her own life and then later transferred to Plaintiff, and which Plaintiff sues on, had a death benefit of $300,000. (Ex. A at 4.) The similar policy Plaintiff purchased on her own life in 1994 features a $500,000 death benefit.

(Ex. B 44:11–14.) These policies are not likely to be the kind of "negative value cases" for which courts commonly certify classes. *N.J. Carpenters*, 272 F.R.D. at 170. Where, as here, the amount of claimed damages is high, each person has a substantial interest in proceeding independently. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 616–17 (1997).

*Second*, discovery demonstrates that in the six-year statute of limitations period *no other person* sought an exchange, leaving aside sought and was denied one (which, of course, did not even happen to Plaintiff, who was offered two exchange options). (Ex. D, Interrog. Ans. No. 9.) Plaintiff is not aware of any other person who sought and was denied an exchange. (Ex. B 111:12–112:14.) Class certification should not serve to create lawsuits where none previously existed—i.e., where there is *no evidence* indicating that there are dissatisfied policy owners, and where the only evidence to be taken demonstrates the named plaintiff's claim lacks merit. Those are strong indicators that there is no deluge of plaintiffs planning to pursue a case similar to this one. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614, 622 (W.D. Wash. 2003) (denying certification where plaintiff failed to establish superiority of class action.).

## III.   Plaintiff Fails to Establish Other Requirements for Certification.

### Numerosity.

Rule 23(a)(1) requires that for certification "the class is so numerous that joinder of all members is impracticable." Rule 23(a)(1). "[B]are assertions of numerosity are insufficient, and a plaintiff seeking class certification must reasonably estimate or provide some evidence of the number of class members to support the conclusion that the class is too numerous to make joinder practicable." *Reese v. Arrow Fin. Servs., LLC*, 202 F.R.D. 83, 90 (D. Conn. 2001); *see also Demarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968) (finding that

appellants did not produce sufficient evidence of numerosity and the evidence presented was "pure speculation").

Courts have refused to certify a class where plaintiffs presented evidence of the dollar amount of debt portfolios, not the number of proposed class members. *Reese*, 202 F.R.D. at 83. Similarly, this District previously has refused to certify a class when the evidence offered only suggested "a large pool of persons within which a class may or may not exist." *Kapiti v. Kelly*, 2008 U.S. Dist. LEXIS 64154 at *13 (S.D.N.Y. Aug. 18, 2008).

Plaintiff has done nothing more than suggest that almost eighteen years ago, there may have been more than 40 people in the class because RLNY's parent company—*as a whole*, across *all* types of insurance policies—had a significant annual premium amount. (ECF No, 59-2.) The May 2000 press release advanced by Plaintiff fails entirely to support a reasonable inference as to the number of persons who own a RLNY life insurance contract with an exchange provision that was "unavailable for exchange"—and more importantly, who sought but were unable to exercise that right. "Although the court may make common sense assumptions to support a finding of numerosity, it cannot do so on the basis of pure speculation without any factual support." *Jeffries v. Pension Trust Fund of the Pension, Hospitalization and Benefit Plan of the Elec. Indus.,* 172 F.Supp.2d 389, 394 (S.D.N.Y. 2001). This is what Plaintiff asks the Court to do, and her request should be rejected.

Recognizing the weakness of her argument, Plaintiff states that she "will respectfully move for Discovery into the threshold question of how many individuals are in the class" if RLNY claims there are fewer than forty individuals. (Pl. Mem. 5.) The burden is on Plaintiff to affirmatively prove that the proposed class meets all the Rule 23 requirements, not to plan to provide evidence if challenged by opposing counsel as to the appropriateness

of class certification. Given the indisputable evidence that Plaintiff *was* offered policies for exchange, demonstrating that RLNY does, in fact, make generally offered policies available for exchange upon request, and that *no other person* has sought an exchange within the statute of limitations period, no additional amount of discovery will cure Plaintiff's deficient numerosity argument. (Ex. B 87:5–92:7, 93:3–99:23, 111:12–112:14; Ex. E; Ex. F; Ex., D, Interrog. Resp. Nos. 8 & 9.) *See Pilgrim*, 660 F.3d at 949; *Garcia*, 224 F.R.D. at 16.

   ***Typicality.***

   In addition to failing the numerosity requirement of Rule 23(a)(1), Plaintiff also fails the typicality requirement of Rule 23(a)(3). "To establish typicality, Plaintiffs must prove that each member's claims arise from the same course of events and that each class member makes similar legal arguments to prove liability. The typicality requirement is meant to ensure that the class representative is not subject to a unique defense which could potentially become the focus of the litigation." *Spagnola*, 264 F.R.D. at 93 ("[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.").

   Plaintiff fails to carry her burden in demonstrating that her claims arise from the same course of events as the putative class, and she will indeed be subject to unique defenses. Here again, Plaintiff relies on the fact that she signed a form contract as her only proof and argument that the typicality requirement is met. (Pl. Mem. 6–7.) Yet Plaintiff fails to acknowledge that the only remaining claim is an implied covenant claim. As the Court has recognized, and as noted above, implied covenants are created by the unique circumstances of the transaction, and therefore the course of events giving rise to the implied covenant claims will vary. Furthermore, Plaintiff is the only individual to have attempted to

request a policy exchange within the statute of limitations.[7] (Ex. D, Interrog. Ans. No. 9.) The exchange she requested—to a whole life contract with the same death benefit and the same or lower premiums—was not one to which she was entitled under any reading of the contract. (Mem. & Order 9 & 13–15, ECF No. 53 (holding that policy unambiguously did not require a whole life contract for exchange, and that any exchange would take into account the insured's age at the time of exchange).) Plaintiff was offered a replacement policy not once, but twice, and was not interested in either offer. In addition, Plaintiff did not pay the premiums on the contract at issue; her mother did. Accordingly, her remaining claims in this action at least arguably belong to her mother, not to Plaintiff, particularly to the extent Plaintiff seeks damages related to her allegation that RLNY should have lowered premiums to reflect "nonmarketability" on a secondary insurance market and "lower value" to the policy owner. (Pl. Mem. 2.) Even assuming Plaintiff has standing to seek recovery of premiums her mother paid, Plaintiff has expressly rejected as absurd the First Amended Complaint's assertion that she has suffered an injury because the value of her contract on any secondary market is lower because of the purported "unavailability of exchange," (Ex. B 113:2–114:17), the latter contention, in any event, decisively disproved by RLNY's two offers for exchange. Plaintiff's claims are wholly atypical.

*Ascertainability.*

Finally, in addition to failing the express requirements of Rule 23, Plaintiff also does not establish the implicit requirement that the proposed class be ascertainable. "[A] proposed class: (1) must be sufficiently definite so that it is administratively feasible for the

---

[7] The implied covenant claim is subject to a six-year statute of limitations that begins to run at the time of breach. N.Y. CPLR § 213(2) Accordingly, even if any class were appropriate, Plaintiff's request for a 20-year class period, back to 1998, is baseless.

court to determine whether a particular individual is a member; and (2) must be defined by objective criteria that are administratively feasible, such that 'identifying its members would not require a mini-hearing on the merits of each case." *In re Petrobras Sec.*, 862 F.3d at 266; *Kiobel v. Royal Dutch Petroleum Co.*, 2004 2004 U.S. Dist. LEXIS 28812 at *17 (S.D.N.Y. Mar. 31, 2004) (stating that "as the class is defined by plaintiffs, '[d]etermining a membership in the class would essentially require a mini-hearing on the merits of each case.'").

Plaintiff both fails to acknowledge the ascertainability requirement and fails to carry her burden to prove that the class is ascertainable. In order to determine who belongs to the class, the Court would have to determine who had policies with an exchange provision in 1998 that were still in force in 2010 so as to have claims not barred by the statute of limitations. Then it would be necessary to determine whether any of those policies in force in 2010 had any period for which there were not exchange policies available after 2010. The age of the insured, the market at the time, as well as numerous other factors determine whether exchange policies are available. The Court would have to consider the particular form contract and its exchange provision and the circumstances of contract formation for each potential class member to determine whether an implied covenant to guarantee exchange policies, provide notice, or change premium pricing based on exchange policy availability exists for that particular individual. The Court would also have to look to each written request for exchange to determine whether it complied with the contract requirements. In other words, the Court would need to conduct mini-hearings for each potential class member to determine membership in the class, precisely what the class device is designed to avoid. *In re Petrobras Sec.*, 862 F.3d at 266.

Accordingly, even if Plaintiff had submitted evidence to establish by a preponderance that each of the express elements of Rule 23(a) and (b)(3) were satisfied (and she does not), class certification would remain inappropriate due to a thicket of ascertainability issues.

## CONCLUSION

The Court should deny Plaintiff's motion for class certification.

Respectfully submitted,

/s/ Michael T. Leigh
Clark C. Johnson
Michael T. Leigh
KAPLAN JOHNSON ABATE & BIRD LLP
710 West Main Street
Louisville, Kentucky 40202
Tel: (502) 416-1630
cjohnson@kplouisville.com
mleigh@kplouisville.com

Andrew D. O'Toole
O'TOOLE + O'TOOLE PLLC
22 Valley Road
Katonah, NY 10536
Tel: (914) 232-1511
aotoole@otoolegroup.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2018 I served the foregoing document on all counsel of record through CM/ECF, and on the following by email:

Baruch S. Gottesman, Esq.
Horowitz & Rubenstein LLC
baruchesq@yahoo.com
*Counsel for Plaintiff*

Aryeh Kaufman, Esq.
Law Office of Aryeh Kaufman
aryeh@akaufmanlegal.com
aryehkaufmanesq@gmail.com
*Counsel for Plaintiff*

/s/  Michael T. Leigh
*Counsel for ReliaStar Life Insurance
Company of New York*